UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GLORIA BROWN,                        )
          Plaintiff                  )
                                     )
v.                                   )     CIVIL ACTION
                                     )     NO. 05-CV-11167-MBB
                                     )
YUM! BRANDS, INC. and                )
LOJON PROPERTY II LLC,               )
          Defendants                 )

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND HER COMPLAINT TO ADD ADDITIONAL DEFENDANTS

**Introduction.**

This is an action in tort brought by the plaintiff Gloria Brown to recover for personal

injuries which she suffered when she fell in a hole in the parking lot of the Kentucky Fried

Chicken store in Roslindale, Massachusetts on June 21, 2002. The plaintiff's motion for leave to

amend her Complaint to add KFC of America, Inc., KFC Corportion and KFC National

Management, Inc. and to have their addition relate back to the time of her filing of her Complaint

in state court,[1] is the result of the attorney for the defendants, Yum! Brands, Inc. ("Yum!) And

LOJON Property II, LLC ("LOJON"), claiming, both in their Answer and in open court, that

neither of the defendants is liable and asking the Court for time to file what apparently will be a

motion for judgment on the pleadings or more likely summary judgment in advance of any

discovery. Out of an overabundance of caution, since, if her action were to be dismissed, the

plaintiff *arguably* would be barred from joining additional defendants, and without prejudice to

her claim that Yum! and LOJON are the proper defendants, the plaintiff seeks to join those KFC

corporations that have been identified by the defendants' attorney as being liable.

---

[1]The three year Massachusetts Tort Statute of Limitations expired on June 21, 2005.

-2-

**Argument.**

**I. The Plaintiff Is Entitled to Add Additional Parties To Her Action Pursuant To Rule 15(a) Of The Federal Rules Of Civil Procedure.**

Rule 15(a) Fed.R.Civ.P. states in relevant part:

[A] party may amend the party's pleading only by leave court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Although the defendant, LOJON, is the owner of the Roslindale property on which the plaintiff alleges she was injured,[2] it denies that it is liable for the condition of the property by reason of a undisclosed contract with an unidentified third party who operated the store (see, Answer, ¶6[3] and, *e.g.*, The Great Atlantic And Pacific Tea Company, Inc. v. Yanofsky, 380 Mass. 3236, 403 N.E.2d 370 (1980). Yum!, which is the parent corporation of the various KFC corporations,[4] apparently claims that it is not liable as the operator; but rather, the defendants' attorney stated in open court that the correct defendant was KFC of America, Inc., which information he admittedly refused to give to the plaintiff; but which he claimed could have been ascertained from "reading the certificate on the wall [of the Roslindale KFC store]". That appears to be a material misrepresentation to both the plaintiff and this Honorable Court, since, according to the Division

---

[2]LOJON neither specifically admits or denies the allegation in the Complaint, that it was the owner of the property, but rather asserts what should be an affirmative defense. See footnote 3, *infra*.

[3]6. The defendant LOJON Property II, LLC, avers that the property was demised as of the date of the Plaintiff's accident to a third party and that this Defendant had no operational, commercial activity or responsibility for said property. Answer.

[4] "Defendant Yum! Brands, Inc. ("Yum!") is the parent corporation to KFC [Corporation]". Pacheco v. Kazi Foods of New Jersey, Inc., (No. Civ.A. 03-CV-02186, April 7, 2004. USDC E.D.Penn., Gardner, J.).

-3-

of Corporations of the Secretary of State of the Commonwealth of Massachusetts, KFC of

America, Inc. withdrew from doing business in Massachusetts effective on September 27, 2004

(Exhibit 1), and therefore could not have been identified as the operator of the Roslindale KFC

store, even if there was a certificate, either at the time the plaintiff filed her complaint on May 19,

2005 or when the Defendants' filed their answer on June 10, 2005 (Exhibit 2); moreover,

according the California Secretary of State, KFC of America, Inc., a California Corporation,

ceased to exist by merger with KFC Corporation, a Delaware Corporation, on December 31,

2002 (Exhibit 3), about six months after the plaintiff's accident. Nor, according to the

Massachusetts Secretary of State's computerized records, was KFC Corporation ever licensed to

do business in Massachusetts. Considering the corporate shell game that KFC plays to hide the

true ownership of its corporate stores, the plaintiff seeks to add all of the entities that the

defendants' counsel claims are liable.[5]

The plaintiff would further ask this Honorable Court to consider the award of attorney's

fees, pursuant to Rule 11 of the Federal Rules of Civil Procedure, if it finds that this Honorable

Court and the plaintiff have been sent on a wild goose chase by the defendants.

**II.    The Plaintiff Is Entitled To Have Her Amended Complaint Relate Back To The Filing Of Her State Court Action.**

**A.    The Plaintiff Is Entitled to the Application of Massachusetts Rules of Civil Procedure 15(c) .**

Massachusetts Rules of Civil Procedure 15(c) states in relevant part:

---

[5]The plaintiff's addition of KFC of America, Inc. is most probably an exercise in futility, since, according to the California Secretary of State, the corporation no longer exists (Exhibit 3); but it is the "defendant" who the attorney for the defendants identified in open court.

-4-

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading.

There is no dispute that the plaintiff's claim against the additional defendants arises out of the same occurrences and events as in her original Complaint or that her original Complaint was filed within the applicable Massachusetts Statute of Limitations.[6] Therefore, under Rule 15 of the Massachusetts Rules of Civil Procedure, the plaintiff is entitled to amend her complaint to add the new defendants.

As to the applicability of the Massachusetts Rules of Civil Procedure in federal court, the First Circuit held in Marshall v. Mulrenin, 508 F.2d 39, 19 Fed.R.Serv.2d 764 (USDC, 1st Cir. 1981) that Massachusetts' more liberal Rule 15(c) should be applied,[7] *afortiori* in this case, where the plaintiff clearly intended to sue the owner/operator of the Roslindale KFC (see *infra*) and *arguably* could be left without a cause of action against corporate defendants who appear to have deliberately concealed their identity (see *supra*)[8] and forum shopped to take advantage of it.

---

[6]The Answer does not raise an affirmative Statute of Limitations defense.

[7]Accord Covel v. Safetech, Inc., 90 F.R.D. 427, 32 Fed.R.Serv.2d 819 (USDC MA, Keeton, DJ, 1981):

> Fed.R.Civ.P. 15(c) was not meant to override a state law of limitation allowing more liberal relation-back, and should not be applied when to do so would give it the practical effet of preempting a state realtion-back rule that is an integral part of the state's law of limitation of actions and is more liberal than the federal rule. Id., 433.

[8]See Ward v. Hercules, Inc., 75 F.R.D. 455 (1977) (USDC Mass., Skinner, DJ, 1977 ).

-5-

**III.    Even, *Arguendo*, If The Court Does Not Apply Massachusetts Rules Of Civil Procedure 15, The Plaintiff Is Still Entitled To Amend Her Complaint Under Federal Rules Of Civil Procedure 15.**

The pertinent language of Fed.R.Civ.P 15(a) is the same as its Massachusetts counterpart.

As to the relation back of the amendment, of the Fed.R.Civ.P. 15(c) states in relevant part:

> **(c) Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when
>
> \*                    \*                    \*
>
> > **(2)** the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> >
> > **(3)** the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

There is no question that the plaintiff's claim against the additional defendants arises out of the

same occurrence set forth in her Complaint, her fall at the Roslindale KFC, as required by

Fed.R.Civ.P 15(c)(2), as incorporated in Fed.R.Civ.P 15(c)(3).

On July 29, 2005, the plaintiff sent a copy of the Complaint and notice of the pending

action (Exhibit 4) by certified mail, return receipt requested, to KFC of America, Inc. and KFC

Corporation and received the return receipts showing delivery on August 2, 2005 (Exhibit 5).

The plaintiff 's Complaint was filed in state court May 19, 2005 (Exhibit 2). Rule 4(m) requires

-6-

that service be "made upon a defendant within 120 after filing of the complaint.[9]  Since the 120

day period does not expire until September 16, 2005, the plaintiff is still within the designated

period and, since the case has barely commenced, the defendants "will not be prejudiced in

maintaining a defense on the merits."[10]   Moreover, as discussed *infra*, KFC National

Management, Inc., through its claims administrator, Gallagher Bassett Services, Inc., assumed

responsibility for investigation and settlement of the claim, so that whoever the owner/operator

turns out to be, it has been fully informed of the claim and has had a full opportunity to

investigate it.  See *infra*.   The plaintiff has therefore complied with Fed.R.Civ.P. 15(c)(3)(A).

---

[9]The plaintiff has not found any cases which consider whether the 120 days begins to run
from the filing of the Complaint in state court, when there has been an unavoidable delay in the
proceedings due to its transfer to the federal court, or whether the "filing of the Complaint" for
the purpose of effecting service under Fed.R.Civ.P. 4(m) , which has no state counterpart *vis-a-
vis* Mass.R.Civ.P. 15(c), is considered to be the date on which the Complaint is docketed by the
District Court.  The plaintiff also has not found any cases which consider whether the Court's
discretion to extend the time for making service under Fed.R.Civ.P. 4(m), by directing the
plaintiff to make service "within a specified time" after the expiration of the 120 days, or to
comply with the mandate that "the court shall extend the time for service for an appropriate
period" "if the plaintiff shows good cause for the failure" ameliorates the prescribed period.  As
to the former, given the Court's flexibility in extending the time for "good cause," there does not
appear to be any need to be concerned with unavoidable delay.  As to the latter, the purpose of
Rule 4(m) appears to be the same as Rule 15(c), to avoid injustice.  See Ditkoff v. Owens-
Illinois, Inc., 114 F.R.D. 104 (E.D. Mich. 1987).  (Relief may be justified, for example, if the
applicable statute of limitations would bar the refiled action, of if the defendant is evading
service or conceals a defect in attempted service.)  Arguably, the plaintiff has more time; luckily,
as least as to these additional defendants, she does not need it.  See *infra*.

[10]It would be surprising if, given the interrelationship of the various KFC corporate
entities, the attorney now representing the defendants also would not be representing the
additional defendants, further demonstrating both their knowledge of the litigation and the lack
of prejudice in their joinder.

-7-

A claim letter was sent to the Manager of the Roslindale KFC store on July 23, 2002

(Exhibit 6) and Gallagher Basset responded on September 6, 2002 (Exhibit 7) stating:

> Gallagher Bassett Services Inc. is the claims administrator for the above captioned
> client ("KFC National Management, Inc." appears as "Our Client" in the "RE:").
> This correspondence is in regard to a report of injury at *our client*
> *location*."(Exhibit 7) [Emphasis added].

The adjuster then spent over two years investigating the claim, including requesting and

receiving all of the plaintiff's medical records and medical bills and taking a recorded statement

from the plaintiff (Exhibit 8). The plaintiff believes that KFC National Management, Inc. is not

the owner of the Roslindale KFC, but KFC's national management company that runs all of the

corporate KFC stores and may turn out to have an operating contract that absolves the other KFC

corporations of liability.[11]  On the other hand, if some corporate entity, other than KFC National

Management, Inc., is the owner or operator and professes institutional ignorance of the claim, it

is only because KFC has deliberately structured it so. Both as a matter of basic law, which holds

that a party cannot play ostrich.

> It is settled that the party to a transaction, whose rights are liable to be injuriously
> affected by notice, cannot willfully shut his eyes to the means of acquiring
> knowledge which he knows are at hand and thus escape the consequences which
> would flow from the notice, had it actually been received. Conte v. School
> Committee of Methuen, 4 Mass.App.Ct. 600, 605, 356 N.E.2d 261 (1976) citing
> The Lulu, 10 Wall, 192, 77 U.S. 192, 201-2-2, 19 L.Ed.906 (1896).

and basic agency principles, which hold the principal to the knowledge of its agent, the real KFC

owner/operator should be estopped from claiming lack of notice. The plaintiff has complied with

the requirements of Rule 15(c)(3)(B) Fed.R.Civ.P.

---

[11]If it turns out the KFC Management, Inc. did have an operating contract with KFC of
America, Inc. and which KFC of America, Inc. or KFC Corporation intends to assert to extricate
themselves from the litigation, then defendants' counsel was less than candid when he advised
the plaintiff and this Honorable Court that the proper defendant was KFC of America, Inc.

-8-

**IV.    The Defendants Have No Standing And No Right To Oppose The Plaintiff's Motion For Leave To Amend Her Complaint.**

The defendants profess, for yet undisclosed reasons, that they are the wrong parties and should be dismissed. Although he undoubtedly will, counsel for the defendants does not yet represent KFC of America, Inc. and KFC Corporation in this action. If he wants his present clients out, because they are the wrong defendants, then it should be inconsequential to him if additional defendants are added *who he does not represent*.[11]   In fact, it is to his clients' advantage to add the third party who LOJON claims in its Answer was responsible for the operation of the Roslindale KFC, since, once the admittedly right party is in, the other parties can be let out. It is obvious, however, from the defendants' attorney raising the bar of Rule 15(c) preemptively at the conference that he has used both forum shopping and the delay of the transfer, plus the additional time for his motion to dismiss, to stall the proceedings until the expiration of the 120 days, hoping to use his procedural maneuvering to avoid litigating the case on its merits against *any* of the KFC corporate entities.

With all due respect, KFC should not be permitted to use its incestuous corporate relationships to thwart justice. This is a simple case. The plaintiff alleges she fell in a hole in the parking lot of the Roslindale KFC store. It was a KFC "corporate" store and there is a KFC corporate entity that was operating it which has known about the occurrence from day one (See Exhibit 9, p. 9.)  Whoever KFC really is, it should come out from behind the curtain and try the case on its merits.

---

[11]As stated *supra*, according to the adjuster, KFC has $2,000,000 in retained risk that covers *all* of its corporately owned stores. Therefore, it does Yum!, KFC's parent corporation, no good to simply exchange one of its subsidiary corporations for another, since the payment of any judgment would still come out of its pocket. That is the reason why the defendants' attorney is so intent on getting the plaintiff's *action*, rather than just *the defendants*, dismissed.

**Conclusion.**

WHEREFORE, for the foregoing reasons, the plaintiff respectfully moves this Honorable

Court for leave to amend her Complaint by adding KFC of America, Inc., KFC Corporation and

KFC Management, Inc. as additional defendants.

Respectfully submitted,

The plaintiff,
By her attorneys,

John N. Lewis
BBO# 298520
JOHN N. LEWIS & ASSOCIATES
21 Merchants Row, 5th Floor
Boston, MA 02109
(617) 523-0777

## EXHIBIT 1



# The Commonwealth of Massachusetts
# William Francis Galvin

Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512
Telephone: (617) 727-9640

**KFC OF AMERICA, INC.** Summary Screen

Help with this form

Request a Certificate

The exact name of the Foreign Corporation: KFC OF AMERICA, INC.

The name was changed from: KENTUCKY FRIED CHICKEN OF SOUT on 5/17/00

Entity Type: Foreign Corporation

Identification Number: 952394486

Old Federal Employer Identification Number (Old FEIN): 000000000

Date of Registration in Massachusetts: 12/28/1999

Date of Withdrawal: 12/27/2004

The is organized under the laws of: State: CA    Country: USA    on: 03/04/1965

Current Fiscal Month / Day: 12 / 31              Previous Fiscal Month / Day: 00 / 00

The location of its principal office:
No. and Street:     1441 GARDINER LANE
City or Town:       LOUISVILLE          State: KY    Zip: 40213    Country: USA

The location of its Massachusetts office, if any:
No. and Street:
City or Town:                       State:        Zip:        Country:

The name and address of the Registered Agent:
Name:              CT CORPORATION SYSTEMS
No. and Street:    101 FEDERAL STREET
City or Town:      BOSTON              State: MA    Zip: 02110    Country: USA

The officers and all of the directors of the corporation:

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code | Expiration<br>of Term |
|---|---|---|---|
| PRESIDENT | CHARLES E. RAWLEY | 1441 GARDINER LANE, | |

| | | LOUISVILLE, KY 40213 USA | |
|---|---|---|---|
| TREASURER | KATHLEEN CORSI | 1441 GARDINER LANE, LOUISVILLE, KY 40213 USA | |

**business entity stock is publicly traded:** __

**The total number of shares and par value, if any, of each class of stock which the business entity is authorized to issue:**

| Class of Stock | Par Value Per Share Enter **0** if no Par | Total Authorized by Articles of Organization or Amendments *Num of Shares     Total Par Value* | Total Issued and Outstanding *Num of Shares* |
|---|---|---|---|
| No Stock Information available online. Prior to August 27, 2001, records can be obtained on microfilm. | | | |

__ Consent       __ Manufacturer       __ Confidential Data   __ Does Not Require Annual Report

__ Partnership   __ Resident Agent    __ For Profit             __ Merger Allowed

**Select a type of filing from below to view this business entity filings:**

```
ALL FILINGS
Amended Foreign Corporations Certificate
Annual Report
Annual Report - Professional
Application for Reinstatement
```

[ View Filings ]          [ New Search ]

| **Comments** |
|---|
| |

© 2001 - 2005 Commonwealth of Massachusetts
All Rights Reserved

Help



# The Commonwealth of Massachusetts
# William Francis Galvin

Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-
1512
Telephone: (617) 727-9640

## Detail Record - Display Page

**Type of Filing:** Certificate of Withdrawal

**Fiche Index:** 01

**Fiche Pages:**

**Submit Date:** 12/27/04 1:39:00 PM

**Approval Date:** 12/27/04 1:39:00 PM

**Clerk Name:**

**Attorney Name:**

**Comments:**

**Payment Information:**

**Check/Voucher:** 0810106149

**Pay Date:** 12/28/04 9:49:37 AM

**Pay Type:** Voucher

**File Fee:** 100

**Conv Fee:**

© 2001 - 2005 Commonwealth of Massachusetts
All Rights Reserved

MAS-20030912                      **Commonwealth of Massachusetts**        EXHIBIT 2         06/03/2005
guen                                   SUFFOLK SUPERIOR COURT                                 01:51 PM
                                             Case Summary
                                             Civil Docket

### SUCV2005-01983
### Brown v Yum Brands Inc et al

| File Date | 05/19/2005 | Status | Needs review for service (acneserv) |
|---|---|---|---|
| Status Date | 05/19/2005 | Session | E - Civil E, 3 Pemberton Square, Boston |
| Origin | 1 | Case Type | D02 - Reach & apply (214.003) |
| Lead Case | | Track | F |

| Service | 08/17/2005 | Answer | 10/16/2005 | Rule12/19/20 | 10/16/2005 |
|---|---|---|---|---|---|
| Rule 15 | 10/16/2005 | Discovery | 03/15/2006 | Rule 56 | 04/14/2006 |
| Final PTC | 05/14/2006 | Disposition | 07/13/2006 | Jury Trial | Yes |

#### PARTIES

**Plaintiff**
Gloria Brown
Active 05/19/2005

Private Counsel 298520
John N Lewis
Lewis & Associates
21 Merchants Row
5th Floor
Boston, MA 02109
Phone: 617-523-0777
Fax: 617-523-1755
Active 05/19/2005 Notify

**Defendant**
Yum Brands Inc
Service pending 05/19/2005

I HEREBY ATTEST AND CERTIFY ON
JUNE 3, 2005
, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

**Defendant**
Lojon Property II LLC
Service pending 05/19/2005

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

#### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 05/19/2005 | 1.0 | Complaint & jury demand |
| 05/19/2005 | | Origin 1, Type D02, Track F. |
| 05/19/2005 | 2.0 | Civil action cover sheet filed |

#### EVENTS

EXHIBIT 3

# State of California
## Secretary of State

### CERTIFICATE OF FILING

I, BRUCE McPHERSON, Secretary of State of the State of California, hereby certify:

That on the **28th day of October, 2002,** there was filed in this office a(n) **Certificate of Merger** merging **KFC OF AMERICA, INC.,** a California corporation, into **KFC CORPORATION, a(n) Delaware** corporation.

Further, that according to the records of this office, said California corporation will cease to exist upon the **31st day of December, 2002,** the effective date.

IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of August 3, 2005.



BRUCE McPHERSON
Secretary of State

ch

## EXHIBIT 4

# JOHN N. LEWIS & ASSOCIATES

Attorneys at Law
**21 Merchants Row, 5th Floor**
**Boston, MA 02109**
Telephone (617) 523-0777
Facsimile (617) 523-1755
e-mail: jlewis4284@aol.com

July 29, 2005

President
KFC of America, Inc.
1441 Gardiner Lane
Louisville, KY 40213

BY FEDERAL EXPRESS
BY CERTIFIED MAIL, RETURN REQUESTED

Re:     Gloria Brown
Vs:     Yum! Brands, Inc. and Lujon II LLC
No.:    05-CV-11167-MBB (USDC MA)

Dear Sir or Madam:

Our firm represents Ms. Gloria Brown in the above action which was transferred from state court and is now pending in the United States District Court for the District of Massachusetts. A copy of the state court Complaint is enclosed for your reference. On July 28, 2005, in open court, before Magistrate Judge Marianne B. Bowler, the attorney for the defendants represented that KFC of America, Inc. was the owner/operator of the KFC store located at 635 American Legion Highway, Roslindale, Massachusetts on June 21, 2005. Please consider this letter as notice of the pending action as required by Rule 15(c) of the Federal Rules of Civil Procedure. It is our intention to add KFC of America, Inc. as an additional defendant.

For your reference, notice of Ms. Brown's claim was given to the manager of the KFC store by letter dated July 23, 2002. A copy of the letter is enclosed. Subsequently, our office was contacted by a Dave Long of Gallagher Bassett Services, Inc., "in regard to a report of injury at our client location." A copy of Mr. Long's introductory letter dated March 1, 2003 is enclosed.

Very truly yours,

JOHN N. LEWIS & ASSOCIATES

John N. Lewis

JNL/jl

# JOHN N. LEWIS & ASSOCIATES

Attorneys at Law
**21 Merchants Row, 5th Floor**
**Boston, MA 02109**
Telephone (617) 523-0777
Facsimile (617) 523-1755
e-mail: jlewis4284@aol.com

July 29, 2005

President
KFC Corporation
1441 Gardiner Lane
Louisville, KY 40213

BY CERTIFIED MAIL, RETURN REQUESTED

Re:    Gloria Brown
Vs:    Yum! Brands, Inc. and Lujon II LLC
No.:   05-CV-11167-MBB (USDC MA)

Dear Sir or Madam:

Our firm represents Ms. Gloria Brown in the above action which was transferred from state court and is now pending in the United States District Court for the District of Massachusetts. A copy of the state court Complaint is enclosed for your reference. On July 28, 2005, in open court, before Magistrate Judge Marianne B. Bowler, the attorney for the defendants represented that KFC of America, Inc. was the owner/operator of the KFC store located at 635 American Legion Highway, Roslindale, Massachusetts on June 21, 2005. Please consider this letter as notice of the pending action as required by Rule 15(c) of the Federal Rules of Civil Procedure. It is our intention to add KFC of America, Inc. as an additional defendant.

For your reference, notice of Ms. Brown's claim was given to the manager of the KFC store by letter dated July 23, 2002. A copy of the letter is enclosed. Subsequently, our office was contacted by a Dave Long of Gallagher Bassett Services, Inc., "in regard to a report of injury at our client location." A copy of Mr. Long's introductory letter dated March 1, 2003 is enclosed.

Very truly yours,

JOHN N. LEWIS & ASSOCIATES

John N. Lewis

JNL/jl

# JOHN N. LEWIS & ASSOCIATES

Attorneys at Law
**21 Merchants Row, 5th Floor**
**Boston, MA 02109**
Telephone (617) 523-0777
Facsimile (617) 523-1755
e-mail: jlewis4284@aol.com

July 29, 2005

President
KFC Management, Inc.
1441 Gardiner Lane
Louisville, KY 40213

## BY CERTIFIED MAIL, RETURN REQUESTED

Re:    Gloria Brown
Vs:    Yum! Brands, Inc. and Lujon II LLC
No.:    05-CV-11167-MBB (USDC MA)

Dear Sir or Madam:

Our firm represents Ms. Gloria Brown in the above action which was transferred from state court and is now pending in the United States District Court for the District of Massachusetts. A copy of the state court Complaint is enclosed for your reference. On July 28, 2005, in open court, before Magistrate Judge Marianne B. Bowler, the attorney for the defendants represented that KFC of America, Inc. was the owner/operator of the KFC store located at 635 American Legion Highway, Roslindale, Massachusetts on June 21, 2005. Please consider this letter as notice of the pending action as required by Rule 15(c) of the Federal Rules of Civil Procedure. It is our intention to add KFC of America, Inc. as an additional defendant.

For your reference, notice of Ms. Brown's claim was given to the manager of the KFC store by letter dated July 23, 2002. A copy of the letter is enclosed. Subsequently, our office was contacted by a Dave Long of Gallagher Bassett Services, Inc., "in regard to a report of injury at our client location." A copy of Mr. Long's introductory letter dated March 1, 2003 is enclosed.

Very truly yours,

JOHN N. LEWIS & ASSOCIATES

John N. Lewis

JNL/jl

**EXHIBIT 5**

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President
KFC of America, Inc.
1441 Gardiner Lane
Louisville, KY 40213

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7002 2410 0000 6993 4012

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President
KFC Corporation
1441 Gardiner Lane
Louisville, KY 40213

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7002 2410 0000 6993 3992

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President
KFC Management, Inc.
1441 Gardiner Lane
Louisville, KY 40213

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7002 2410 0000 6993 4005

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

## EXHIBIT 6

# JOHN N. LEWIS & ASSOCIATES
## ATTORNEYS AT LAW
### 21 MERCHANTS ROW, 5TH FLOOR
### BOSTON, MASSACHUSETTS 02109
#### TEL: (617) 523-0777  FAX: (617) 523-1755

July 23, 2002

Mr. Dwayne Walker
Manager
Kentucky Fried Chicken
635 American Legion Highway
Roslindale, MA 02131

Re:    Gloria Borwn
       Date of Accident:    June 21, 2002

Dear Mr. Walker:

This office represents Ms. Gloria Brown with respect to personal injuries she sustained in your parking lot on June 21, 2002 around 6 PM. As you know, there is a hole in your parking lot into which defect Ms. Brown stepped into and fell. Enclosed is a picture of the hole. Ms. Brown was advised that you intentionally park your car over the hole to avoid these kinds of accidents, but at the time of this accident, you already had left for the day. Ms. Brown's personal injury required and will continue to require medical attention.

This letter will serve as notice of our client's claim for personal injuries sustained as a result of your negligence. Please contact your general liability insurance carrier and inform them of this claim asserted against KFC and you. If you prefer, you may contact this office with the name and phone number of such insurance carrier.

Very truly yours,

Lawrence R. Mehl
Of Counsel

# JOHN N. LEWIS & ASSOCIATES
## ATTORNEYS AT LAW
### 21 MERCHANTS ROW, 5TH FLOOR
### BOSTON, MASSACHUSETTS 02109
#### TEL: (617) 523-0777  FAX: (617) 523-1755

August 15, 2002

Dave Long
Claims Representative
Gallagher Bassett Services, Inc.
8 Flowers Drive
Mechanicsburg, PA 17050

RE:    Gloria Brown (our client) and KFC National Management, Inc.(your client)
       Your Claim No.: 012000-017291-GB-01

Dear Mr. Long:

In reply to your telephone call and letter of August 12, enclosed is a copy of the medical records I have in my file presently. As soon as I receive the executed medical authorization back from Ms. Brown, I will obtain the medical records and forward a copy to you. Ms. Brown advised me yesterday that she is having knee surgery right after Labor Day, and hopefully we can get you the information before then. Naturally, I will obtain all of the medical records, etc. from the surgery as well.

Yours very truly,

Lawrence R. Mehl
Of Counsel

**JOHN N. LEWIS & ASSOCIATES**
**ATTORNEYS AT LAW**
**21 MERCHANTS ROW, 5TH FLOOR**
**BOSTON, MASSACHUSETTS 02109**
**TELEPHONE (617) 523-0777  FAX (617) 523-1755**

September 19, 2002

Mr. Dave Long
Claims Representative
Gallagher Bassett Services, Inc.
8 Flowers Drive
Mechanicsburg, PA 17050

RE: Gloria Brown/KFC National Management, Inc., Your Claim No. 012000-017291-GB-01, Date of Incident: 6/21/02

Dear Mr. Long:

Enclosed are 3 black and white copies of the photos I have in my file that you requested.

Yours very truly,

Lawrence R. Mehl
Of Counsel

# JOHN N. LEWIS & ASSOCIATES
## ATTORNEYS AT LAW
### 21 MERCHANTS ROW, 5TH FLOOR
### BOSTON, MASSACHUSETTS 02109
TEL: (617) 523-0777 FAX: (617) 523-1755

October 29, 2002

Mr. Dave Long
Gallagher Bassett Services, Inc.
8 Flowers Drive
Mechanicsburg, PA 17050

RE:    Gloria Brown/KFC National Management, Inc., Your Claim No. 012000-017291-GB-01

Dear Mr. Long:

In connection with the above referenced claim, I enclose the medical records of Dr. Timothy Foster and a copy of the prescription profile through 9/12/02. In the near future, I expect to receive and forward to you the balance of the medical records from Ms. Brown's primary care physician, neurologist and the Boston Medical Center.

Yours very truly,

Lawrence R. Mehl

# JOHN N. LEWIS & ASSOCIATES
## ATTORNEYS AT LAW
### 21 MERCHANTS ROW, 5TH FLOOR
### BOSTON, MASSACHUSETTS 02109
#### TEL: (617) 523-0777 FAX: (617) 523-1755

November 7, 2002

Mr. Dave Long
Claims Representative
Gallagher Gassett Services, Inc.
8 Flowers Drive
Mechanicsburg, PA 17050

RE:    Gloria Brown/KFC National Management, Your Claim No. 012000-017291-GB-01, Date
of Incident: 6/21/02

Dear Mr. Long:

Enclosed is a copy of the balance of the medical records of Gloria Brown to date. I will
keep you informed as to developments.

Yours very truly,

Lawrence R. Mehl
Of Counsel

# JOHN N. LEWIS & ASSOCIATES
## ATTORNEYS AT LAW
### 21 MERCHANTS ROW, 5TH FLOOR
### BOSTON, MASSACHUSETTS 02109
#### TEL: (617) 523-0777  FAX: (617) 523-1755

December 2, 2002

Mr. Dave Long
Claims Representative
Gallagher Bassett Services, Inc
8 Flowers Drive
Mechanicsburg, PA 17050

RE:    Gloria Brown/KFC National Management, Inc.  Your Claim No. 012000-017291-GB-01

Dear Mr. Long:

    Enclosed is a copy of leg therapy notes through November 19, 2002.

Yours very truly,

Lawrence R. Mehl

# JOHN N. LEWIS & ASSOCIATES
## ATTORNEYS AT LAW
### 21 MERCHANTS ROW, 5TH FLOOR
### BOSTON, MASSACHUSETTS 02109
TEL: (617) 523-0777  FAX: (617) 523-1755

## BY FACSIMILE TRANSMISSION

*866-852-1376*

TO:        Dave Long
FROM:      Larry Mehl
DATE:      December 12, 2002
RE:        Gloria Brown, Your Claim No. 012000-017291-GB-01

Attached are 5 pages of medical bills from Per-Se Technologies.

BY FACSIMILE TRANSMISSION

# JOHN N. LEWIS & ASSOCIATES
## ATTORNEYS AT LAW
### 21 MERCHANTS ROW, 5th Floor
### BOSTON, MASSACHUSETTS 02109
Telephone: (617) 523-0777
Facsimile: (617) 523-1755
E-mail: jlewis4284@aol.com

BY FACSIMILE TRANSMISSION ONLY

TO:       Dave Long
FROM:     Larry Mehl
DATE:     March 5, 2003
RE:       Gloria Brown, Your Claim No. 012000-017291-GB-01

In our last conversation you mentioned you had information in which you inquired about Ms. Brown having a recent injury. The only injury she advised me about was for her thumb and neck (upper back), and attached is a copy of the medical report from Boston Medical Center dated June 2, 2002.

With respect to the injuries covered by the above referenced claim, Ms. Brown had an MRI on her right leg on February 9, 2003 and is scheduled to meet with the doctors for her spine and leg on April 10, 2003.

# JOHN N. LEWIS & ASSOCIATES
## ATTORNEYS AT LAW
### 21 MERCHANTS ROW, 5th Floor
#### BOSTON, MASSACHUSETTS 02109
Telephone: (617) 523-0777
Facsimile: (617) 523-1755
E-mail: jlewis4284@aol.com

March 6, 2003

Mr. Dave Long
Gallagher Bassett Services, Inc.
8 Flowers Drive
Mechanicsburg, PA  17050

Re:    Gloria Brown/KFC National Management, Inc., Your Claim No. 012000-017291-GB-01

Dear Mr. Long:

Mischaracterizing the medical information is not a productive way to resolve Ms. Brown's case. She had a minor accident in which her automobile was struck from behind, and she had some transitory symptoms for which she went to the Emergency Room once. There was no follow up treatment in the intervening month between her automobile accident and her fall at KFC and the records do not show any duplicate or overlapping symptoms which require "narrowing" our demand. Nor is the delay between Ms. Brown's fall and her MRI more than an example of her commenable restraint in seeking medical treatment. As to her "reluctance" to make a PIP claim, that is a diversion of your creation. She was injured due to the negligence of your insured, your insured is liable for her injuries and its consequences, and you were the one who self-servingly tried to creatively characterize this as a motor vehicle accident for the purpose of shifting the liability for her medical expenses to PIP. It was our opinion that fighting with her motor vehicle carrier over whether a fall due to a defect in a parking lot is conincidentally covered under PIP was a waste of time and resources. To reiterate, if you want to settle this claim, you need to deal with the real issues and not contrived ones. While it is not my intent to become confrontational, I do want to have any misstatements corrected.

Yours very truly,

Lawrence R. Mehl

JOHN N. LEWIS & ASSOCIATES
ATTORNEYS AT LAW
21 MERCHANTS ROW, 5th Floor
BOSTON, MASSACHUSETTS 02109
Telephone: (617) 523-0777
Facsimile: (617) 523-1755
E-mail: [illegible]@aol.com

BY FACSIMILE TRANSMISSION ONLY
August 5, 2003

Mr. Dave Long
Claims Representative
Gallagher Bassett Services, Inc.
8 Followers Drive
Mechanicsburg, PA 17050

Re:    KFC National Management, Inc./ Gloria Brown, Date of Incident 6/21/02,
        Roslindale, MA

Dear Mr. Long:

In reply to your letter of July 27, 2003, Ms. Brown has appointments with her physicians in a couple of weeks, at which time I have asked her to obtain the requested status reports. After we obtain all of the information, we will be in a better position to make a formal demand.

Yours very truly,

Lawrence R. Mehl

JOHN N. LEWIS & ASSOCIATES
ATTORNEYS AT LAW
21 MERCHANTS ROW, 5th Floor
BOSTON, MASSACHUSETTS 02109
Telephone: (617) 523-0777
Facsimile: (617) 523-1755
E-mail: jlewis4284@aol.com

August 6, 2003

Mr. Dave Long
Claim Representative
Gallagher Bassett Services, Inc.
8 Followers Drive
Mechanicsburg, PA 17050

RE:   KFC National Management, Inc./Gloria Brown 012000-017291-GB-01
      Date of Incident: 6/21/02

Dear Mr. Long:

Enclosed is a copy of medical reports dated April 2, 2003, May 14, 2003 and
July 16, 2003 on my client, Gloria Brown.

Yours very truly,

Lawrence R. Mehl

# JOHN N. LEWIS & ASSOCIATES
## ATTORNEYS AT LAW
### 21 MERCHANTS ROW, 5TH FLOOR
### BOSTON, MASSACHUSETTS 02109
**TEL: (617) 523-0777  FAX: (617) 523-1755**
e-mail: jlewis4284@aol.com

November 13, 2003

Mr. Dave Long
Claim Representative
Gallagher Bassett Services, Inc.
8 Foallowers Drive
Mechanicsburg, PA 17050

Re:    Gloria Brown/KFC National Management, Date of Incident 6/21/02

Dear Mr. Long:

Enclosed is a copy of the Blue Cross payments aggregating $34,431.16. I am waiting for the prognosis from Ms. Brown's physicians, upon receipt of which, I will forward to you and then hopefully will be in a position to submit a formal demand. I appreciate your patience.

Yours very truly,

Lawrence R. Mehl

# JOHN N. LEWIS & ASSOCIATES
## ATTORNEYS AT LAW
### 21 MERCHANTS ROW, 5TH FLOOR
### BOSTON, MASSACHUSETTS 02109
TEL: (617) 523-0777 FAX: (617) 523-1755

### BY FACSIMILE (866-852-5516)
December 3, 2003

TO:         Dave Long
FROM:    Larry Mehl
RE:         KFC National Management, Inc., Date of Incident 6/21/02
               Your Claim No. 012000-017291-GB-01

As additional information in reply to your November 7 letter, Gloria Brown is scheduled to visit
Dr. Foster, the orthopedist later this week. She has requested a written prognosis from him, upon
receipt of which I will forward directly to you. She is scheduled to visit her other physician later
this month, and a report likewise will be forthcoming to you. The only prior injury was an injury
to her right hand resulting from an automobile accident on May 31, as I believe previously was
explained to you. The related back injuries were discussed during the taped telephone
conversation with you last year. As soon as I have a completed list of Ms. Brown's out-of-pocket
expenses associated with the injury, I also will submit them as a part of the claim. I am preparing
a schedule of last wages to be submitted with our claim. If you have any questions, please let me
know.

# JOHN N. LEWIS & ASSOCIATES
## ATTORNEYS AT LAW
### 21 MERCHANTS ROW, 5TH FLOOR
### BOSTON, MASSACHUSETTS 02109
#### TEL: (617) 523-0777  FAX: (617) 523-1755

TO:          Dave Long
FROM:        Larry Mehl
DATE:        December 17, 2003
RE:          Gloria Brown, Your File No. 012000-017291-GB-01

Enclosed are the medical reports of Dr. Timothy Foster from inception to date along with the 2003 bills from him. I will forward the additional materials as received.

**JOHN N. LEWIS & ASSOCIATES**
**ATTORNEYS AT LAW**
**21 MERCHANTS ROW, 5TH FLOOR**
**BOSTON, MASSACHUSETTS 02109**
TELEPHONE (617) 523-0777 FACSIMILE (617) 523-1755

August 20, 2004

Mr. Dave Long
Gallagher Bassett Services, Inc.
8 Followers Drive
Mechanicsburg, PA 17050

Re:    KFC National Management, Inc./Gloria Brown 012000-017291-GB-01 Date of Incident 6/21/02

Dear Mr. Long:

I apologize for the delay in corresponding with you, but I have had some personal and family medical issues that have occupied my time for the past several weeks.

Enclosed are various medical reports for 2004 through April, and I previously have sent you Ms. Brown's out-of-pocket expenses aggregating to date $45,792.88, comprised of mileage, parking, gasoline, co-payments, medicines, personal assistance, scooter rentals, etc.

I also enclose and hereby make formal demand for $508,207.88. After you review the file, I will appreciate hearing from you.

Yours very truly,

Lawrence R. Mehl

 Gallagher Bassett Services, Inc.    **EXHIBIT 7**

September 6, 2002

Lawrence Mehl, Esq.
John N. Lewis & Asscociates
21 Merchants Row
Boston, MA 02109

RE:    Our Client:        KFC National Management, Inc.
       Your Client:       Gloria Brown
       Our Claim No:      012000-017291-GB-01
       Date of Incident:  6/21/02
       Location:          Roslindale, MA

Dear Mr. Mehl:

Gallagher Bassett Services, Inc. is the claims administrator for the above captioned client. This correspondence is in regard to a report of injury at our client location.

1. I have received your copy of initial medical records. Please keep me up to date on the status and recovery of your client.
2. I would like the opportunity to secure your client's recorded statement of facts concerning this incident.
3. It is my understanding that Mrs. Brown was able to take some photos of the scene. May we have a copy?

Thank you in advance for your cooperation.

Sincerely,

Dave Long
Claims Representative
717-697-1266 x281

8 Flowers Drive
Mechanicsburg, PA 17050
Phone: (717) 697-1266 x281
Fax:    (866) 852-5516
Email: David_Long@gbtpa.com

 Gallagher Bassett Services, Inc.

October 10, 2002

Lawrence Mehl, Esq.
John N. Lewis & Asscociates
21 Merchants Row
Boston, MA  02109

RE:    Our Client:          KFC National Management, Inc.
       Your Client:         Gloria Brown
       Our Claim No:        012000-017291-GB-01
       Date of Incident:    6/21/02
       Location:            Roslindale, MA

Dear Mr. Mehl:

Please find enclosed a copy of the transcribed recorded interview with your client, Gloria Brown

Thank you for your cooperation.

Sincerely,

Dave Long
Claims Representative
717-697-1266 x281

Enclosure:

8 Flowers Drive
Mechanicsburg, PA  17050
Phone: (717) 697-1266 x281
Fax:    (866) 852-5516
Email:  David_Long@gbtpa.com

 Gallagher Bassett Services, Inc.

March 1, 2003

Lawrence Mehl, Esq.
John N. Lewis & Associates
21 Merchants Row
Boston, MA  02109

RE:     Our Client:          KFC National Management, Inc.
        Your Client:         Gloria Brown
        Our Claim No:        012000-017291-GB-01
        Date of Incident:    6/21/02
        Location:            Roslindale, MA

Dear Mr. Mehl:

Gallagher Bassett Services, Inc. is the claims administrator for the above captioned client. This correspondence is in regard to a report of injury at our client location.

1. Please keep me up to date on the status and recovery of your client.

2. I see from the medical records that Ms. Brown had some injuries prior to this incident. Would you please provide medical supports for those injuries as related to the injuries she is expressing from this mishap?

3. Are you prepared to submit a formal demand at this time?

Thank you in advance for your cooperation.

Sincerely,

Dave Long



Gallagher Bassett Services, Inc.


August 12, 2002


Lawrence Mehl, Esq.
John N. Lewis & Asscociates
21 Merchants Row
Boston, MA  02109


RE:    Our Client:          KFC National Management, Inc.
       Your Client:         Gloria Brown
       Our Claim No:        012000-017291-GB-01
       Date of Incident:    6/21/02
       Location:            Roslindale, MA

Dear Mr. Mehl:

Gallagher Bassett Services, Inc. is the claims administrator for the above client. We have received your Letter of Representation concerning your referenced client.

Your client's claim has been assigned to me for handling. I can be contacted by telephone at the number below. Our office hours are 8:30 a.m. to 4:30 p.m. EST, Monday through Friday, excluding holidays. Please refer to the claim number whenever you call or write.

In order that we may meet our obligation to investigate this claim on a timely basis, we ask that you provide the following:

1.    Your client's full name and any other names by which they may be known, driver's license numbers/State, auto insurance carrier and policy number, marital status/spouse's name, occupation, employer name, address, telephone and hourly or monthly salary.

2.    Names, addresses, and telephone numbers of any and all treating medical entities, and execution of the enclosed Medical and Wage Information Consent forms.

3.    Names, addresses and telephone numbers of persons known to your client to have witnessed this incident.

4.    The opportunity to secure your client's recorded statement of facts concerning this incident and related injuries.

8 Flowers Drive
Mechanicsburg, PA  17050
Phone:  (717) 697-1266 x281
Fax:    (866) 852-5516
Email:  David_Long@gbtpa.co

Long -- Page 2

We request that you provide the requested information in a timely manner so that we may fully assess the facts in this claim and proceed toward the appropriate resolution.

Please call to make arrangements for your client's statement and/or if you have any questions.

Thank you in advance for your cooperation.

Sincerely,

Dave Long
Claims Representative
717-697-1266 x281

Enclosures:

## AUTHORIZATION FOR MEDICAL REPORTS & RECORDS

TO WHOM IT MAY CONCERN:

You are hereby authorized to furnish to **GALLAGHER BASSETT SERVICES, INC., 8 FLOWERS DRIVE, MECHANICSBURG, PA 17050,** any reports or information whatsoever they may request regarding the medical history, physical condition and treatment rendered by:

(list doctor/address/phone #)_____

_____

and, if requested, to permit them or any person appointed by them to examine any and all X-ray pictures or records, regarding the physical condition of or treatment rendered to:

Gloria J. Brown

_____

SIGNATURE & DATE

_____

WITNESS

SS#:_____

DOB:_____

List any additional treating physicians:

Name:_____       Name:_____

Address:_____       Address:_____

_____       _____

Phone #:_____       Phone #:_____

Our Claim No.:  012000-07291-GB-01
Adjuster        Dave Long

## AUTHORIZATION FOR INFORMATION ON EMPLOYMENT

## TO WHOM IT MAY CONCERN:

I hereby authorize my employer, _____ to release any and all information concerning my employment, past or present, including rate of pay, duties performed, dates of absences and reasons therefore. Photocopies of this authorization carry the same authority as the original.

_____

SIGNATURE & DATE

_____

WITNESS

Employer: _____

Employer Address: _____

Employer Phone #: _____

Our Claim No:    012000-017291-GB-01

Claimant:    Gloria J. Brown

Date of Accident: 6/21/02

Adjuster:    Dave Long

 Gallagher Bassett Services, Inc.                    Brown, Gloria 012000-017291-GB-01

November 7, 2003

Lawrence Mehl, Esq.
John N. Lewis & Asscoiates
21 Merchants Row
Boston, MA  02109

RE:    Our Client:          KFC National Management, Inc.
       Your Client:         Brown, Gloria 012000-017291-GB-01
       Date of Incident:    6/21/02
       Location:            Roslindale, MA

Dear Mr. Mehl:

Gallagher Bassett Services, Inc. is the claims administrator for the above captioned client.  This correspondence is in regard to a report of injury at our client location.  Your last correspondence was dated August 6, 2003.  I have not received medical supports related to the May 31, 2002 and June 27, 2003 incidents.

1.    What is the status of the June 21, 2002 incident?  In review of your latest submittal, the right side bursitis treatment does not appear related to the left knee surgery.

2.    I see from the medical records that Ms. Brown had some injuries prior to this incident.  And in review of the medical there is no Emergency Room Report to support back injury of 8/20-23/02.  Would you please provide medical supports for those injuries as related to the injuries she is expressing from this mishap?

3.    Are you prepared to submit a formal demand at this time?

4.    If we do not have a written response from you in writing within 30 days, I will base my evaluation on the information I have on hand.

Thank you in advance for your cooperation.

Sincerely,

Dave Long

 Gallagher Bassett Services, Inc.          Brown, Gloria 012000-017291-GB-01

July 27, 2003

Lawrence Mehl, Esq.
John N. Lewis & Asscociates
21 Merchants Row
Boston, MA  02109

RE:    Our Client:        KFC National Management, Inc.
       Your Client:       Brown, Gloria 012000-017291-GB-01

       Date of Incident:   6/21/02
       Location:          Roslindale, MA

Dear Mr. Mehl:

Gallagher Bassett Services, Inc. is the claims administrator for the above captioned client. This correspondence is in regard to a report of injury at our client location.

1.  Please keep me up to date on the status and recovery of your client.

2.  I see from the medical records that Ms. Brown had some injuries prior to this incident. And in review of the medical there is no Emergency Room Report to support back injury of 8/20-23/02. Would you please provide medical supports for those injuries as related to the injuries she is expressing from this mishap?

3.  Are you prepared to submit a formal demand at this time?

Thank you in advance for your cooperation.

Sincerely,

Dave Long

 Gallagher Bassett Services, Inc.

October 4, 2004

Lawrence Mehl, Esq.
John N. Lewis & Asscociates
21 Merchants Row
Boston, MA  02109

RE:    Our Client:         KFC National Management, Inc.
       Your Client:        Brown, Gloria 012000-017291-GB-01
       Date of Incident:   6/21/02-fall in parking lot
       Location:           Roslindale, MA

Dear Mr. Mehl:

Gallagher Bassett Services, Inc. is the claims administrator for the above client.  This letter is in response to yours of dated August 20, 2004.

Please be advised that this is not a clear case of liability.  We cannot evaluate a case on projected or estimated future loss without knowing the extent of Ms. Brown's medical issues five (5) years prior to the date of incident. Therefore, we must respectfully reject your demand of $508,207.88

If you still would like to consider resolution at this time, please provide us with all medical documentation since July 1, 1997 and a reasonable demand and we will consider the same.

Thank you for your attention.

Sincerely,

Dave Long
Claims Representative
717-697-1266 x281

# EXHIBIT 8

 Gallagher Bassett Services, Inc.

CLAIM #012000-017291-GB-01
Long/Brown
PAGE 1

This is Dave Long with Gallagher Bassett Services, I'm representing Kentucky Fried Chicken, I'm talking on the phone with uh Mr. Mehl, attorney uh for the claimant, Gloria Brown. Uh, today's date is October 2nd, 2002; the time is approximately 11:41 a.m. EST.

Q    Uh, Mrs. Brown, do you understand that we are recording our conversation?

A    Yes I do.

Q    Okay, I'm not sure if it's Ms. Brown or Mrs. Brown, I apologize for that. Do I have your permission to tape this uh conversation?

A    Yes you do.

Q    Okay. And uh please state your name and spell your last name.

A    My name is Mrs. Gloria Brown; last name's spelled B R O W N.

Q    And your address?

A    My home address is 80 Seminole Street, spelled S E M I N O L E, and that's in Hyde Park, MA 02136.

Q    Okay. Uh, your home phone number, please?

A    Area code 617-361-0851.

Q    Okay. Now for purposes of this tape and for identification, could I have your date of birth?

Atty  Uh oh!

A    A little hesitation there. My date of birth is August 31st, 1948.

Q    Okay, and Social Security Number?

A    It's 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.

Q    Okay, are you employed, Mrs. Brown?

A    Yes I am.

Q    Your occupation?

A    I'm an overnight child-care counselor.

Q    And how long have you been doing that?

A    I'm going on six years.

Q    Six years, okay, great. All right, um, I understand there was an incident happened uh I got a rough date of June 21st; could you tell me about what time that happened?

A    It was on Friday, June 21st, and it happened at approximately 5:40 p.m.

Q      P.m.? Okay. ?_____? verify, yeah, 21st, that's what I have here. Uh, from your perspective, what happened? Just start right where –

A      – right where it happened?

Q      Right where it happened.

A      Okay. Uh, both my parents are hospitalized and on the weekends we go drive down to Pennsylvania. Uh, it was my turn to go get the food to eat around 9 o'clock so I said, "I'll go to Kentucky Fried Chicken and I'll get, you know, some food for us to take on the trip". When I got to uh I came down American Legion Highway, made my right-hand turn –

Q      – yeah, are we in Pennsylvania or are we in Massachusetts?

A      We're in Massachusetts, American Legion Highway. Kentucky Fried Chicken. We never went. So – uh but when we, I made a right turn off of American Legion Highway into the parking lot of Kentucky Fried Chicken. It was hot –

A      -- you have the address don't you David?

Q      Yeah. I have Rosalind Dale.

A      Rosalind Dale, Mass.

Atty   Want to make sure.

A      Okay. So uh I made the right-hand turn and decided to take the very first available space on the right side. As I said, it was getting near 6 o'clock, it was, looked like the line in the drive-thru was really crowded and I didn't want to sit in line. So as I proceeded to pull in, there was a car right next to that spot, which would've been to my left. There was a woman who had several child – small children in the back, I didn't know if they were getting ready to leave or had they just arrived but I sat there because I didn't want the kids to throw the door open and me hit one of them. So I sit there about maybe a minute, then I saw the backup lights come on on that car to my left and I proceeded in to my parking space. Shortly thereafter about two seconds later, another car pulled in which now has a car on my left and nothing on my right. At that time when the guy parked his car and got out, I told my granddaughter, six years old, she was in the back, I told her to get out of her car seat and to come stand beside my door, which was now open. I opened the door. She came up and she stood beside me on my left. And I rolled the windows up because it must've been like 90-some degrees, I didn't want to roll 'em up with her in the car, I had her come sit beside, stand beside me, I rolled the windows up, I started to roll the windows up but I wanted to take out my money, put my wallet under the seat –

Q      -- are your windows electric?

A      My windows are, yes, electric.

Q      Okay, so you were doing this from the driver's –

A      – from the driver's side.

CLAIM #012000-017291-GB-01
Long/Brown
PAGE 3

Q    Proceed.  Okay.

A    Yes sir.

Q    You were still seated in the car?

A    I was still seated in the car.

Q    Okay, gotcha.

A    Okay, but I had the air-conditioning on first, and as I was waiting for the lady to leave, I turned it off and then let my windows down.  I wasn't going to burn my ?_____? just sitting there, so – uh, so now I'm just sitting in the car, my granddaughter came out and stood beside me on my left, I uh fixed my wallet, put away my things that I didn't want, my computer and stuff, on the seat.  Then I rolled the windows up.  And I stepped out of the left side, which is the driver's side, of my car.  After I got out, I bent forward slightly to look in to the passenger front window because when I hit my door lock on the driver's side, three out of four lock, that one on the driver's side does not lock, on the passenger side, I'm sorry.  Does not lock.  So I got out of my car, pushed the button, bent over to see if my door was locked, yes, it was locked, I continued rolling up now the driver's side window.  I backed up maybe two steps or so to close the door in front of me.  And I had to hold on to the handle because the, the kids broke my door lock so I have to hold the, hold it up as I lock the door.  Which means I have to be, I had to have a grip on it and close it so I was standing right beside the door.  I backed up maybe two steps maybe, I don't know, and I turned towards my right still checking on my windows, and I made maybe two steps maybe three steps to my rear of my automobile, which is now I'm facing my rear door, which is open.  So now I want to close this door –

Atty    -- ?_____? daughter got out, right?

A    My grand daughter got out –

Atty    -- ?_____? –

A    – she got out, so she did what I said, I said, "Get out of the car and come out", I didn't say "Close the door" or anything, ?_____? exactly what you tell 'em to do; I even said "Close the door".  So she's standing beside me, uh, I turn around to close that back door, which I took a couple of steps, I put my hand oh not right in the middle but near to the end where the door handle is, as I push that door and put my foot down, my foot went into – it either went directly into the side of the hole or the, the rim of the hole, I don't know, but it went into the hole, I lost my balance, I didn't want to fall on my grand daughter, I tried to catch myself with my right foot putting it behind me but it also went in the hole.  I fell on the ledge of my rear passenger side, driver's side, on that big round thing that's – the lugs, where you put the lugs.  I tried to get up a little bit because I was kind of –

Atty    -- onto the wheel!

A    Yeah, still on that wheel.

Atty    Right.

A    Still on the wheel.

CLAIM #012000-017291-GB-01
Long/Brown
PAGE 4

Q     The hubcap area?

A     The hubcap area. The thing –

Atty  -- you have the pictures I sent you, don't you?

Q     Yeah, I'm looking at 'em right now.

Atty  Okay. Good.

A     And when I fell on the, the uh hubcap thing, I sat there for maybe a second, I tried to get myself up and fell back onto the rear quarter panel of my car, right above that tire, and I kind of just stayed there and rested until I got myself together.

Q     So I'm to understand that uh you stepped on the rim, your left uh leg went into, knee went into the hubcap?

A     No sir.

Q     Oh, I'm sorry.

A     My knee never hit the hubcap. My left foot must've cracked the rim of that hole I started to fall over, I almost grabbed my daughter – my grand daughter – but I put my foot behind me –

Q     -- so your right foot was on the rim of that, of the –

A     -- my left foot was, my left foot had already started to make me fall. It either cracked the rim or just inside that hole. As I started to fall backwards, I took my right foot and tried to put it behind me to catch myself but I was going too far too fast and I fell with my backside on that uh rim thing. Thing of my car. So but my knee never hit anything, I just remembered twisting away from my grand daughter because I didn't want to fall on her. I twisted myself away from her, knowing that there's a car there I'm going to probably brace myself; I didn't realize I was bent so low or that I was moving so fast that I went down so far, and I fell on that thing that sticks out of my tire.

Q     Okay. Let's see if I got – just to back up a second – there was a car parked beside you?

A     When I entered the lot before I parked, yes, there was a car sitting in that –

Q     – but it had pulled out?

A     Uh huh.

Q     And then –

Atty  -- hold on a minute –

Q     – and then you parked and another car came in.

A     I parked –

CLAIM #012000-017291-GB-01
Long/Brown
PAGE 5

Atty -- hold on a minute, Dave!

Q    Yeah. Still there?

Atty yeah, but wait just a minute. There was a car on your –

A    – the car was –

Atty -- left or on your right?

A    The car was on my left. I'm in the very first ?_____? –

Atty -- okay, I just wanted to –

A    -- ?_____? –

Atty -- I just want to clarify that.

A    The car was on my left.

Atty Okay.

A    And I wasn't looking at the ground, I was looking at those kids. I work with kids and I wouldn't dare to want to hit one, I wanted to make sure they didn't swing that door open 'cause I figured I've got a big enough car I would've hurt a child so I watched the children get settled, they were all over the place, and then when I saw the lady's back-up lights come on, I realized she was leaving, her car's in gear, motions, I pulled in.

Atty Okay.

A    Then another car pulled in beside, right after she left, a car pulled in before I told my grand daughter to get out.

Q    Okay, I understand that. Okay. You got out of your car, the rear door was open and you were pushing that door shut when you were proceeding to the rear of your car?

A    Well, I got out of, I turned around and took a couple of steps to put my hands on the door, I just had to push that door, I didn't have to grab the corner of the door, I could just push it but you have to be over so far before you can push it, you can't push on the ?_____?.

Q    You put your hand on the door when you stepped on the rim of that hole.

A    My hand was on, I was pushing with my open hand, to slide the door when my foot came down it went in the hole, so I went in the hole at the same time I was closing the door.

Q    Okay. Now can you describe the hole, what it looked like?

A    Uh, when I think back now, it looked the size of the uh maybe a steering wheel, maybe a little bit bigger than the steering wheel on my car. It was, it looked like it was perfectly round, it, it was, maybe a few inches deep.

CLAIM #012000-017291-GB-01
Long/Brown
PAGE 6

Q    Was it a manhole cover that was removed or –

A    – no, it was a sinkhole.

Q    It's a sinkhole?

A    Uh huh.

Atty  In the parking lot!

A    In the parking lot.

Atty  You see the picture there?

Q    Yeah.

Atty  Okay.

Q    Yeah. Okay, and I see a white line that goes over the top of it?

Atty  Right.

Q    So they painted right over the top of it where the sinkhole sunk after the line was painted.

A    They looked like when I looked at it that day, down in the, believe it or not they painted so far and they left the hole, they didn't paint through the hole, that's old paint from a long time ago in that hole but the new paint, you can see now you can clearly see that they painted up to – but they didn't paint through the hole. Little white stuff that's in there is old stuff, old news, old pieces of paper and stuff that's embedded into that hole.

Q    Okay. And the car, and the car next to you was about the same distance uh you know a foot or two inside the line, and there was a pathway to walk through.

A    Oh, there's plenty of room, I'm inside where my car should be legally parked. Okay. With my doors open I'm just about on that line. That, there's another car that's parked over there and he's probably seven/eight inches from the line, ten inches from the line itself, it's, there was ample room to walk through there.

Q    But you didn't see?

A    But I didn't see what?

Q    You didn't see the divot in the ground or the hole in the ground?

A    I did not because my rear door was open, with that door open and me in between those two doors, I cannot see the ground; I never saw the ground.

Q    Okay, and you didn't, you said you didn't see it when you pulled in?

A    I did not look at the ground, I was watching the children, I just assumed that that was a parking space, I could clearly see the white line, there was nothing else there, there was only, nothing there but that white line which I was headed into purposely parked,

but my focus was on the children in the car that I didn't want to hit someone's child if they swung that door open, I don't have a very small car and it probably would've done a lot of damage ?_____?.

Q    Okay. On the, on the picture that I see here in front of me, I'm looking at probably the second in the series, uh, is that where your car was parked when it happened; is this picture relevant ?_____? —

A    My car, sir, is parked exactly where it was.

Q    So that was at the time it happened or just after the time —

A    — that car never moved until — well, I don't know what time my car moved, I left in an ambulance, but that's exactly where my car was parked. There should be a picture where ?_____? standing beside my car as well.

Q    I see a, a photograph of like a newspaper on the ground.

A    Yeah, they were trying — my husband was trying to show, maybe the date of the paper or — I don't know what they were trying to show.

Q    Okay, I see a foot print on the paper.

A    My foot is on that —

Q    — and the next paragraph I — or the next photo I see is the uh a person sitting in the car.

A    That's me sitting in the car, my, my husband was taking the uh I was getting my wallet and my personal things out, and at the same time I believe the ambulance was pulling in, I don't know if you can see it, but I didn't want to stand, it was very, very hot, it was extremely hot and I just — I was crying when I got in the car.

Q    Okay, uh, the other question I have is uh did you turn this in to your insurance carrier by any chance?  The reason I'm asking that is if you're alighting from a vehicle, some policies cover that.

A    What — I'm sorry, say that again?

Q    Did you turn this in to your insurance carrier for your vehicle?

A    No sir because —

Atty    — no —

A    — as far as I'm concerned my vehicle was the problem, it was the hole. I was out of my car, my car had nothing to do with that hole.

Q    So did you check —

Atty    — PIP coverage?

CLAIM #012000-017291-GB-01
Long/Brown
PAGE 8

Q    Did you check to see if you had coverage for alighting and – alighting the vehicle?
     Alighting from the vehicle. Did you check to see if you had coverages for that, at least
     your medicals?

A    No, because –

Atty  -- we'll look in to that.

Q    Yeah, I think if you're having problems with medicals, at least your medical insurance
     should cover that and most policies do if you're entering or alighting from a vehicle and
     you still have contact with it.

A    Well, uh, contact – my foot in the hole, I lost my balance, I don't, I don't know.

Q    Right, but your hand, you said, was on your door?

A    My open hand just pushed the door, I wasn't holding on to the door, I just flung the door
     out of my way.

Atty  Are you talking about the PIP coverage?

Q    Uh, no – it wouldn't be PIP coverage, no.

Atty  All right.

Q    No.

Atty  So ?_____? –

Q    -- ?_____? I don't know what company you have, whether you have State Farm
     or Nationwide or something like that? Do you know what company you have?

A    Do I know what automobile –

Q    – yeah, what's your insurance company uh –

A    – yes I do know.

Q    Auto insurance company?

A    Yes I do.

Q    Could you let me know what it is?

A    My automobile sure, insurance?

Q    Yes.

A    It's Amica.

Q    Omica.

A    A M I C A.

Atty  Right.

Q.    Okay. Yeah, I would look in to that if you're having bill problems right now, I don't know who's taking care of medicals or do you have Blue Cross/Blue Shield or something like that?

A     I have Blue Cross/Blue Shield, my husband carries it.

Q     Okay, and uh after this, after you, I, I'm not sure if anybody helped you up, did your grand daughter help you up or – uh – did someone come along and help you up after that?

A     No, my grand daughter's six years old, she was crying. Uh, she wanted, she didn't know what had happened.

Q     Okay, was there anybody to assist you right there, I think that's where we stopped on the –

A     – there was no one to assist me, I just sat there until I got my composure. And I hobbled in to the store.

Q     Okay, so you went in to the store to report it? Is that correct?

A     Yes I did!

Q     And did someone assist you there? Uh, I ?_____?, did they call an ambulance for you or –

A     – no, you know, they basically didn't do very much for me, they explained to me that the manager, who left for the day, parked his car over the hole so nobody would fall in it. But his name was Dwayne Walker and he was not there then. There were four other managers, after I told them at the, at the uh counter, that I had fallen in their hole, the gentleman, I think it was James – no, it was James who said, "Let me see it". I went back out of the store with this gentleman, showed him my car parked in the same spot and the hole that was in the ground that I did not see.

Q     So you – you did show the store where that was?

A     I showed, I showed four of your managers. I showed Christina, Francisco, James and Victor. That there was a hole there, that I had fallen in to, and they made me aware of it that they knew that the hole was there and that Mr. Walker parked his car over it when he's on duty so no one falls in it, and my, I asked 'em, "Well, where's Mr. Walker now, because I fell in that hole". And I was not on my car when I fell, I had nothing to do with my car, I had slammed that door, the car was still free from my hand when I stepped in to that hole. I was not, it had nothing to do with my automobile.

Q     Okay. What kind of, what kind of injuries do you have?

A     What kind?

Q     Yeah.

A    I don't still know the extent of all my injuries; I just had surgery on my left leg for torn meniscus.

Q    Is that – is that due to this incident?

A    That is due to the fall, that's why I left in a ambulance because we didn't know what was wrong, my leg was very swollen, I left there approximately 10/15 minutes past 6 and was taken to the hospital for my left knee injury, uh, which was most important at that time.

Q    I see you have a torn left knee meniscus.

A    I've had surgery on it to repair it.

Q    And surgery since.

A    Yes. I am still having problems with my back and I'll be seeing a neurologist or something ?_____? --

Q    – that's lower back, upper back?

A    Lower back.

Atty    Lower!

Q    Okay. And the, you have what, their diagnosis uh or a symptom or in your lower back?

A    I had some –

Atty    -- we've ordered all the records.

Q    Okay. Uh, are we looking at –

Atty    -- we did not get those yet.

Q    Okay, is it lower back pain or –

A    It's lower back, I'm having a terrible time with my back and I, I'm on a lot of medication so that I can lay down.

Q    On medication for that, okay.

Atty    Do you know what medications that you're taking?

A    Right now I'm on Percoset to uh relieve the pain so that I can lay.

Q    Uh, while we're still on the injuries, were there any previous knee injuries or back injuries?

A    No, no sir.

Q    Never had any?

A    No sir. I sit for a living so – can't sit now but up until the 21st I sat for a living.

CLAIM #012000-017291-GB-01
Long/Brown
PAGE 11

Q    Okay. And you went to the ER?

A    Yes sir.

Q    What, what hospital was that?

A    Boston Medical Center.

Q    It was at Watson?

A    Excuse me?

Q    Oh Boston!

Atty    Boston!

A    Boston.

Atty    Boston Medical Center.

Q    Got it.

Atty    All right.

Q    And uh –

Atty    – that's at BU.

Q    Yeah. Okay, and the treatment you got there was the x-rays?

A    I had an x-ray that evening, I had uh ?_____? splint for my left leg, some – a knee immobilizer. A crutch.

Q    Okay. And then you followed up with an orthodontist or – orthopedic surgeon or – ?_____? –

A    – no, not right away. Uh, the pain between my back and leg was so bad that I went back a couple of times and finally they wanted me to see the orthopedic doctor, which I did the beginning of July, and had a MRI done which showed the torn meniscus in my left leg.

Q    Okay. Uh, and Percoset that you're taking, is that what you're taking right now or is that what they started you on?

A    That's what I'm taking now because of –

Q    – what's your milligram on that?

A    I remember 320 something and 5, I –

Q    – you're taking it how many times a day?

A    I take uh three times a day.

CLAIM #012000-017291-GB-01
Long/Brown
PAGE 12

Q    Okay. Are you able to sleep okay?

A    When I take the medication?

Q    Yeah.

A    Yes. Usually it knocks me out.

Q    Okay. Now uh you had told me you're employed and have you had some wage loss?

A    Oh yes I have.

Q    Okay, and uh about how much?

A    Oh geez –

Atty  -- have you been back to work?

A    No I am not back to work.

Q    Oh, you haven't returned to work yet.

Atty  Not yet.

A    Have not.

Q    All right, so from the date of loss to now still, still not back at work, and the doctor has released you from work?

A    No he has not. He has not told me to go back yet.

Q    Okay. So he hasn't released –

Atty  -- how much were you making there, Gloria?

A    Well, I missed my raise. Uh, I was making $10.44 on the day that I got hurt and that next week, $11.33. but I haven't been there.

Atty  That's hourly, right?

A    Uh huh.

Atty  ?_____? Week?

Q    All right.

A    Forty hours, but I work 50/60 hours.

Atty  Usually.

A    Usually.

Atty  Every week.

CLAIM #012000-017291-GB-01
Long/Brown
PAGE 13

A    Every week.

Atty  Fifty to sixty hours.

A    Yep.

Q    Okay. All right, is uh I think I pretty much have it uh covered, the photographs were taken while you were waiting for the ambulance to arrive?

A    Yes.

Q    And your husband was there to take the photographs?

A    My daughter, my husband, yes.

Q    And he was, they were not passengers in your vehicle but evidently they live close by?

A    They were at home, I called them after I'd fell in the hole and was having a lot of difficulty walking, then I called 'em because I didn't know what to do.

Q    Okay. Uh, so uh I think that's about all I have on this, uh --

Atty  -- will you copy us, please? On your report?

Q    Oh you want a transcript?

Atty  Yes. Thank you.

Q    Okay. Uh, you understand that our conversation was recorded?

A    Yes I do.

Q    And uh did you understand all the questions that I asked?

A    Yes I did.

Q    Okay, were your answers true and correct to the best of your knowledge?

A    My answers were true and correct.

Q    Okay, is there anything else you'd like to add?

A    Oh gee, this is my time to talk, huh?

Q    Yes it is.

A    Uh, I, I can't think of anything else, it's just that, you know, it just happened, you know, I don't know.

Q    Okay.

Atty  What's the next step?