UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GLORIA BROWN,    )
    Plaintiff    )
        )
v.    )    CIVIL ACTION
        )    NO. 05-CV-11167-MBB
        )
KFC CORPORATION,    )
    Defendant    )

**DEFENDANT'S MOTION TO EXCLUDE FROM THE TRIAL PORTIONS OF
THE VIDEOTAPED TRIAL TESTIMONY OF DR. TIMOTHY E. FOSTER**

    Defendant KFC Corporation, by its attorneys, hereby moves that the Court

issue an order excluding from trial portions of the videotaped trial testimony of Dr.

Timothy E. Foster.  Specifically, by this Motion, defendant seeks exclusion of the

following portions of the testimony:  (1) page 41, line 17 through p. 43, line 3; (2) page

50, lines 2-16; (3) page 53, lines 5-19; (4) page 85, line 19 through page 86, line 6; (5)

page 57, line 13 through page 60, line 6; (6) page 73, line 22 through page 76, line 10; (7)

page 82, line 1-23; (8) page 88, line 17 through p. 89, line 6; (9) page 54, line 6 through

page 55, line 1; (10) page 51, line 6 through line 23; (11) page 78, lines 8-13 and (12)

page 40, lines 1-13.

    In support of this Motion, defendant relies on its Memorandum of Law filed

herewith.

**LOCAL RULE 7.1(A)(2) CERTIFICATION**

    I, Lawrence R. Holland, Esq., hereby certify that prior to filing this Motion, I

attempted to contact plaintiff's counsel, John Lewis, Esq., by telephone on February 16,

2007 in order to comply with the requirements of Local Rule 7.1(A)(2), but I was not able to reach him.

Respectfully submitted,

Defendant,
By its Attorneys,

Lawrence R. Holland, Esq.
BBO# 554839
Legal Management Services, LLC
55 Hammarlund Way
Middletown, RI 02842
(401) 843-8400

Dated: February 16, 2007

CERTIFICATE OF SERVICE

I, Lawrence R. Holland, Esq., certify that I understand that counsel of record will receive electronic notice of the electronic filing of the foregoing Motion and will receive service in that fashion.

_____
Lawrence R. Holland

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GLORIA BROWN,       )
    Plaintiff       )
              )
v.       )     CIVIL ACTION
              )     NO. 05-CV-11167-MBB
              )
KFC CORPORATION,       )
    Defendant       )

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE FROM THE TRIAL PORTIONS OF THE VIDEOTAPED TRIAL TESTIMONY OF DR. TIMOTHY E. FOSTER**

Defendant KFC Corporation, by its attorneys, hereby submits its Memorandum of Law in Support of its Motion to Exclude from the Trial Portions of the Videotaped Trial Testimony of Dr. Timothy E. Foster.  Defendant's Memorandum is as follows:

I.    <u>STATEMENT OF FACTS</u>

In this action, plaintiff alleges that on June 21, 2002, she fell at the KFC restaurant located at 625 American Legion Highway, Roslindale, Massachusetts and sustained injuries ("the alleged incident").  She alleges that she tripped over a small pothole.

Plaintiff claims to have sustained a torn meniscus in her left knee and a back injury.  She further claims to have developed an injury to her right knee as a result of having to walk with crutches and subsequently a cane.

Plaintiff had arthroscopic knee surgery on her left knee in September, 2002.  The surgery was performed by her treating orthopedist Dr. Timothy Foster.  Dr. Foster's

medical practice is limited to shoulder and knee surgery. [See Exhibit A, p. 8].[1]  In the course of his practice, he does not treat back injuries. [See Exhibit A, p. 57].

Plaintiff first treated with Dr. Foster on July 17, 2002, and she last treated with him more than three years ago in December, 2003. [See Exhibit A, pp.14, 55-56].  When plaintiff last treated with Dr. Foster, he recommended further treatment for plaintiff's knees that he believed would improve her condition, and plaintiff declined the treatment. [See Exhibit A, p. 57].

In the course of his treatment of plaintiff, Dr. Foster performed only a "cursory" examination of her back, and then referred plaintiff to an orthopedic spine surgeon who specializes in back problems. [See Exhibit A, pp. 58-59].  Although Dr. Foster referred plaintiff for an MRI of her back, his testimony concerning this referral was as follows:

> I do that as a courtesy to the patient, and the patient's complaining of lumbar spine pain.  Although I don't treat – I don't typically treat lumbar spine pain, I do it as a courtesy to the patient, and I get the MRI scan, and then I would typically have the patient see a colleague of mine who is a spine specialist, and I find that the examination is much more fruitful if the patient has an MRI scan before she sees the spine specialist.

[Exhibit A, p. 27].

Dr. Foster's records do not contain any diagnosis of plaintiff's alleged back injury. [See Exhibit A, p. 59].  Dr. Foster did not record a diagnosis of plaintiff back injury in his notes because plaintiff was not seeing him for her back injury. [See Exhibit A, pp. 59-60].  He did not provide any medical treatment to plaintiff for her alleged back injury. [See Exhibit A, p. 88].

During his videotaped testimony, Dr. Foster admitted on cross-examination that any opinions that he rendered concerning plaintiff's alleged back injury are based on

---

[1] A true and accurate copy of the transcript of the videotaped trial testimony of Dr. Foster is attached hereto as Exhibit A.

reports prepared by other physicians who provided treatment to plaintiff for her alleged back injury. [See Exhibit A, p. 74].

Copies of the records produced to defendant by Dr. Foster during discovery are attached hereto as Exhibit B.  They contain no mention of plaintiff's alleged back injury other than a passing reference in the 10/10/02 treatment notes to a complaint by plaintiff of pain in her lumbar spine, and a reference in the 1/22/03 treatment notes to an evaluation of plaintiff performed by Dr. Christopher Bono regarding her alleged back injury and to a second opinion that plaintiff was going to obtain from Dr. Joseph Ordia. [See Exhibit B, passim].

Plaintiff has not had any surgery other than the arthroscopic surgery on her left knee.  Plaintiff alleges that she has not been able to work since the day of the alleged incident, which was over four and one half years ago, and that she suffers from mental injuries as a result of the incident.  She also claims that she is permanently disabled and will never be able to work again.

II.    ARGUMENT

A.    DR. FOSTER'S TESTIMONY CONCERNING PLAINTFF'S ALLEGED BACK INJURY SHOULD BE EXCLUDED BECAUSE IT IS EXPERT TESTIMONY, AND PLAINTIFF FAILED TO PROVIDE THE REQUISITE DISCLOSURES

As stated above, Dr. Foster is an orthopedist whose medical practice is limited to treating shoulder and knee injuries. [See Exhibit A, p. 8].  At no point prior to his videotaped trial testimony, did plaintiff disclose any qualifications on the part of Dr. Foster to evaluate back injuries.  Nor did plaintiff provide any disclosure that Dr. Foster would render any opinions concerning plaintiff's back injury or the substance of the opinions.  Finally, during the videotaped trial testimony, Dr. Foster stated that he

reviewed reports from the various neurologists and other physicians who treated plaintiff

for her back injury.[2]  With the exception of one letter from Dr. Joseph Ordia that was

referred to by Dr. Foster during the deposition, at no point prior to, or during, the

videotaped deposition, did plaintiff or Dr. Foster identify the reports that he reviewed.

[See Exhibit A, pp. 75-76].

Plaintiff did not identify any expert witnesses in response to defendant's expert

witness interrogatories.  Nor did plaintiff provide the expert witness disclosures required

by Fed. R. Civ. P. 26(a)(2).

A treating physician is not required to comply with the expert disclosure

requirements of Fed. R. Civ. P. 26 only where the physician's testimony is based upon

personal knowledge and observations rendered during the course and care of treatment.

See Garcia v. City of Springfield Police Dept., 230 F.R.D. 247, 249 (D. Mass. 2005).

Conversely, where the physician's opinions are based not upon the physicians own

treatment, but rather upon reports prepared by other physicians during the course of their

treatment or other information gained outside of the course of treatment, the requisite

expert disclosures must be provided. See id.

In Garcia, the court altered the prior rule set forth in Thomas v. Conrail, 169

F.R.D. 1 (D. Mass. 1996).  Prior to Garcia, a party was required to provide expert

disclosures concerning any treating physician who would be offering any opinions as to

causation or prognosis even if based upon personal observations during treatment.

Garcia, 230 F.R.D. at 248.  At the same time, however, the Garcia court made clear that

with the change of the rule, the risk of failing to provide an expert report with respect to a

treating physician who strays beyond the bounds of testimony based upon personal

---

[2] Plaintiff saw several different back specialists and their records are quite voluminous.

4

knowledge gained during treatment falls squarely on the party who is offering the treating

physician as a witness. Garcia, 230 F.R.D. at 250.

Notwithstanding the foregoing, during the course of the videotaped testimony, Dr.

Foster purported to render opinions concerning plaintiff's alleged back injury.  As stated

above, during the videotaped trial testimony, Dr. Foster testified that he does not treat

back injuries and that he referred plaintiff for an MRI of her back for the purpose of

subsequently referring her to a back specialist for treatment. [See supra, p. 2].  On direct

examination, Dr. Foster was asked questions concerning his opinions regarding the report

that he received back from this back specialist, Dr. Ordia. [See Exhibit A, p. 41, line 17

through p. 43, line 3].  Although Dr. Foster purported to characterize the opinions as his

own, they were clearly based on the report prepared by Dr. Ordia.  Indeed, Dr. Foster was

asked point blank by plaintiff's attorney: "On the basis of the information you received

back from the physician to whom you referred Ms. Brown for her back pain, what, if any,

diagnosis did you come to."  As such, Dr. Foster's opinions in this regard are clearly not

based upon personal knowledge and observation learned during his treatment of plaintiff,

and the testimony from page 41, line 17 through p. 43, line 3 must be excluded.

Dr. Foster was also asked whether he had an opinion as to the causal relationship

between plaintiff's fall and the "condition of her back" for which he "followed her". [See

Exhibit A, p. 50, lines 2-8 (emphasis added)].  This question was objected to not only on

the grounds that it is impermissibly vague and ambiguous, but that under Garcia,

opinions based upon conditions for which Dr. Foster "followed" plaintiff by reviewing

records concerning the course of her treatment by other physicians is expert testimony

that was not properly disclosed prior to the videotaped trial testimony. [See Exhibit A, p. 50, line 9]. Accordingly, the testimony on page 50, lines 2-16 should be excluded.

Plaintiff's attorney also asked Dr. Foster whether he had an opinion as to the prognosis for plaintiff's back. [See Exhibit A, p. 53, lines 5-9]. This questions was objected to on the above discussed grounds. The putative opinion expressed by Dr. Foster was as follows: "I don't see, after, once again, after four years of having lumbar spine pain, I don't think she's going to have significant improvement in her lumbar spine". [See Exhibit A, p. 53, lines 12-15 (emphasis added)]. To the extent this is even a cognizable medical opinion, Dr. Foster failed to express it the with the requisite certainty. Moreover, Dr. Foster stopped treating plaintiff in 2003, so he has no personal knowledge of her experiencing back pain four years after the alleged incident, which would have been June, 2006.[3] Further, he testified that he based this opinion on unidentified reports of "consultants" (i.e., other physicians who actually treated plaintiff for her alleged back injury). [See Exhibit A, p. 53, lines 18-19]. Accordingly, the testimony on page 53, lines 5-19 must be excluded.

During redirect examination, plaintiff's counsel asked Dr. Foster to express an opinion concerning the diagnosis of plaintiff's back injury that had been made by Dr. Bono, and this testimony on page 85, line 19 through page 86, line 6 should also be excluded. [Exhibit A, p. 85, line 19 through p. 86, line 6].

Subsequent to the foregoing testimony concerning Dr. Foster's putative opinions regarding plaintiff's alleged back injury, there was substantial questioning during cross-examination that exposed the lack of foundation on the part of Dr. Foster to render such

---

[3] Plaintiffs' attorneys met with Dr. Foster prior to the videotaped testimony. [See Exhibit A, p. 81].

opinions. There was also questioning on re-direct examination concerning Dr. Foster's

putative qualifications to render such opinions. Here again, these qualifications were not

disclosed prior to the deposition. In any event, none of the questions would have been

asked if the objections concerning Dr. Foster's opinions were ruled on during the initial

direct examination and his opinions were excluded. Accordingly, the subsequent

questioning concerning plaintiff's alleged back injury during cross-examination and re-

direct examination should be excluded. This testimony is as follows: page 57, line 13

through page 60, line 6; page. 73, line 22 through page. 76, line 10; page 82, lines 1-23;

page 88, line 17 through page 89, line 6.

B.  DR. FOSTER'S TESTIMONY CONCERNING PLAINTIFF'S DISABILITY SHOULD BE EXCLUDED

As stated above, Dr. Foster last treated plaintiff in December, 2003, which was

more than three years ago. During his examination of Dr. Foster, plaintiff's counsel

asked the following question:

> Q.  And based upon your education and experience as a board certified
>
> orthopedic surgeon and on your examination and treatment of Ms.
>
> Brown, do you have an opinion to a reasonable degree of medical
>
> certainty as to whether she is, or at least as of the last time you saw
>
> her, she was able to work?

[Exhibit A, p. 54, lines 6-11]. This question was objected to both based upon form and

foundation. [Exhibit A, p. 54, line 12]. The question is impermissible in form in that it

asks whether Dr. Foster has an opinion as to whether plaintiff was able to return to work

as of the last time he treated her in December, 2003 or whether she is currently unable to

return to work, and as a result, it is entirely unclear which question Dr. Foster answered.

Moreover, there is absolutely no foundation for Dr. Foster to testify as to whether plaintiff is currently unable to return to work because he has not treated her in three years.

Plaintiff's counsel next asked Dr. Foster the following question:

Q.    And do you have an opinion, <u>based</u> <u>on</u> <u>what</u> <u>you</u> <u>know</u> <u>to</u> <u>date</u> from having <u>evaluated</u> and treated her, whether there's is a prognosis that she will be able to return to work?

[Exhibit A, p. 54, lines 14-17 (emphasis added)].  This question was objected to.  First, as is set forth above,  Dr. Foster is not permitted to testify based upon what he has learned "to date" from having "evaluated" plaintiff, but rather only what he learned up through December, 2003 based upon personal knowledge or observation from having treated her. As such, this question encompasses Dr. Foster's impermissible opinions and testimony concerning plaintiff's alleged back injury, and the other information that was imparted to Dr. Foster well after he stopped treating plaintiff such as the fact that plaintiff still claims to have back pain more than four years after the fall.  Dr. Foster's answer also shows that he took into consideration information beyond that which he learned during the course of his treatment of plaintiff.  His answer was as follows:

A.    My – medical opinion is that she would not be able to return to work, and data shows that patients who are out or work for more than two years, the vast majority, are not able to return to work.

[Exhibit A, p. 54, lines 19-22].  Dr. Foster did not treat plaintiff for two years after her injury.  Rather, he treated her up until only 15 months after the injury.  As such, he could not possibly have learned that she was still not working two years after the alleged fall

during the course of his treatment.  There was no prior disclosure of Dr. Foster's opinions in this regard or the data that he was relying on.

Moreover, here again, Dr. Foster does not have any foundation to testify as to a prognosis of whether plaintiff will be able to return to work since he has not treated or seen her in three years.  Nor does "data" that "shows" that the "vast majority" of "patients who are out of work for more than two years . . . are not able to return to work" provide an adequate basis for Dr. Foster's testimony, even if it had been properly considered by Dr. Foster without the requisite expert disclosures.  As a result of the foregoing, the testimony from page 54, line 6 through page 55, line 1 must be excluded.

C.    MISCELLANEOUS OBJECTIONS

During his direct testimony, Dr. Foster was asked the following question:

Q.    Is there a probability to a reasonable degree of medical certainty that she will go on to need a knee replacement?

[Exhibit A, p. 51, lines 6-8].  Dr. Foster's answer was as follows:

A.    She may need – she may need further surgery.  She may eventually need a knee replacement . . . So, yes, I think if she's still troubled with her knee, she may eventually require future surgery, which could possibly include a knee replacement.

[Exhibit A, p. 51, line 9-22].  Defendant's counsel moved to strike this answer on the grounds that it is entirely speculative, and the testimony from page 51, line 6 through line 22 should therefore be stricken.

During his cross-examination of Dr. Foster, defendant's counsel asked the following question:

Q.    So, you never at any point in time performed the evaluation that is

necessary to determine whether a patient is able to return to work,

isn't that correct?

[Exhibit A, p. 78, lines 5-7]. Dr. Foster's answer was non-responsive in that he asserted that typically if a patient is walking with crutches or on pain medication, the patient is not able to work. Defendant's counsel moved to strike Dr. Foster's answer, and the testimony after the word "No" on page 78, line 8 through line 13 should therefore be stricken.

The question asked by plaintiff's counsel on page 40, line 1-4 is leading. The question is as follows:

Q.    Would this be something that would be a progressive condition

based on what you had said before about people favoring one leg over the other when they're injured?

The testimony from page 40, line 1 through line 13 should therefore be excluded.

III.    CONCLUSION

For the above stated reasons, this Court should grant Defendant's Motion

to Exclude from the Trial Portions of the Videotaped Trial Testimony of Dr.

Timothy E. Foster.

                              Respectfully submitted,

                              Defendant,
                              By its Attorneys,

                              _____
                              Lawrence R. Holland, Esq.
                              BBO# 554839
                              Legal Management Services, LLC
                              55 Hammarlund Way
                              Middletown, RI 02842
                              (401) 843-8400

Dated: February 16, 2007

CERTIFICATE OF SERVICE

I, Lawrence R. Holland, Esq., certify that I understand that counsel of record will receive electronic notice of the electronic filing of the foregoing Memorandum and will receive service in that fashion.

_____
Lawrence R. Holland

**EXHIBIT A**


**DEFENDANT'S MOTION TO EXCLUDE FROM THE TRIAL PORTIONS OF THE
VIDEOTAPED TRIAL TESTIMONY OF DR. TIMOTHY E. FOSTER**


\* Due to the volume of pages contained in Exhibit A, it will be mailed under separate cover.

GLORIA BROWN
7/17/02

NEW PATIENT CONSULT

Gloria is a 53-year-old female who is here today for evaluation of her left knee. The patient was at a restaurant and stepped in a pothole and sustained a valgus extension injury. She has had persistent pain over the medial aspect of her knee since this occurred. The patient states that the date of injury was June 21, 2002. The fire department came to the scene and the patient was taken to Boston Medical Center via the EMS department. She was evaluated with x-rays in the emergency department, which are reported to be negative. The patient was treated and released.

The patient has an allergy to Latex; however, this is only when latex is inhaled. She has no allergies to medication. She currently takes hydrochlorothiazide 25 mg p.o. q.d., Atenolol 50 mg p.o. q.d., and ibuprofen b.i.d. She currently works as a childcare counselor at the Home For Little Wanderers. She has smoked for the past 30 years. She does not use alcohol products.

EXAMINATION: The patient has a normal lower extremity alignment. She walks with an antalgic gait with a knee brace and crutches. She has a 2+ effusion of her knee. She has specific medial knee pain with no lateral knee pain. She has no instability to varus and valgus. The anterior drawer and Lachman are trace. Her examination is difficult secondary to pain. She has no retropatellar pain. Her pulses are 2+ and symmetric and there is no decrease in sensation to light touch.

I would like to obtain an MRI scan for further evaluation of the patient's medial meniscus. I am concerned that the patient has a medial meniscal tear. I went over the MRI scan in detail with the patient. I will plan on seeing her back as soon as the MRI scan has been performed.


Timothy E. Foster, M.D.

TEF/PRO-MED:el

cc: Jerome Sobieraj, M.D./Boston University Medical Group/720 Harrison Ave./5[th] Floor/
    Boston, MA. 02118

MAR.20.2006  11:17  5085282746                    IRON MOUNTAIN                    #0558 P.009 /010

GLORIA BROWN
08/01/02

RETURN VISIT

Gloria is status post an MRI scan which reveals evidence of a medial meniscal tear. I went over the MRI scan in detail with the patient. We spoke at length about potential arthroscopic surgery for partial meniscectomy. I went over the risks and benefits of the procedure in detail. I provided the patient a booklet to read regarding the procedure. She would like to go forward with this and this will be scheduled appropriately.

Timothy E. Foster, M.D.

TEF/nlf/PRO-MED

GLORIA BROWN
9/12/02

RETURN VISIT

Gloria is status post arthroscopic surgery of the left knee. Her incisions are clean and dry. She has full extension and flexion to 90 degrees. She has mild medial joint pain, no lateral joint pain. She states that she has been having pain over the past week, and has been taking Percocet and Motrin. We will put her into a physical therapy program for gait training and range of motion, and strengthening. I will see the patient back in 4 weeks.


Timothy E. Foster, M.D.

TEF/PRO-MED:el

GLORIA BROWN
10/10/02

RETURN VISIT

Gloria is status post arthroscopic surgery of the knee for a medial meniscus tear. Her incisions are clean and dry. She has full extension and flexion to 120. She has mild medial joint pain, and no lateral joint pain.

The patient is having trouble with pain in her lumbar spine. She is being evaluated within the next 2 days by the neurology department. She was provided with a prescription for Percocet as well as a prescription for therapy to be performed at BMC for stretching and strengthening and back exercises. She will follow-up with me in 6 weeks.


Timothy E. Foster, M.D.

TEF/PRO-MED:el

GLORIA BROWN
12/04/02

RETURN VISIT

Gloria is status post arthroscopic surgery for a partial medial meniscectomy. Her incisions are clean and dry. She has full extension and flexion to 90. She is working with physical therapy and making significant strides. She is still ambulating with the assistance of a cane.

The patient was provided with a prescription to continue with therapy. I will see her back in 5 weeks to monitor her progress. She will eventually require contralateral, right knee arthroscopic surgery.


Timothy E. Foster, M.D.

TEF/PRO-MED:cl

GLORIA BROWN
01/22/03

RETURN VISIT

Gloria continues to have pain in her contralateral right knee. She is status post arthroscopic surgery of the left knee which significantly improved her function. She does have mild occasional pain over her medial joint line, but overall she is significantly improved.

I have requested that we obtain an MRI scan of her right knee to rule out a medial meniscal tear. I will see her back after this has been performed. She has been evaluated by Dr. Christopher Bono for her spine problem. Dr. Bono felt that she had a muscular injury. The patient would like a second opinion and I have referred her to Dr. Joseph Ordia of Neurosurgery. She was provided with a prescription for Percocet with no refills.

Timothy E. Foster, M.D.

TEF/nlf/PRO-MED

GLORIA BROWN
4/03/03

RETURN VISIT

Gloria is status post injury to her bilateral knees when she fell in a pothole in June 2, 2002. The patient is status post arthroscopic surgery of the left knee on September 6, 2002. She continues to have pain in her knees and limitation of activities as well as range of motion. She has been through a physical therapy program and will continue to receive treatment. She may eventually require right knee arthroscopic surgery; however, we will reevaluate her for this on her return visit in 3 months.

Timothy E. Foster, M.D.

TEF/PRO-MED:el

GLORIA BROWN
MR# 2788238
7/09/03

RETURN VISIT

Gloria has not seen me for the past 6 months. She is status post an MRI scan in February, which reveals degenerative changes in her knee with no evidence of frank meniscal tear. I went over the MRI scan in detail with the patient. The patient is troubled with bilateral knee pain. She has difficulty with ambulation and going up and down stairs.

Today the patient has a 1+ effusion. She has full extension and full flexion. She is tender over the medial and lateral joint lines as well as retropatellar. She has diffuse pain to palpation around the entire knee region. She is ligamentously stable and her pulses are 2+.

Standing radiographs including lateral and sunrise today reveal evidence of minimal degenerative changes. No fracture and no dislocation.

Based upon the patient's symptoms and her continued pain I have recommended bilateral Synvisc injections. The patient was provided with a prescription for Synvisc and we will schedule 3 consecutive appointments for bilateral knee injections to be performed by Joe Rice. She will follow-up with me at the time of injection.


Timothy E. Foster, M.D.

TEF/PRO-MED:el

MR#2788238
GLORIA BROWN
12/3/03

RETURN VISIT

Gloria is here today for evaluation of her knees. The patient is upset because she had had a lot going on in her life. She has lost her disability payments and feels that she is unable to return to work secondary to knee pain. She is concerned because she has not had any improvement. She also has not had any improvement with her pain in her back.

Physical examination: Today the patient has 1+ bilateral knee effusions. She has full extension and flexion to 120 degrees. There is no instability to varus or valgus stress. The patient has both medial and lateral joint pain, as well as retropatella pain.

Radiographs: Radiographs reveal mild degenerative changes of the knees.

Plan: I have once again recommended Synvisc injections. The patient is provided with a prescription for the Synvisc injections. She will follow-up with me at the time of the injections or with Joe Rice, my assistant.

_____

TIMOTHY E. FOSTER, M.D.
Assistant Professor of Orthopaedic Surgery

cc:    Rose Duver, M.D.
       Evans Medical Group
       DOB-5
       BMC-ENC

TEF/lcn/At Once

Department of Orthopaedic Surgery (DOB)
720 Harrison Avenue
Doctor's Office Bldg - Suite 808
Boston, MA 02118
Phone: 617-638-5633

*March 29, 2006*

Page 1
Chart Document

**GLORIA BROWN**
Female DOB:08/31/1948                          2788238

Home: (617)361-0851
Ins: MEDICARE (STANDARD)

09/06/2002 - Operative Report: SURGICAL DICTATION
Provider: Link Logic System
Location of Care: Boston Medical Center

SURGICAL DICTATION

NAME:  Brown, Gloria                    DATE:  09/06/2002
SURGEON: Timothy E Foster, MD           RECORD #:  2788238
ANESTHESIA:  General via laryngeal mask airway
PREOPERATIVE DIAGNOSIS:       1.  Left  knee  medial  meniscal  tear        2.
                              Left knee chondromalacia patella
POSTOPERATIVE DIAGNOSIS:      1.  Left  knee  medial  meniscal  tear        2.
                              Left knee chondromalacia patella
DATE OF SURGERY:              09/06/2002
TITLE  OF  OPERATION:             1.  Left   knee  arthroscopy  with  partial
                              meniscectomy                       2.  Left
                              knee  arthroscopy  with       chondroplasty  of
                              patella

INDICATIONS:  The patient has had persistent  pain  in  her left knee.  She
had a physical examination and MRI scan  which documented a medial meniscal
tear, as well as significant chondromalacia  of  the  patella.  The patient
has  failed  conservative  treatment  and  now  presents  for  arthroscopic
intervention.

COMPLICATIONS:  None

DRAINS:  None

PROCEDURE:  The patient was taken to  the  operating room and placed supine
upon  the  table.  After the administration of  a  general  anesthetic  via
laryngeal mask airway, the left lower  extremity  was prepped and draped in
the  usual  sterile  fashion.  The  scope  was  advanced  through  a lateral
portal, instrumentation through a medial  portal,  and outflow  through  a
superomedial  portal.  The  scope  was  systematically  inspected.     The
patellofemoral joint revealed evidence  of  large  cartilaginous flaps from
the distal pole of the patella.  This was  resected with the shaver system
back to a stable border.  The medial  gutter  had  mild synovitis, and that
was  resected.  There  was  a small mid-horn radial  tear  of  the  medial
meniscus,  which  was resected with the  shaver  system  back to a  stable
border.  The femoral condyle and tibial  plateau  were normal.  The ACL and
PCL were intact.  The lateral compartment was without abnormality.

The scope was withdrawn.  The portals  were closed with Steri-Strips, and a
dry  sterile  dressing  was  applied.    The   patient  was  extubated  and
transferred to recovery in stable condition, without complications.

Signed by
Timothy E Foster, MD 09/09/2002 11:49

_____
Timothy E Foster, MD

**Department of Orthopaedic Surgery (DOB)**
720 Harrison Avenue
Doctor's Office Bldg - Suite 808
Boston, MA 02118
Phone: 617-638-5633

*March 29, 2006*

Page 2
Chart Document

**GLORIA BROWN**                                    Home: (617)361-0851
Female  DOB:08/31/1948              2788238        Ins: MEDICARE (STANDARD)

DD:  09/06/2002     DT:  09/06/2002     JOB:  000166291

CC:

Signed before import by Link Logic System
Filed automatically on 09/09/2002 at 11:48 AM

Department of Orthopaedic Surgery (DOB)
720 Harrison Avenue
Doctor's Office Bldg - Suite 808
Boston, MA 02118
Phone: 617-638-5633

*March 29, 2006*

Page 1
Chart Document

**GLORIA BROWN**                                                        Home: (617)361-0851
Female  DOB:08/31/1948                    **2788238**          Ins: MEDICARE (STANDARD)

02/09/2003 - Lab Report: MRI Knee Without Contrast
Provider: Timothy E. Foster MD (315)
Location of Care: Boston Medical Center

Patient: GLORIA BROWN
Note: All result statuses are Final unless otherwise noted.

Tests: (1) MRI Knee Without Contrast (MKN)
  MRI Knee Without Contrast          SEE REPORT

Report Status:    Final

BOSTON MEDICAL CENTER
DEPARTMENT OF RADIOLOGY
BROWN, GLORIA                         Location:  E MRI
MRN: 2788238                          DOB:      08/31/1948
Ordering MD:    Foster, Timothy E. M.D.   Date of Exam: 02/09/2003
Copy To:        Duver, Rose M. M.D.    Order Number: MB113-03

EXAM:   Right  MRI Knee Without Contrast
=======================================================================


MRI OF THE RIGHT KNEE:

INDICATION:
Evaluate for right knee pain or meniscal tear.

TECHNIQUE:
Axial gradient echo using 2D and 3D techniques with coronal and sagittal
inversion recovery and coronal and sagittal proton density images of the
knee were obtained.
The lateral and medial collateral ligaments are intact. The cruciate
ligaments are intact. There is no abnormal bone edema.
The posterior horn of the medial meniscus does demonstrate some type II
signal abnormality coursing laterally and no disruption to imply radial
tear is not seen. This may require consideration. The anterior horn of the
lateral meniscus is somewhat thinned medially and some early type I
degenerative changes are seen near the under surface but clear
communication is not well visualized on this study. The cartilaginous
surfaces appear normal without distinct defects. Small osteochondral
defect near the superior medial aspect of the patella is suggested on the
gradient echoes but the cartilaginous surface is intact superficial to
this.

IMPRESSION:
Type II signal change in the posterior horn of the medial meniscus and
thinning of the anterior horn of the lateral meniscus with under surface
signal abnormality of uncertain significance as described above.

yg
Attending Radiologist Tello, Richard M.D.  Electronically Signed By:
Richard Tello, M.D.

# Department of Orthopaedic Surgery (DOB)

720 Harrison Avenue
Doctor's Office Bldg - Suite 808
Boston, MA 02118
Phone: 617-638-5633

*March 29, 2006*

Page 2
Chart Document

## GLORIA BROWN
Female  DOB:08/31/1948                    2788238

Home: (617)361-0851
Ins: MEDICARE (STANDARD)

```
TRANS:  02/10/2003   YG
DATE FINALIZED: 02/12/2003
Tello,Richard M.D.

Note: An exclamation mark (!) indicates a result that was not dispersed into
the flowsheet.
Document Creation Date: 02/12/2003 1:35 PM
```

```
(1) Order result status: Final
Collection or observation date-time: 02/09/2003 10:43:00
Requested date-time:
Receipt date-time:
Reported date-time:
Referring Physician:
Ordering Physician: Timothy Foster (TIFOSTER)
Specimen Source: RIGHT
Producer ID:  (RAD)
Filler Order Number: MB113-03 FlexiRad
Lab site:
```

Filed automatically (without signature) on 02/12/2003 at 1:35 PM