UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLORIA BROWN,<br>    Plaintiff | )<br>)<br>) |
| v. | )   CIVIL ACTION<br>)   NO. 05-CV-11167-MBB<br>) |
| KFC CORPORATION,<br>    Defendant | )<br>) |

## JOINT PRETRIAL MEMORANDUM

**1. Concise Summary of the Evidence:**

**Plaintiff:** As the plaintiff was getting out of her car in the KFC parking lot on June 21, 2002, she fell into a hole in the pavement adjacent to the marked space in which she parked her car. KFC's negligence and carelessness in failing to maintain its parking lot or otherwise making the premises safe for customers, such as by placing a warning or restricting parking in the area, caused her injury. According to the Assistant Manager's deposition testimony, he routinely inspected the parking lot and warned his superiors, including the district manager "more than 20 times" about the hole. KFC has neither refuted the testimony nor provided any explanation or excuse for its failure to repair it or take any measures to prevent injury to customers from falling into it. Nor, in the absence of any warnings or preventative measures is there any evidence to support a finding of comparative negligence on the part of the plaintiff. As a result of her twisting fall and landing with her back against the left rear wheel of her car, the plaintiff suffered a torn meniscus in her left knee and lumbar spine pain from a disc bulge and protrusion of the disk at two levels in her back resulting in impaired mobility and chronic pain. None of the plaintiff's prior medical records document any pre-existing knee or back problems. According to her treating physician, Dr. Timothy Foster, because of the additional strain on her right knee, she

1

developed a tear in the right meniscus, and one year later, she was not substantially improved. Before her injury, the plaintiff was an active, productive and energetic woman who worked, cared for her granddaughter and performed household chores. . Plaintiff's medical expenses to date exceed $50,000. At the date of the accident, Mrs. Brown , then age 53, was working for The Home for Little Wanderers, averaging 55 hours per week. With a work life expectation of another 12 years to age 65, due to her permanent disability and inability to return to work, she has lost wages, including benefits, exceeding $400,000, exclusive of inflation. The diminution in the quality of her life has been dramatic and her corresponding loss of enjoyment of being with and helping her family has been exceptionally difficult.

**Defendant**: In this action, plaintiff alleges that on June 21, 2002, she fell at the KFC restaurant located at 625 American Legion Highway, Roslindale, Massachusetts ("the KFC Restaurant") and sustained injuries ("the alleged incident"). She alleges that she tripped over a small hole in the parking lot. At the time of the alleged incident, plaintiff was 53 years old. Plaintiff's granddaughter, who was seven years old at the time, was with her on the date of the incident. According to plaintiff, she parked her SUV vehicle in a parking spot, and the pothole was in the vicinity of the driver's side passenger door of where she parked her vehicle. Plaintiff's granddaughter exited the vehicle from the driver's side passenger door. She was able to avoid the pothole.

Instead of seeking immediate assistance for her alleged injury, plaintiff proceeded to go inside the KFC Restaurant, stand on line, and order food. The General Manager of the KFC Restaurant at the time, Victor Gonzales, will testify to this, and plaintiff admitted it during her deposition. Further, according to Gonzales, plaintiff did not appear to be in pain.

After she got her food, plaintiff went back out to her vehicle and called her home, which was only a short distance away. Her husband and daughter came to the KFC Restaurant, and her husband immediately began taking pictures of the pothole with a camera that he just happened to have in his car.

Plaintiff treated at the Emergency Room on the day of the alleged incident. She did not complain of any back pain at the ER. Rather, she complained only of left knee pain. She was diagnosed with a knee sprain.
Plaintiff subsequently treated with Dr. Timothy Foster, an orthopedist. Dr. Foster performed arthroscopic knee surgery on plaintiff's left knee in September, 2002 to repair a meniscus tear. The surgery was performed on an outpatient basis, and it took approximately 90 minutes. Dr. Foster's videotaped trial testimony was taken in December, 2006, and he testified that plaintiff still had eighty percent of her meniscus left after this surgery. He further testified that the normal recover time for this surgery is three months. Plaintiff has not had any other surgeries as a result of the alleged incident.

Plaintiff first treated with Dr. Foster on July 17, 2002, and she last treated with him more than three years ago in December, 2003. The last two times that plaintiff treated with Dr. Foster, he recommended further treatment to plaintiff for her knees. Specifically, he recommended steroid injections to alleviate her alleged pain. Plaintiff declined to have this treatment.
Plaintiff had physical therapy at Boston Medical Center ("BMC") from 9/25/02 to 1/21/03. She had a total of 19 physical therapy sessions. The physical therapy records show that plaintiff made significant progress. As of 10/25/02, she was complaining only that her knees were "sore" and rated her left knee pain only a 3 on a scale of 10. The treatment notes from 11/26/02 state that at times plaintiff had no pain whatsoever in her left knee and that at worst her pain was 3/10.

3

They further state that plaintiff was ambulating with a cane "for safety only". The 1/21/03 physical therapy discharge notes state that plaintiff's left knee has improved "significantly". Similarly, the notes of her treatment with Dr. Cervantes of BMC on 11/26/02 state: "Pt notes a large improvement in her left knee w/ improved ROM and decrease pain." Finally, Dr. Foster's treatment notes of 12/4/02 state that plaintiff "is working with physical therapy and making significant strides."

Plaintiff claims that she fell and injured her right knee in August, 2002. She claims that this fall occurred because the cane that she was walking with slipped out from under her. With respect to this putative right knee injury, Dr. Foster, testified that it was caused by overcompensation in plaintiff's gait as a result of the left knee injury. He had no recollection whatsoever of plaintiff's claim that she fell in August, 2002 and injured her right knee. Further, during his deposition, Dr. Foster claimed that plaintiff had a meniscus tear in her right knee similar to that in her left knee. However, plaintiff had an MRI of her right knee on 2/9/03. Dr. Foster's treatment notes of 7/9/03 state as follows: "She is status post an MRI scan in February, which reveals degenerative changes in her knee with <u>no evidence of frank meniscal tear</u>." (emphasis added). At no point did Dr. Foster recommend surgery on plaintiff's right knee. Rather, as a result of plaintiff's complaints of pain, he recommended only steroid injections, which plaintiff never had.

With respect to plaintiff's alleged back injury, plaintiff was involved in a motor vehicle accident on 6/2/02, which was a little less than three weeks prior to the alleged incident. She treated at the Emergency Room after this motor vehicle accident and complained of back pain. Dr. Foster referred plaintiff to a colleague, Dr. Bono, for evaluation of her back pain. Dr. Bono's Report dated 12/17/02 states: "<u>This is a difficult patient to discern exactly where her pain is</u>

<u>coming from</u>. I think that she has a large amount of muscular pain that has never been treated before with physical therapy or conservative treatment." (emphasis added).

Plaintiff obtained a second opinion concerning her alleged back injury from Dr. Ordia, a neurosurgeon from BMC. Prior to seeing Dr. Ordia, plaintiff had an MRI of her lumbar spine on 3/23/03. The MRI revealed only minimal degenerative changes and no evidence of a disc herniation.

Dr. Ordia's Report dated 4/3/03 reflects a diagnosis of back strain. Dr. Ordia's report further states that the MRI revealed only mild degenerative changes and that it did not show any evidence of neural compression. Finally, Dr. Ordia stated that no neurosurgical intervention was necessary, and that plaintiff's alleged injuries should resolve with physical therapy. Apparently unsatisfied with the opinions of two back specialists that her back condition was nothing more than a strain that should resolve with physical therapy, in 2005, plaintiff saw yet another neurosurgeon for her alleged back injury, Dr. James Reed. She treated with Dr. Reed in May and August, 2005. Dr. Reed recommended further testing, and plaintiff never had this testing performed. She simply stopped treating with Dr. Reed.

Despite having been evaluated by three different neurosurgeons for her alleged back injury, and having been treated by at least nine other physicians for her alleged back pain, plaintiff will not offer testimony at trial from any physician who treated her for her back. Rather, she is attempting to rely on testimony from Dr. Foster, who is an orthopedic surgeon. Dr. Foster admitted that he only made a "cursory" examination of plaintiff's back.

Dr. Foster's testimony concerning plaintiff's alleged back injury amounted to nothing more than that he believes that plaintiff will continue to have back pain because she has had back pain for four years. In any event, defendant has a motion pending to exclude Dr. Foster's

testimony concerning plaintiff's alleged back injury on grounds that it is expert testimony that was not properly disclosed.

During his videotaped trial testimony in December, 2002, Dr. Foster also testified that he believes plaintiff is not able to work. Dr. Foster has not seen or examined plaintiff since December, 2003, however. Moreover, he based his opinion primarily on undisclosed data which he claims shows that injured persons who do not return to work after two years generally never return to work. Finally, he admitted that he never performed the test which is necessary to determine whether a person is disabled; i.e., a functional capacity evaluation.

Plaintiff also claims to have suffered from depression as a result of the alleged incident. She has twice before in her life been out of work on disability as a result of depression.

Notwithstanding her claims to never be able to work again, Dr. Reed's Report dated May 18, 2005 states that plaintiff "is an active caregiver for her grandchildren." Plaintiff's daughter confirmed during her deposition that plaintiff watches her children while she is at work.

On the date of the alleged incident, plaintiff was 53 years old. She turned 54 on 8/31/02, which was approximately two months after the alleged incident. Plaintiff's W-2 for the year 2001 from her employer, The Home for Little Wanderers, shows that her total wages for that year were $27,995.27 and that after taxes, social security, etc. she took home $22,340.64.

## 2. Undisputed Facts:

a. The plaintiff was lawfully on the premises of the KFC store in Roslindale, Massachusetts on June 21, 2002.

b. KFC Corporation is the successor in interest to KFC of America, Inc. At the time of the alleged incident KFC of America, Inc. owned and operated the KFC Restaurant.

3. **Contested Issues of Fact.**

    1. Whether the defendant was negligent.

    2. Whether the plaintiff was comparatively negligent.

    3. The nature and extent of the plaintiff's injuries, if any.

    4. The nature and extent of the plaintiff's disability, if any.

4. **Jurisdictional Questions.**

None of which the parties are presently aware.

5. **Pending Motions.**

The defendant has filed a motion to exclude from trial portions of the videotaped trial testimony of Dr. Mark Foster. The plaintiff has filed an opposition to this Motion.

6. **Issues of Law.**

The defendant raises the following evidentiary issue: Admissibility of plaintiff's putative receipt of disability payments. Defendant opposes any attempt by Plaintiff to enter into evidence at trial her Social Security Administration ("SSA") disability determination or the fact that she is receiving disability payments. The finding that plaintiff met the SSA's definition of disability is irrelevant, because a jury will be applying a different standard[1] and prejudicial because defendant will have no opportunity to obtain testimony from a SSA employee regarding the basis for such determination or to cross-examine the SSA concerning its determination.[2]

---

[1] See, e.g. Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1018 (7th Cir. 2000); see also Cuddy v. L & M Equipment Co., 352 Mass. 458, 464, n. 4 (Mass. 1967).

[2] The records produced by the SSA indicate that the SSA determined that plaintiff is capable of performing jobs that involve sedentary to medium exertion levels. Defendant's counsel contacted the Massachusetts Rehabilitation Commission ("the Commission") which made this determination on behalf of the SSA. Defendant's counsel was informed that plaintiff did not qualify for disability based upon her medical condition, but rather based upon some type of sliding scale used by the SSA which involves vocational considerations and her age. Defendant's counsel was further informed that for obvious reasons, the SSA does not permit the Commission to provide testimony in legal cases. If the Commission and/or the SSA were required to provide

Moreover, quite obviously, defendant was not permitted to appear before the SSA and submit evidence to controvert plaintiff's claim of disability.

Pursuant to Rule 403,[3] evidence may be excluded which is unfairly prejudicial, confuses the issues or misleads the jury. Here, admission of plaintiff's SSA disability determination would be fundamentally unfair because of defendant's inability to elicit testimony regarding its foundation or to challenge it in any regard. It would confuse the issues because it employs a different standard than the common law of Massachusetts. Finally, it would mislead the jury because it would cause them to think that the issue of plaintiff's disability had already been conclusively determined by a governmental body.

7. **Requested Amendments to the Pleadings.**

   None.

8. **Additional matters to aid in the disposition of the action.**

   None of which the parties are presently aware.

9. **Probable Length of Trial.**

   Two to three full days.

---

testimony in legal cases involving persons who have made SSA disability claims, the Commission and the SSA would have little time to do anything else. Accordingly, defendant will not be able to elicit any testimony explaining the SSA's decision and the standard applied by the SSA.

[3] Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

10. **List of Witnesses.**

   **Plaintiff:**

   1.   Gloria Brown (plaintiff)
        80 Seminole Street
        Hyde Park, MA  02136
        (617) 361-0851

   2.   Akirah Brown (plaintiff's granddaughter)
        80 Seminole Street
        Hyde Park, MA  02136
        (617) 361-0851

   3.   Timothy E. Foster, MD (Videotaped deposition)
        Boston Medical Center
        720 Harrison Avenue
        Boston, MA  02118

   4.   Victor Gonzales (former KFC Assistant Manager)
        47 Beechland Street, #166
        Roslindale, MA  02131

   5.   Keeper of the Records of Boston Medical Center
        720 Harrison Avenue
        Boston, MA  02118

   6.   Keeper of the Records of Dr. Foster
        Boston Medical Center
        720 Harrison Avenue
        Boston, MA  02118

   7.   Keeper of the Records of The Home for Little Wanderers
        271 Huntington Avenue
        Boston, MA  02115

   **Defendant:**

   1.   Victor Gonzales (former KFC Assistant Manager)
        47 Beechland Street, Apt. 166
        Roslindale, MA
        (617) 327-2132

2. Gloria Brown (plaintiff)
   80 Seminole Street
   Hyde Park, MA

3. Sharyon Brown (plaintiff's daughter)
   11 Hillis Road
   Hyde Park, MA

4. Arikah Brown (plaintiff's granddaughter)
   11 Hillis Road
   Hyde Park, MA

5. Keeper of the Records of Boston Medical Center
   720 Harrison Avenue
   Boston, MA 02118

6. Keeper of the Records of Dr. Foster
   Boston Medical Center
   720 Harrison Avenue
   Boston, MA 02118

7. Keeper of the Records of The Home for Little Wanderers
   271 Huntington Avenue
   Boston, MA 02115

**11. Exhibits**

**Plaintiff**:

1. (3) pictures of the hole marked as Exhibits to the plaintiff's deposition

2. Cleaning Standards in KFC's Company Manual produced by the defendant.

3. Medical records of Dr. Timothy Foster marked as Exhibits to his deposition.

4. Medial bills of Dr. Foster and Boston Medical Center.

**Defendant**:

1. Boston Medical Center ("BMC") Emergency Room Treatment and Admission Record dated 6/2/02;

2. BMC Lab Report Dated 8/8/02 Re Pelvis and Lumbar Spine;

3. BMC Physical Therapy Records concerning plaintiff's left knee;

4. BMC Emergency Department Treatment and Admission Record dated 9/17/02;

5. BMC Phone Note Re Fall dated 9/26/02;

6. BMC Office Visit Record dated 10/29/02 Re Rose Duver MD;

7. BMC Office Visit Record dated 11/26/02 Re Adriana Cervantes MD;

8. BMC Phone Note dated 12/10/02 Re back pain;

9. BMC Report of Dr. Christopher M. Bono dated 12/17/02;

10. Dr. Foster's Records;

11. 2/9/03 Report Re MRI of Right Knee;

12. BMC MRI of Lumbar Spine dated 3/23/03;

13. Letter from Dr. Ordia to Dr. Foster dated April 3, 2003;

14. BMC Lab Report Bilateral Standing Knees dated 7/9/03;

15. BMC Lab Report dated 12/3/03;

16. BMC Office Record dated 7/7/04 Re Feng Wang MD;

17. Letter from Dr. Reed of BMC to Dr. Chu dated May 18, 2005;

18. Letter from Dr. Reed to Dr. Chu dated August 30, 2005;

19. The Home for Little Wanderers W-2 Statements for Gloria Brown for the years 2000 and 2001.

**12. Remaining Objections to Evidence.**

The defendant's motion to strike certain portions of Dr. Timothy E. Foster's trial videotape deposition testimony for which the parties have submitted memoranda, as directed for rulings by this Honorable Court, and the defendant's objection to the admission of the Social Security Administration records, as set forth above.

Respectfully submitted,

| | |
|---|---|
| The plaintiff,<br>By her attorneys, | The defendant,<br>By its attorney, |
| /s/ John N. Lewis<br>John N. Lewis (BBO #298520)<br>Lawrence R. Mehl (BBO #566235)<br>JOHN N. LEWIS & ASSOCIATES<br>21 Merchants Row, 5th Floor<br>Boston, MA 02109<br>(617) 523-0777 | /s/ Lawrence R. Holland<br>Lawrence R. Holland (BBO #554839)<br>Legal Management Services, LLC<br>55 Hammarlund Way<br>Middletown, RI 02842<br>(401) 843-8400 |