```
               UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS


GLORIA BROWN,
     Plaintiff,



     v.                              CIVIL ACTION NO.
                                     05-11167-MBB



KFC CORPORATION,
     Defendant.
```

## MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO EXCLUDE FROM THE TRIAL PORTIONS OF THE VIDEOTAPED TRIAL TESTIMONY OF DR. TIMOTHY E. FOSTER (DOCKET ENTRY # 48)

### March 19, 2007

**BOWLER, U.S.M.J.**

Pending before this court is a motion by defendant KFC Corporation ("defendant") to exclude from trial certain portions of a December 14, 2006 videotaped deposition of Timothy E. Foster, M.D. ("Dr. Foster") because plaintiff Gloria Brown ("plaintiff") failed to comply with Rule 26(a)(2), Fed. R. Civ. P. ("Rule 26(a)(2)"), by identifying Dr. Foster as an expert and providing an expert report. (Docket Entry # 48). Acknowledging the absence of an expert report,[1] plaintiff asserts that Dr.

---

[1] Plaintiff also does not contest defendant's representation that plaintiff did not identify Dr. Foster in response to an expert witness interrogatory.

Foster lies outside the requirements of Rule 26(a)(2) as a treating physician.  The proposed testimony primarily, albeit not exclusively, involves expert opinion regarding plaintiff's back as opposed to her left knee.

## BACKGROUND[2]

Plaintiff seeks to impose liability against defendant for the negligent maintenance of a parking lot at a KFC restaurant in Roslindale, Massachusetts.  Plaintiff submits that she fell in a hole in the parking lot as she was exiting her automobile on June 21, 2002.

Plaintiff first saw Dr. Foster on July 17, 2002, for an evaluation of her left knee.  Dr. Foster, a board certified orthopedic surgeon, ordered a magnetic resonance imaging ("MRI") scan of the knee and in September 2002 performed arthroscopic surgery on plaintiff's left knee to repair a torn meniscus.

Dr. Foster specialized in orthopedic surgery during his residency "at the Boston University affiliated hospitals, which include Boston Medical Center, Lahey Clinic Medical Center, and Shriner's Hospital for Crippled Children."  (Docket Entry # 48, Ex. A, p. 7 (henceforth:  "Depo.")).  Having had additional training in shoulder and knee surgery at Massachusetts General

---

[2] This court finds the following facts solely for the purpose of resolving the motion to exclude.

2

Hospital, he currently has hospital privileges at both the Boston Medical Center and the New England Baptist Hospital.  He remains the "most active at Boston Medical Center."  (Depo. p. 9).

Dr. Foster presently limits his surgical practice to shoulder and knee surgeries.  (Depo. p. 8).  He does not "treat back problems" at the present time.  (Depo. p. 57).  He did not record a diagnosis of plaintiff's spine problem and describes his examination of plaintiff's back as "cursory."  (Depo. p. 59).  He does, however, have significant experience treating backs.  When he joined the staff of the Boston Medical Center, he took over the practice of the retiring spine surgeon.  For ten years, Dr. Foster performed spine surgeries and operated on more than 1,000 backs and "probably" more than 1,000 necks.  (Depo. p. 82).

Dr. Foster's office notes first reference plaintiff's spine on October 10, 2002.[3]  The note reads as follows:

> The patient is having trouble with pain in her lumbar spine.  She is being evaluated within the next 2 days by the neurology department.  She was provided with a prescription for Percocet as well as a prescription for therapy to be performed at BMC for stretching and strengthening and back exercises.  She will follow-up with me in 6 weeks.

(Docket Entry # 48, Ex. B).

Even though Dr. Foster primarily treated plaintiff for her

---

[3]  The emergency room records for plaintiff's treatment at Boston Medical Center on June 22, 2002 describe plaintiff's complaints as including lumbar spine pain.  (Depo. pp. 22-23).  Dr. Foster reviewed the emergency room report containing this compliant "in the usual course of [his] treatment of [plaintiff]."

knees,[4] Dr. Foster ordered an MRI scan of plaintiff's spine "as a courtesy" in light of her complaints of pain in the spine.[5] (Depo. p. 27). Dr. Foster typically reviews an estimated 1,000 MRI scans each year. He uses MRI scans in the course of "diagnosing and treating a patient." (Depo. p. 28). His review of plaintiff's August 2002 MRI scan of the lumbar spine conformed to the foregoing practice. Thus, he testified that he personally reviewed and interpreted the scan. (Depo. pp. 28 & 74-75). After reviewing the MRI scan, Dr. Foster made the decision to refer plaintiff to "our spine specialist" who at the time was Christopher Bono, M.D. ("Dr. Bono").

After additional visits with Dr. Foster to treat her knees

---

[4] As reflected in the January 22, 2003 office note, Dr. Foster ordered an MRI of plaintiff's right knee to rule out a medial meniscal tear in light of plaintiff's continued complaints of pain in the right knee.

[5] Defendant characterizes Dr. Foster's review as cursory and quotes the entire above noted response which reads as follows:

> Q.  Why did you send her for an MRI of her spine if you were treating her knee?
>
> A.  I do that as a courtesy to the patient, and the patient's complaining of lumbar spine pain. Although I don't treat that-I don't typically treat lumbar spine pain, I do it as a courtesy for the patient, and I get an MRI scan, and then I would typically have the patient see a colleague of mine who is a spine specialist, and I find that the examination is much more fruitful if the patient has an MRI scan before she sees the spine specialist.

(Depo. p. 27).

and oversee physical therapy related thereto, Dr. Foster's office notes next refer to plaintiff's difficulty with her spine on January 22, 2003.  By that time, plaintiff had seen Dr. Bono and was not satisfied with his assessment.  She therefore asked Dr. Foster for a second opinion.  Continuing his oversight of plaintiff's spine problem, Dr. Foster referred plaintiff to Joseph Ordia, M.D. ("Dr. Ordia"), a neurosurgeon.  Dr. Ordia reported back to Dr. Foster by letter after an initial visit with plaintiff.  Dr. Foster testified that he normally uses this type of information in diagnosing and treating his patients.  (Depo. p. 41).  Dr. Foster additionally received reports from each visit plaintiff had at a pain clinic.

Dr. Foster based his opinions about plaintiff's spine on his own examination "in detail" of "her MRI imaging and from . . . other treating physicians."  (Depo. p. 74).  Dr. Foster listened to plaintiff's history, evaluated her spine and then referred her to various physicians.  During his deposition, he explained that he was not simply relying upon the records prepared by other physicians to formulate his opinions.[6]  Rather, it was "my own

---

[6] In formulating an opinion, Dr. Foster normally relies upon the records and evaluations of other physicians for "at least some of his opinion."  (Depo. p. 86).  It is also common for him to rely on such records "quite a bit" if he is familiar with the physician and his expertise.  (Depo. p. 86).

He explicitly denied relying solely upon the records of other physicians, however, as shown by the following testimony during the December 2006 deposition:

thought process, my own opinion, my own evaluation of the MRI scan. That's why I agree[d] to have her see Dr. Ordia, because I was not happy with the consultation with Dr. Bono." (Depo. p. 75).

Dr. Foster arrived at a diagnosis of plaintiff's spine problem that was similar to the diagnosis of Dr. Ordia. Dr. Foster opined to a reasonable degree of medical certainty that plaintiff "had a problem at L4-L5 and at L5-S1." (Depo. p. 42).

Dr. Foster last saw plaintiff in December 2003. His office note for the December 3, 2003 visit primarily discusses plaintiff's knees but also states that plaintiff "has not had any

---

> Q. So, any opinions you've offered here today concerning her back, they're based on records prepared by other treating physicians, isn't that correct?
>
> A. It's based upon her MRI imaging and from consultants.
>
> Q. Other treating physicians?
>
> A. Yes.
>
> Q. So, you didn't perform those evaluations yourself?
>
> A. No, I listened to her history, I evaluated her back and referred her to consultants, and they followed her back.
>
> Q. . . . You look at the records that the other physicians you referred her to prepared, and any opinions you offered about her back here today were based on those records, isn't that correct?
>
> A. I would respectfully disagree. I looked at her MRI scan, and I go over her MRI scan in detail myself.

(Depo. p. 74).

improvement with her pain in her back." (Docket Entry # 48, Ex. B).

This court did not set a date for the required expert disclosures. This court draws the reasonable assumption that plaintiff made a Rule 26(a)(2)(C) disclosure of Dr. Foster as an expert prior to the February 16, 2007 filing of the motion to exclude.[7] The previously scheduled March 12, 2007 trial date has been canceled. No trial date has yet been set.

As previously noted, plaintiffs seek to offer at trial certain portions of the December 2006 videotaped deposition of Dr. Foster. The designated portions include Dr. Foster's diagnosis of plaintiff's spine problem, the basis for his opinions regarding plaintiff's spine, the causal relationship between her spine problem and the June 21, 2002 fall, his prognosis that the spine problem will not significantly improve, his disagreement with Dr. Bono's belief regarding plaintiff's spine, Dr. Foster's past experience with spine surgeries, the nature of the treatment he provided, the diagnosis that plaintiff may require future knee surgery and his prognosis that plaintiff will not be able to return to work.

---

[7] In any event, plaintiff is ordered to file a supplemental answer to the expert witness interrogatory within three business days identifying Dr. Foster in the event plaintiff wishes to proffer the expert opinion testimony from the videotaped deposition.

DISCUSSION

Rule 26(a)(2) establishes certain "safeguards with respect to expert testimony." Gomez v. Rivera Rodriguez, 344 F.3d 103, 112 (1st Cir. 2003). If the witness is not providing testimony under Rule 702, F.R.E. ("Rule 702"), however, "he is not an expert witness for the purpose of Rule 26." Id. at 113. The subject matter of Dr. Foster's testimony at least in part constitutes expert testimony within the meaning of Rule 702 as opposed to that of "a percipient witness who happens to be an expert" thereby bringing those portions of his testimony within the reach of Rule 26(a)(2). Id. at 113.

Rule 26(a)(2)(A) requires a party to disclose the identity of any person who may provide testimony at trial under Rule 702. Rule 26(a)(2)(A), Fed. R. Civ. P. Where, as here, the court did not set a time period for such pretrial disclosure, the disclosure must "be made at least 90 days before the trial date or the date the case is to be ready for trial." Rule 26(a)(2)(A), Fed. R. Civ. P.

Rule 26(a)(2)(B) sets "[e]ven more stringent requirements" for an expert who is "'retained or specially employed to provide expert testimony.'" Gomez v. Rivera Rodriguez, 344 F.3d at 113 (quoting Rule 26(a)(2)(B)). Such a witness must prepare an expert report in conformity with Rule 26(a)(2)(B). Id. Rule 26(a)(2) therefore "requires a party to disclose the identity of

all of its expert witnesses, but requires a written report only 'with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony.'"  <u>Kirkham v. Societe Air France</u>, 236 F.R.D. 9, 10 (D.D.C. 2006).

As explained in the advisory committee notes to Rule 26(a)(2), a treating physician is excepted from the requirement of filing of an expert report.  <u>See</u> Rule 26(a)(2), Advisory Committee Notes to 1993 Amendments ("[a] treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report"); <u>Gomez v. Rivera Rodriguez</u>, 344 F.3d at 113 (noting in dicta that the "advisory committee specifically used the example of a treating physician to illustrate the sort of witness who may have specialized knowledge yet need not be considered an expert for the purpose of submitting a report").  The First Circuit in <u>Gomez</u> additionally notes that, "By and large, courts have followed the Advisory Committee's lead and ruled that a treating physician, testifying as to his consultation with or treatment of a patient, is not an expert for purposes of Rule 26."  <u>Gomez v. Rivera Rodriguez</u>, 344 F.3d at 113.

Notwithstanding the advisory committee's statement, federal courts have "widely divergent views . . . on whether a treating

physician providing expert testimony is required to provide an expert report in advance of testifying under Rule 26(a)(2)(B)." Kirkham v. Société Air France, 236 F.R.D. at 11.  The reason for this divergence likely arises because treating physicians often depart from testimony about their personal observations and address the causation of a plaintiff's injuries and offer predictions about the permanence of such injuries, "matters that cross over into classic expert testimony."  Id.  As indicated supra, Dr. Foster's testimony includes causation and disability issues.

The majority rule provides "that Rule 26(a)(2)(B) reports are not required as a prerequisite to a treating physician expressing opinions as to causation, diagnosis, prognosis and extent of disability where they are based on the treatment." Sprague v. Liberty Mutual Insurance Co., 177 F.R.D. 78, 81 (D.N.H. 1998).  Such a physician is not "retained or specially employed to provide expert testimony" within the meaning of Rule 26(a)(2)(B).  See also Kirkham v. Société Air France, 236 F.R.D. at 12 (noting that payment is not by itself dispositive).

Citing a wealth of authority, the court in Garcia v. City of Springfield Police Department, 230 F.R.D. 247, 249 (D.Mass. 2005), similarly explained the majority or more common rule "that so long as the expert care-provider's testimony about causation and prognosis is based on personal knowledge and on observations

10

obtained during the course of care and treatment, and he or she was not specially retained in connection with the litigation or for trial, a Rule 26 expert report is not necessary." The court in <u>Garcia</u> therefore allows the testimony of a treating physician "where (1) it is based on the care-provider's personal knowledge and observations obtained during the course of care and treatment, and (2) the care-giver was not specially retained for litigation or for trial." <u>Garcia v. City of Springfield Police Department</u>, 230 F.R.D. at 249. Both plaintiff and defendant rely on the <u>Garcia</u> decision yet reach different results as to its application to Dr. Foster's testimony.

In the case at bar, Dr. Foster's treatment of plaintiff predominantly involved her knees. Nonetheless, his care and treatment also extended to ordering an MRI of her spine, reviewing that MRI and then overseeing the treatment of her spine first with Dr. Bono and then, because of Dr. Foster's disappointment with Dr. Bono's evaluation (Depo. p. 86), with Dr. Ordia.[8] Carefully examining the scope of the testimony and its foundation, <u>see</u> <u>Id.</u> at 249, Dr. Foster was not retained or specially employed to provide expert testimony within the meaning of Rule 26(a)(2)(B). Rather, the designated portions of his testimony arise from his personal knowledge, his expertise in

---

[8] Dr. Foster additionally opines about the future need for knee surgery and plaintiff's ability to return to work.

both knee surgery and spine surgery and his personal observations.  Accordingly, an expert report is not required.

Although the designated testimony does not require preparation of an expert report, much of it constitutes testimony within the meaning of Rule 702.  As previously noted, Rule 26(a)(2) requires plaintiff to identify Dr. Foster as an expert "90 days before the trial date or the date the case is to be ready for trial."  Rule 26(a)(2)(B), Fed. R. Civ. P.  "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . information not so disclosed."  Rule 37(c)(1), Fed. R. Civ. P.

Presumably, plaintiff disclosed Dr. Foster as an expert by the time defendant filed the motion to exclude on February 16, 2007.  The case was to be ready for trial less than one month later on March 12, 2007.  At present, however, the parties do not have a trial date. At the March 19, 2007 status conference, this court will entertain a request from defendant to identify a new expert that may refute Dr. Foster's expert testimony.  See, e.g., Brown v. Eberly, 2002 WL 31528675 at * 1 (E.D.Pa. Nov. 14, 2002) (declining to exclude expert for failure to provide report 28 days before trial date and more than 70 days before new trial date given lack of prejudice).  This court will also entertain a request from defendant to conduct a further deposition of Dr.

Foster.  Given the foregoing, this court finds that the failure to timely identify Dr. Foster as an expert was harmless.

As a final matter, this court adopts the parties' pretrial memorandum (Docket Entry # 51) as this court's final pretrial order under Rule 16(e), Fed. R. Civ. P., as modified by defendant's stipulation (Docket Entry # 56).  In light of the cancellation of the March 12, 2007 trial, the previous deadline to file proposed jury instructions by March 9, 2007, is rescinded.  In the event the parties wish to file proposed jury instructions, they must be filed no later than three business days prior to the commencement of trial.  All proposed instructions must include citations to legal authority supporting the requested language.

## CONCLUSION

Accordingly, in light of the above discussion, the motion to exclude (Docket Entry # 48) is **DENIED**.

      /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge