UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLORIA BROWN,<br>    Plaintiff | )<br>)<br>) |
| v. | )  CIVIL ACTION<br>)  NO.  05-CV-11167-MBB |
| KFC CORPORATION,<br>    Defendant | )<br>) |

**PLAINTIFF'S DESIGNATION OF EXPERTS
AND TESTIMONY BY DEPOSITION**

Now comes the plaintiff in the above-captioned action and, pursuant to Rule 26(a)(2)(C) and Rule 26(a)(3)(B) of the Federal Rules of Civil Procedure and the Memorandum and Order Re: Defendant's Motion to Exclude From The Trial Portions Of The Videotaped Trial Testimony of Dr. Timothy E. Foster, p. 13, entered on March 19, 2007, Bowler, J ("Memorandum") and, pursuant to Rule 26(e)(1), supplemental to the Joint Pre-Trial Memorandum (Docket Entry # 51) adopted by the Court[1] hereby designates Timothy E. Foster, M.D., FACS, the plaintiff's treating physician,[2] as an expert[3] to testify at the trial of her action in accordance with his videotaped deposition, a transcript of which has been filed with the Court as an exhibit to the defendant's motion to exclude (Docket Entry # 48), and further hereby gives notice of her intention to present Dr. Foster's testimony at the trial of her action by the use of his videotape deposition in its

---

[1] *See* Memorandum, p. 13.

[2] ... Dr. Foster was not retained or specially employed to provide expert testimony within the meaning of Rule 26(a)(2)(B). Memorandum, p. 11.

[3] Although the designated testimony [of Dr. Foster] does not require preparation of an expert report, much of it constitutes testimony within the meaning of Rule 702. As previously noted, Rule 26(a)(2) requires plaintiff to identify Dr. Foster as an expert "90 days before the trial date or the date the case is to be ready for trial." Memorandum, p. 12.

-2-

entirety. Further, as ordered by the Court, Bowler, J.,[4] the Plaintiff's Third Supplemental Answers to Defendant KFC Corporation's Interrogatories is attached hereto and incorporated by reference herein.

> The plaintiff,
> By her attorneys,
>
> ___/s/ John N. Lewis___
> John N. Lewis
> BBO# 298520
> Lawrence R. Mehl, of Counsel
> BBO# 566235
> JOHN N. LEWIS & ASSOCIATES
> 21 Merchants Row, 5th Floor
> Boston, MA 02109

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 21, 2007.

> ___/s/ John N. Lewis___
> John N. Lewis

---

[4] See footnote 1, *supra*.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GLORIA BROWN,<br>    Plaintiff | )<br>)<br>) | |
| v. | )<br>) | CIVIL ACTION<br>NO. 05-CV-11167-MBB |
| KFC CORPORATION,<br>    Defendant | )<br>) | |

**PLAINTIFF'S THIRD SUPPLEMENTAL ANSWERS
TO DEFENDANT KFC CORPORATION'S INTERROGATORIES**

    10. Identify each person you anticipate calling as an expert witness, including treating medical professionals, at the trial of this action and state the qualifications of the witness, the subject matter concerning which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected to testify, and a summary of the grounds for all such opinions.

    Answer. No decision as to who will be called as an expert witness has been made.

    Supplemental Answer. The plaintiff expects to call Timothy E. Foster, M.D., Boston Medical Center, 720 Harrison Avenue, Boston, MA 02118, a treating physician. The plaintiff incorporates by reference Dr. Foster's deposition testimony and, in particular:

    A. <u>Qualifications</u>. Dr. Foster received his M.D. degree from Boston University School of Medicine in 1986. He did a surgical internship at Dartmouth Medical Center, attached to Dartmouth Medical School in Hanover, New Hampshire and he did an orthopedic surgical residency at Boston University affiliated hospitals, including Boston Medical Center, Lahey Clinic Medical Center and Shriner's Hospital for Crippled Children. He is a member of the Academy of Orthopedic Surgeons and a diplomat of the Board of Orthopedic Surgery, commonly referred to as being "board certified." He did extra training in sports medicine at the Massachusetts General Hospital and Children's Hospital. When Dr. Foster came on staff at Boston Medical Center, he was asked by the Chairman of the Orthopedic Surgery Department, a spine surgeon, to take over his practice when he retired, so for one year Dr. Foster operated on every one of his patients with him and, when he retired, he took over the spine practice at the hospital, as well as doing sports medicine. For ten years, Dr. Foster practiced spine surgery and he has operated on over a thousand backs and probably over a thousand necks as well. When another Chairman came in, he hired a physician who did only spine surgery and Dr. Foster then limited his practice to sports medicine. Dr. Foster evaluates his patients who have been injured on the job as to whether they're competent to return to their former job and has also served as an impartial physician for workers' compensation claims.

-2-

B. <u>Subject matter</u>. Consistent with his deposition testimony, Dr. Foster is expected to testify as to his review of the plaintiff's hospital and medical records, including the ambulance record, the Boston Medical Center record, Dr. Ordia's and Dr. Bono's consultation reports, the radiology reports, including the MRI's of the plaintiff's knees and back, his office notes and the Boston Medical Center Pain Center records; the history he received of the plaintiff's injury of her left knee and back when she fell in a pothole in a Kentucy Friend Chicken restaurant's parking lot on June 21, 2002, his examination of her knees and back on her office visits; his treatment, including his surgery on her left knee, his review of her MRI's, including the MRI of her back; his diagnosis of her knee and back pain; his prescriptions for various types of medication, including pain and anti-inflammatory; his recommended therapy and concurrence with other physician's treatment plans; his prognosis of her recovery from her knee and back injuries; her disability as the result of her knee and back injury and chronic pain; and the causal relationship of her left knee, right knee and back injury, her pain and her disability to her fall at the KFC restaurant on June 21, 2002..

C. <u>Substance of Facts and Opinions</u>. Consistent with his deposition testimony, Dr. Foster is expected to testify that he first saw the plaintiff in his office on July 17, 2002, at which time he took an oral history regarding her injury and the problems that she was having. He performed a physical examination and obtained radiographic studies and then he reviewed his treatment plan with her. In particular, according to his office note of that date, she came in complaining of pain knee and, after taking a history of her injury and some background information, he formed a preliminary diagnosis that she had a meniscus tear and suggested that she should have an MRI for further evaluation. Upon examination, he found that her knee was significantly swollen ("2+ effusion) and that she walked painfully ("antalgic gait") with a knee brace and crutches. He requested that she have an MRI scan. During the office visit, Dr. Foster also reviewed the Boston Medical Center Emergency Room discharge report, which described the plaintiff as complaining of lumbar spine pain and described her ER treatment, including post-ER instructions for what to do about her back pain. Subsequently, Dr. Foster received the MRI scan report from the Radiology Department, which showed a medial meniscal tear, confirming his diagnosis. Dr. Foster saw the plaintiff next on August 1, 2002, when she returned to his office to discuss the MRI scan. At that time, because of the tear in the meniscus, he recommended that she consider arthroscopic surgery, which is surgery to repair her meniscus. The plaintiff agreed and the surgery was scheduled by Dr. Foster's office. Dr Foster also ordered an MRI scan of the plaintiff's back, because she was complaining of lumbar spine pain that was limiting her and was starting to become a problem. Dr. Foster, after personally reading and interpreting the MRI scan, was of the opinion that there was a disc bulge and protrusion at the L4-5 and L5-S1 levels. After he reviewed the MRI, Dr. Foster referred the plaintiff to a spine specialist, Dr. Chris Bono, and followed along with Dr. Bono in his evaluation of Ms. Brown. Dr. Foster performed arthroscopic surgery on the plaintiff's left knee on September 6, 2002. It was done as an outpatient at Boston Medical Center. He found that she had a meniscal tear, as he thought, but she

-3-

also had evidence of an injury to the cartilage of her patella, meaning the smooth coating over the bone was damaged. There were loose pieces of cartilage that were hanging down from the kneecap into the joint which were removed and the area was then smoothed. Her knee was bandaged and had a cooling device put on. On September 12, 2002, the plaintiff returned to Dr. Foster's office where he checked her incisions and her range of motion to make sure that she was not getting stiff. She's was also given a refill for pain medication and she was referred to physical therapy. Dr. Foster saw the plaintiff in his office on October 10, 2002, for her approximately one-month follow-up after surgery. He checked her incisions, range of motion, whether she had any tenderness remaining in her knee and evaluated her progress in therapy and complaints. The plaintiff reported that she was having low back pain. Dr. Sobieraj, her primary care doctor, had already scheduled her to see a neurologist within the next couple days, so Dr. Foster waited for the report. Dr. Foster saw the plaintiff in his office on December 4, 2002, for an approximately three month follow-up examination   He checked her incisions, checked her range of motion and they spoke about her physical therapy. She reported that she was still walking with a with a cane. Dr. Foster recommended that she continue with physical therapy, because he thought that she was having some improvement from the therapy and asked her to come back to see him in about five weeks. Dr. Foster also briefly spoke with the plaintiff about her right knee, which was bothering her at that time. Dr Foster 's opinion was that it was not uncommon when patients have an injury, that, after walking with crutches for a prolonged period of time or having difficulty ambulating, that their other knee will begin to become problematic for them. Dr. Foster saw the plaintiff in his office on January 22, 2003. She had some improvement in her left knee from the arthroscopic surgery, but still had some pain, but was complaining more of pain in her right knee. Dr. Foster requested an MRI scan of her right knee. It showed changes of her medial meniscus, as well as a thinning of her cartilage. It was Dr. Foster's opinion that the plaintiff had a tear in the meniscus of her right knee similar to her left knee. The plaintiff was also complaining about he back and Dr. Foster referred her to his associate, Dr. Joseph Ordia, a neurosurgeon. In the in the notes, Dr. Ordia describes the patient's MRI scan and the patient's specific problems that she has in her spine similar to what Dr. Bono had stated. On the basis of the information Dr. Foster received back from Dr. Bono, his diagnosis was that the plaintiff had a protruding discs at L4-L5 and at L5-Sl. Dr. Foster discussed treatment options with the plaintiff and it was decided to avoid spine surgery. He recommended that she follow-up with a physical medicine and rehabilitation specialist for the management of her back pain either through exercise or medication or both. Dr. Foster saw the plaintiff in his office on April3, 2003. He observed that she continued to have pain in both of her knees and limitation of her range of motion, which limited her normal activities. It was his impression at that time that the plaintiff had been through a therapy program which eventually was not of significant benefit and he asked her to come back in three months to consider surgery on her right knee. It was Dr. Foster's opinion that the cause of the plaintiff 's injury to her left knee was her fall in the KFC parking lot and that the cause of the injury to her right knee was from her walking on the crutches. Dr. Foster saw the plaintiff in his office on July 9, 2003. He reviewed

-4-

the MRI scan of her right knee. She was still having bilateral knee pain. She was still having problems with walking, as well as going up and down stairs. He examined her knees and noted that she was tender throughout her knee examination He ordered X-rays as well. Dr. Foster recommended that the plaintiff undergo Synvisc injections, a genetically engineered substance which would be injected into the knee. She declined. Dr. Foster saw the plaintiff in his office on December 3, 2003, which was her last visit. He noted that she was crying during the office visit and very upset about her pain. He examined her knees and found that there was no significant improvement. Dr. Foster again recommended that she have the Synvisc injections and gave her a prescription for the Synvisc that she could have fill, if she wanted to have the injections. Dr. Foster is of the opinion, to a reasonable degree of medical certainty, that there is a causal relationship between the plaintiff's fall on June 21, 2002, and the injury to her left knee for which he treated her, her left knee pain, her subsequent surgery, which he performed, and her disability. Dr. Foster is of the opinion, to a reasonable degree of medical certainty, that there is a causal relationship between the plaintiff's fall on June 21, 2002, and the condition of her right knee for which he treated her. Dr. Foster was of the opinion, to a reasonable degree of medical certainty, that there is a causal relationship between Ms. Brown's fall on June 21, 2002, and the injury to her back resulting in protruding discs at L4-5 and L5-S1 for which he treated her, her back pain and her treatment for chronic back pain. Dr. Foster's prognosis to a reasonable degree of medical certainty, is that there is not going to be any further substantial improvement, but rather there may be slow progressive worsening of her condition over a long period of time. Dr. Foster, prognosis, to a reasonable degree of medical certainty, is that the plaintiff is also going to have problems with her right knee and that he does not expect any improvement. Dr. Foster's opinion, to a reasonable degree of medical certainty, is that after four years of having lumbar spine pain, she is not going to have significant improvement in her lumbar spine. Dr. Foster is of the opinion, to a reasonable degree of medical certainty, that the plaintiff is unable to work due to her knee and back pain.

D. <u>Grounds for Opinions</u>. Consistent with his deposition testimony, Dr. Fosters's opinions, in general, are based on his education, training and experience as an orthopedic surgeon, his review of the plaintiff's medical records, the medical history given to him by the plaintiff she fell in a pot hole in the parking lot of a KFC restaurant on June 21, 2002, his physical examination of the plaintiff, his review of the plaintiff's MRI scans of her knees and back and other radiology reports, the reports of Dr. Ordia and Dr. Bono and the lack of improvement in the condition of the plaintiff's knees and back as her observed them during them time she was under his care. In particular, Dr. Foster's opinion, that there is a causal relationship between the plaintiff's fall on June 21, 2002, and the condition of her left knee for which he treated her is based on the facts that she had no prior history of knee pain and the findings at the time of surgery, which correlated with the history she gave of what happened to her knee when she fell. Dr. Foster's opinion, that there is a causal relationship between Mrs. Brown's fall on June 21, 2002, and the

-5-

condition of her right knee for which he treated her is based on the facts that she was compensating for her left knee with her gait pattern and that about an estimated twenty percent of the people on crutches or a cane begin to complain about the opposite extremity, after they have been on crutches or using a cane for a prolonged period of time. Dr. Foster's opinion, that there is a causal relationship between Ms. Brown's fall on June 21, 2002, and the condition of her back for which he treated her is based on her history of falling a striking her back against the metal hub of her SUV, his examination of her back and of his interpretation of the MRI of her back and of the consultation reports of Dr. Ordia and Dr. Bono. Dr. Foster's prognosis, that there is not going to be any further substantial improvement, but rather there may be slow progressive worsening of the plaintiff's condition over time, is based on the facts that people who do not have substantial improvement within a two year period of time usually do not show any substantial improvement. Dr. Foster, opinion, that the plaintiff is going to continue to have problems with her right knee, perhaps a slow deteriorating course, is based on the fact that people who do not have substantial improvement within a two year period of time usually do not show any substantial improvement. Dr. Foster's opinion, that after four years of having lumbar spine pain, the plaintiff is not going to have any significant improvement in her condition, is based on his examination of her back and of his interpretation of the MRI of her back and of the consultation reports of Dr. Ordia and Dr. Bono. Dr. Foster's opinion, that the plaintiff is unable to work is based on his examination and treatment of the plaintiff's knees and back, the plaintiff's continuing complaints of severe knee and back pain and treatment at the BMC Pain Clinic, which has not been successful, and data showing that patients, such as the plaintiff, who are out of work for more than two years are not able to return to work.

The plaintiff,
By her attorneys,

__/s/ John N. Lewis__
John N. Lewis
BBO# 298520
Lawrence R. Mehl, of Counsel
BBO# 566235
JOHN N. LEWIS & ASSOCIATES
21 Merchants Row, 5th Floor
Boston, MA 02109

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 20, 2007.

__/s/ John N. Lewis__
John N. Lewis