UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GLORIA BROWN, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 05-CV-11167-MBB |
| | ) | |
| KFC CORPORATION, | ) | |
| Defendant | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S OBJECTION TO DEFENDANT'S JURY INSTRUCTIONS**

As a requested by this Honorable Court, the parties have submitted their request for jury

instructions. Among those proposed by the defendants is the following, which the plaintiff

contends is both a misapplication of the law and highly prejudicial to her full and fair

consideration of the evidence on the merits by the Jury:

**JURY INSTRUCTION NUMBER 9**

**Testimony by Plaintiff describing pain and inability to work**

Any testimony by Plaintiff describing her pain and inability to work does
not constitute evidence of loss of earning capacity.

*See* Paul Timmons v. Massachusetts Bay Transportation Auth., 412 Mass. 646,
650, 591, N.E.2d 667, 670 (1992) (citing Nisbet v. Medaglia, 356 Mass. 580, 583
(Mass. 1970).

Both of the cases cited by the defendant  Nisbet v. Medaglia, 356 Mass. 580, 583 (Mass. 1970)

and Timmons v. MBTA., 412 Mass. 646, 650, 591, N.E.2d 667, 670 (1992) involve the use of

the plaintiff's own testimony as the factual foundation *for his expert's opinion.*

In Nisbet, *supra*, the plaintiff was injured in a motor vehicle accident.  Although he could

still perform his usual employment, he claimed that he had to give up a *second job* delivering

newspapers.  On the issue of his lost earning capacity, the plaintiff called an economist, who

responded to a hypothetical question as to the amount the plaintiff lost, based on the plaintiff's

medically unsubstantiated claim that he had to give up the second job as a result of the accident.

The Massachusetts Supreme Judicial Court excluded the expert's opinion as to the *amount* of the

plaintiff's lost earnings from his second job.  The relevant portions of the decision are set forth

below and the entire case is attached as Exhibit 1:

> The exceptions are to two rulings on evidence.  The first is to the judge permitting
> an actuary to answer a hypothetical question which assumed that the plaintiff's
> earning capacity was reduced by $35 a week from 1966 to 2002.  One Hurlbut, an
> actuary called by the plaintiff, testified on direct examination that the expectancy
> of life as of March 13, 1964, of a white American male born on October 16, 1937
> (as was the plaintiff according to some evidence) is 44.34 years.  The actual
> question which is the subject of exception was, '(W)ould you calculate * * * what
> sum of money invested at 4 per cent interest is sufficient to provide * * * a weekly
> amount of $35 * * * from February 1, 1966, until October 16, 2002, such sum to
> be exhausted at that time?'  The answer was, '$36,000.'
>
> It is a familiar rule that the plaintiff in a personal injury action is entitled to
> recover damages for impairment of earning capacity.  <u>Mahoney v. Boston Elev.
> Ry.</u>, 221 Mass. 116, 117, 108 N.E. 1033; <u>Chelsea Moving & Trucking Co. Inc. v.
> Ross Towboat Co.</u>, 280 Mass. 282, 285, 182 N.E. 477; <u>Doherty v. Ruiz</u>, 302
> Mass. 145, 146, 18 N.E.2d 542.  The judge charged the jury to this effect without
> exception.  **But there remains the substantial issue whether *the facts assumed
> in the hypothetical question* fairly represent evidence.**  <u>Brown v. United States
> Fid. & Guar. Co.</u>, 336 Mass. 609, 613-614, 147 N.E.2d 160.  The answer given to
> the question, $36,000, is a substantial amount.  This was the only testimony as to
> a sum for loss of earning capacity. [emphasis added].
>                    *                         *                         *
> <u>Testimony as to the plaintiff's physical pain and inability to perform heavy work
> does not supply evidence of such loss.</u>  The only reference to a weekly amount as
> damages for lost earning capacity made in the argument in the plaintiff's brief is
> that he cleared $35 a week 'on the newspaper route.'  This is a concentration on
> the secondary job for the Herald and a complete ignoring of the plaintiff's
> principal employment carrying the $5,700 salary with Prudential.
>                    *                         *                         *
> We do not multiply references to the amount of the plaintiff's earnings in his
> various principal employments.  **It is sufficient that the plaintiff's alleged
> diminution of earning power is not claimed to embrace his principal
> employments but is based on an asserted loss caused by inability to handle**

3

**secondary jobs** which are minor and *the termination of none of which is shown to have been caused by the accident.* [emphasis added].

It was error to permit the *hypothetical question* to be answered. [emphasis added].

Nisbet, 581-584

Similarly, in Timmons, *supra*, a police officer was involved in a motor vehicle accident. Like

the plaintiff in Nisbet, supra, the officer could perform his usual employment, but he claimed that

he had to give up his supplemental income from a *second job*. On the issue of his lost earning

capacity, the plaintiff called a vocational expert, who based his opinion on the medically

unsubstantiated claim that the officer's disability was permanent. The Massachusetts Supreme

Judicial Court excluded the expert's opinion as to *permanency* as beyond the scope o his

expertise. The relevant portions of the decision are set forth below and the entire case is attached

as Exhibit 2:

> There was a problem, however, with the expert's testimony concerning the impairment of the plaintiff's future earning capacity. The expert testified that he assumed that the plaintiff would be unable to work on paid details and to teach self-defense up until the mandatory retirement age of sixty-five for police officers, and the expert then calculated the potential loss of future earning capacity for the plaintiff based on that assumption. **The major difficulty with the expert's assumption concerning the permanency of the plaintiff's injuries is that this assumption was outside of the area of the expert's expertise and was not supported by any evidence in the record before this court.** [footnote 4 omitted] See Roddy v. Fleischman Distilling Sales Corp., 360 Mass. 623, 627, 277 N.E.2d 284 (1971) (defendant entitled to new trial where expert testified not only to hypothetical question unsupported by the evidence but also to his opinion which may have been beyond his qualifications). [emphasis added].

> Although the expert was qualified to offer his opinion on the plaintiff's inability to work paid police details and to teach self-defense classes, the expert was not qualified to testify on the issue of the permanency of the plaintiff's injuries. The expert's direct personal knowledge in the area of vocational rehabilitation counseling did not qualify him to testify about the extent or duration of the plaintiff's injuries. [citations omitted].

4

The expert's assumption that the plaintiff's injuries were permanent is also unsupported by any evidence in the record before this court. [citations omitted]. The plaintiff's own testimony could not *furnish the expert* with adequate evidence to determine the extent and duration of his injuries. See Nisbet v. Medaglia, 356 Mass. 580, 583, 254 N.E.2d 782 (1970) (plaintiff's testimony concerning his pain and suffering does not supply evidence of impairment of earning capacity); Williamson v. Feinstein, 311 Mass. 322, 324, 41 N.E.2d 185 (1942) (same). **Compare Griffin v. General Motors Corp., 380 Mass. 362, 366, 403 N.E.2d 402 (1980) (in addition to plaintiff, *doctor testified concerning probability of increase in plaintiff's loss of function*).** [emphasis added]. Timmons, 649-650.

As the Supreme Judicial Court distinguished in Nesbit ,*supra*, where there is supporting medical evidence, citing Griffin, *supra*, and as the Massachusetts Appeals Court distinguished Nisbet, *supra*, in Truong v Wiong,, 55 Mass.App.Ct. 868, 876, 775 N.E.2d 405 (2002):

The judge's comments suggest that she may have thought expert testimony on the disability-incapacity issue was required. **While it is true that a plaintiff's testimony describing his pain and inability to work does not constitute evidence of loss of earning capacity, see Nisbet v. Medaglia, 356 Mass. 580, 583, 254 N.E.2d 782 (1970), an expert witness, e.g., in this case a vocational expert, may not be necessary. "The assessment of damages for impairment of earning capacity rests largely on the common knowledge of the jury, sometimes with little aid from evidence."** Solimene v. B. Grauel & Co., KG, 399 Mass. 790, 804 n. 16, 507 N.E.2d 662 (1987), quoting from Griffin v. General Motors Corp., 380 Mass. 362, 366, 403 N.E.2d 402 (1980). Compare Mulcahey's Case, 26 Mass.App.Ct. 1, 3, 522 N.E.2d 431 (1988) (Department of Industrial Accidents entitled to use its own judgment in determining earning capacity). [emphasis added].

Truong, 876.

In the present case, both the plaintiff's own treating physician, Dr. Foster, and the defendant's medical expert, Dr. Froelich, are on record that the plaintiff is totally disabled and that there is no treatment available that will improve her condition. The medical evidence as to the permanency of her disability and the fact that she is unable to perform her primary job both make the instruction requested by the defendant inapplicable.

5

WHEREFORE, the plaintiff objects to the defendant's requested Instruction 9 and prays

that it not be excluded.

Respectfully submitted,

The plaintiff,
By her attorneys,

____/s/ John N. Lewis____
John N. Lewis
BBO# 298520
Lawrence Mehl, of Counsel
BBO# 566235
JOHN N. LEWIS & ASSOCIATES
21 Merchants Row, 5th Floor
Boston, MA 02109

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the
registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies
will be sent to those indicated as non-registered participants on August 3, 2007

_____/s/ John N. Lewis____
John N. Lewis

254 N.E.2d 782
356 Mass. 580, 254 N.E.2d 782
**(Cite as: 356 Mass. 580, 254 N.E.2d 782)**

**Nisbet** v. Medaglia,
Mass. 1970.

Supreme Judicial Court of Massachusetts, Norfolk.
John E. **NISBET**
v.
Anthony J. MEDAGLIA, Jr.
Argued Dec. 5, 1969.
Decided Jan. 7, 1970.

Action for personal injuries sustained in a collision of motor vehicles allegedly caused by defendant's negligence was tried in the Superior Court, Hale, J., wherein the jury returned a verdict for plaintiff and defendant brought exceptions. The Supreme Judicial Court, Wilkins, C.J., held that permitting actuary to answer hypothetical question which assumed that plaintiff's earning capacity had been reduced by $35 per week from time of injury for his life expectancy was improper in absence of evidence showing a loss of $35 weekly as a consequence of the accident.

Exceptions sustained.
West Headnotes
**[1] Damages 115 ☞38**

115 Damages
    115III Grounds and Subjects of Compensatory Damages
        115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            115III(A)1 In General
                115k35 Pecuniary Losses
                    115k38 k. Impairment of Earning Capacity. Most Cited Cases
Plaintiff in personal injury action is entitled to recover damages for impairment of earning capacity.

**[2] Evidence 157 ☞553(3)**

157 Evidence
    157XII Opinion Evidence
        157XII(D) Examination of Experts
            157k551 Hypothetical Questions and Answers
                157k553 Form and Sufficiency of Questions

157k553(3) k. Facts Which May Be Assumed. Most Cited Cases

**Evidence 157 ☞553(4)**

157 Evidence
    157XII Opinion Evidence
        157XII(D) Examination of Experts
            157k551 Hypothetical Questions and Answers
                157k553 Form and Sufficiency of Questions
                    157k553(4) k. Support of Facts by Evidence. Most Cited Cases
Permitting actuary to answer hypothetical question which assumed that personal-injury plaintiff's earning capacity had been reduced by $35 per week from time of injury for his life expectancy was improper in absence of evidence showing a loss of $35 weekly as a consequence of the accident and in view of fact that alleged diminution of earning power was not claimed to embrace his principal employment but was based on asserted inability to handle secondary jobs which were minor and termination of none of which was shown to have been caused by the accident.

**\*580 \*\*783** Thomas D. Burns, Stephen N. Subrin, Boston, for defendant.
Monto Rosenthal, Boston, for plaintiff.

Before WILKINS, C.J., and SPALDING, CUTTER, SPIEGEL and QUIRICO, JJ.
WILKINS, Chief Justice.
This is an action of tort for personal injuries[FN1] incurred on March 13, 1964, in a collision of motor vehicles, one of which the plaintiff was operating. The jury returned a verdict of $82,500 for personal injuries, which the trial judge found to be excessive, and which was remitted to $42,500 by the plaintiff. There was evidence of the defendant's negligence.

FN1. There was a verdict of $655 on a count for property damage, which is presently immaterial.

The exceptions are to two rulings on evidence. The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

254 N.E.2d 782
356 Mass. 580, 254 N.E.2d 782
**(Cite as: 356 Mass. 580, 254 N.E.2d 782)**

first is to the judge permitting an actuary to answer a hypothetical question which assumed that the plaintiff's earning capacity was reduced by $35 a week from 1966 to 2002. One Hurlbut, an actuary called by the plaintiff, testified on direct examination that the expectancy of life as of March 13, *581 1964, of a white American male born on October 16, 1937 (as was the plaintiff according to some evidence) is 44.34 years. The actual question which is the subject of exception was, '(W)ould you calculate * * * what sum of money invested at 4 per cent interest is sufficient to provide * * * a weekly amount of $35 * * * from February 1, 1966, until October 16, 2002, such sum to be exhausted at that time?' The answer was, '$36,000.'

In order to test the propriety of the question and answer, it is necessary to attempt to state, at the risk of being tedious, a fair representation of the pertinent testimony.

On direct examination the plaintiff testified that he was working for Prudential Insurance Company in Boston when he was injured. His work required a lot of physical activity. 'He was moving around all the time, setting up tapes, setting up forms. * * *' Besides his work at Prudential, he had a newspaper agency in Stoughton for The Boston Herald. His salary with Prudential was $5,700 and 'he cleared $35 a week after automobile expenses for a newspaper route.' He used to get up about 5 A.M. to do his newspaper work. [FN2] This took about an hour and a half and then he worked from 4:30 P.M. until 12:30 A.M. at Prudential. Then he would go home and sleep for a while and get up and do the newspapers. When he was on the morning shift, he would work from **784 8:30 A.M. until 4:45 P.M. One week he would be on the first shift and the second week he would be on the second shift from 4:30 P.M. to 12:30 A.M. He described his injuries, which were largely to his back and legs and quite painful. In May, 1964, two months after the accident, he entered a hospital, where a myelogram was performed. 'From March he tried to carry out the duties that he had other than at Prudential, the newspaper thing, but he just couldn't handle it.' From March until he went into the hospital a sixteen year old boy helped with the paper route. 'As far as his work with the Boston Herald, he had this boy working for him and he hoped his recovery was *582 soon so that he would be able to assume full

responsibility for it himself. His wife tried to help, but she could not handle it.' On October 5, 1965, he went to work for Inland Express as a truck driver. When he went to work he was getting $3.15 an hour. In October and November he was a part time truck driver; and in December he was on a full time seniority list. After a year and a half, in August, 1967, he gave that up. He used to work nights for Inland Express. He went in at 7 P.M. and the shift ended at 4 A.M. and he would go and deliver the Globe after he finished work. If he did not go to work, he would have to get up at 5 o'clock in the morning to 'do them.' 'At the end of the day he was all used up.' He left Inland in August, 1967. He gave up the Herald when he went to work for Inland Express. For a while he had both the Globe and the Herald. He continued with the Globe after he went with Inland. His income from the Globe until he went to work for Inland was $30 a week plus the profits he made on the newspaper which went into the expense of the automobile. He gave up the Globe in the spring of 1967. After he left Inland he went to work at Nisbet Trucking Company, of which his brother is president, for $125 a week, his duties being largely office work.

FN2. We infer that this was the Herald.

On cross-examination the plaintiff testified: 'After the accident, he made deliveries himself.' When he could not get the boy 'to do them and there was nobody else to do them, they had to be done so he did them.' He received more money in 1964 from the Herald than he had in 1963. 'He testified on deposition [FN3] that he did not continue the route after the accident and was averaging $35 a week from the Herald Traveler. * * * When he testified in his deposition that between the day of the accident and October, 1965, he delivered no newspapers, that was not a fact. * * * He began delivering papers on a regular basis near the end of October, 1965.' 'He took on the agency of another newspaper before he went to work for Inland Express, and that *583 was the Boston Globe.' He was working in May, 1967, place unspecified, and he earned $142 a week.

FN3. We assume that this was taken before

254 N.E.2d 782
356 Mass. 580, 254 N.E.2d 782
**(Cite as: 356 Mass. 580, 254 N.E.2d 782)**

trial.

On redirect examination he testified that 'he gave up the Boston Herald in the first week of 1966.'

[1] It is a familiar rule that the plaintiff in a personal injury action is entitled to recover damages for impairment of earning capacity. Mahoney v. Boston Elev. Ry., 221 Mass. 116, 117, 108 N.E. 1033; Chelsea Moving & Trucking Co. Inc. v. Ross Towboat Co., 280 Mass. 282, 285, 182 N.E. 477; Doherty v. Ruiz, 302 Mass. 145, 146, 18 N.E.2d 542. The judge charged the jury to this effect without exception. But there remains the substantial issue whether the facts assumed in the hypothetical question fairly represent evidence. Brown v. United States Fid. & Guar. Co., 336 Mass. 609, 613-614, 147 N.E.2d 160. The answer given to the question, $36,000, is a substantial amount. This was the only testimony as to a sum for loss of earning capacity.

The defendant argues that there was no evidence that the plaintiff's earning capacity was diminished by $35 weekly from **785 February 1, 1966, until October 16, 2002, a period of more than thirty-six years. We agree that evidence was lacking to support a loss of $35 weekly as a consequence of the accident.

Testimony as to the plaintiff's physical pain and inability to perform heavy work does not supply evidence of such loss. The only reference to a weekly amount as damages for lost earning capacity made in the argument in the plaintiff's brief is that he cleared $35 a week 'on the newspaper route.' This is a concentration on the secondary job for the Herald and a complete ignoring of the plaintiff's principal employment carrying the $5,700 salary with Prudential. The Herald agency was not given up until January, 1966, which may explain the date February 1, 1966, in the hypothetical question. In the meantime the plaintiff had taken on the Globe agency from which his income was $30 a week. For a while he had both agencies. He received more from the Herald in 1964 than in 1963. He retained the Globe agency until the spring of 1967. At the time of the trial (December, 1967) a doctor testified that he did not think *584 that the plaintiff was capable of lifting a bundle of newspapers, or that 'he will ever handle a job that requires lifting, a lot of bending.' The plaintiff himself testified that when he worked for Inland and held the Globe agency he was 'all used up' at the end of the day.

[2] We do not multiply references to the amount of the plaintiff's earnings in his various principal employments. It is sufficient that the plaintiff's alleged diminution of earning power is not claimed to embrace his principal employments but is based on an asserted loss caused by inability to handle secondary jobs which are minor and the termination of none of which is shown to have been caused by the accident.

It was error to permit the hypothetical question to be answered.

We need not consider the other exception. It is unlikely that the matter would arise in the same form at another trial.

Exceptions sustained.

Mass. 1970.
Nisbet v. Medaglia
356 Mass. 580, 254 N.E.2d 782

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

591 N.E.2d 667
412 Mass. 646, 591 N.E.2d 667
**(Cite as: 412 Mass. 646, 591 N.E.2d 667)**

Timmons v. Massachusetts Bay Transp. Authority
Mass.,1992.

Supreme Judicial Court of Massachusetts,Middlesex.
Paul TIMMONS
v.
MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY.
Argued March 5, 1992.
Decided May 14, 1992.

Police officer injured in collision with bus brought action against transportation authority. The Superior Court Department, Middlesex County, James P. Lynch, Jr., J., rendered judgment for police officer and appeal was taken. The Appeals Court affirmed, 31 Mass.App.Ct. 1109, 577 N.E.2d 643. On application for further appellate review, the Supreme Judicial Court, Nolan, J., held that allowing vocational rehabilitation counselor to testify as to impairment of officer's future earning capacity was reversible error.

Reversed in part and remanded.
West Headnotes
**[1] Evidence 157 ☞537**

157 Evidence
  157XII Opinion Evidence
    157XII(C) Competency of Experts
      157k537 k. Bodily and Mental Condition.
Most Cited Cases
Vocational rehabilitation counselor who testified that his expertise consisted of locating employment for injured disabled persons and determining what type of work someone could have done prior to injury or illness and then what kind of work they could do as result of that injury or illness was qualified to offer expert testimony on police officer's inability to work paid police details and to teach self-defense as result of injuries suffered in automobile collision.

**[2] Evidence 157 ☞555.9**

157 Evidence
  157XII Opinion Evidence
    157XII(D) Examination of Experts
      157k555 Basis of Opinion
        157k555.9 k. Damages. Most Cited Cases

Vocational rehabilitation counselor could offer expert testimony regarding impairment of police officer's earning capacity for period between time of automobile collision causing injuries and time of trial, inasmuch as there was adequate medical evidence in record concerning officer's incapacity during that time period.

**[3] Evidence 157 ☞555.9**

157 Evidence
  157XII Opinion Evidence
    157XII(D) Examination of Experts
      157k555 Basis of Opinion
        157k555.9 k. Damages. Most Cited Cases
Allowing vocational rehabilitation counselor to testify as expert regarding impairment of injured police officer's future earning capacity prejudiced defendant because counselor assumed that police officer suffered permanent injury, which was outside area of counselor's expertise and was not supported by any evidence in the record.

**[4] Appeal and Error 30 ☞233(2)**

30 Appeal and Error
  30V Presentation and Reservation in Lower Court of Grounds of Review
    30V(B) Objections and Motions, and Rulings Thereon
      30k233 Mode of Making Objection in General
        30k233(2) k. Repetition of Objections.
Most Cited Cases
Although defendant did not specifically object to plaintiff's question to his expert concerning impairment of plaintiff's future earning capacity, issue of whether expert should have been allowed to testify as to impairment of plaintiff's future earning capacity was preserved for appellate review since defendant had already objected twice to plaintiff's questions to expert concerning impairment of plaintiff's earning capacity and, given judge's response, any further objection by defendant would have been futile.

**[5] Evidence 157 ☞528(2)**

157 Evidence
  157XII Opinion Evidence
    157XII(B) Subjects of Expert Testimony

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

591 N.E.2d 667
412 Mass. 646, 591 N.E.2d 667
**(Cite as: 412 Mass. 646, 591 N.E.2d 667)**

157k526 Cause and Effect
    157k528 Injuries to the Person
        157k528(2) k. Effect. Most Cited Cases
Vocational rehabilitation counselor's direct personal knowledge in area of vocation rehabilitation counseling did not qualify him to testify about extent or duration of plaintiff's injuries.

**[6] Evidence 157 ☜471(13)**

157 Evidence
    157XII Opinion Evidence
        157XII(A) Conclusions and Opinions of Witnesses in General
            157k471 Conclusions and Matters of Opinion or Facts
                157k471(13) k. Bodily Appearance or Condition. Most Cited Cases
Injured plaintiff's own testimony could not furnish expert witness with adequate evidence to determine extent and duration of plaintiff's injuries.

**[7] Trial 388 ☜207**

388 Trial
    388VII Instructions to Jury
        388VII(B) Necessity and Subject-Matter
            388k207 k. Purpose and Effect of Evidence. Most Cited Cases
Admission of medical records of injured police officer in his personal injury action did not require immediate curative instruction to jury that it should not consider any medical evidence that it did not understand. M.G.L.A. c. 233, § 79G.

**[8] Evidence 157 ☜571(1)**

157 Evidence
    157XII Opinion Evidence
        157XII(F) Effect of Opinion Evidence
            157k569 Testimony of Experts
                157k571 Nature of Subject
                    157k571(1) k. In General. Most Cited Cases
Chiropractor's conclusion that injured police officer "may continue to experience episodes of low back pain" did not support assumption by vocational rehabilitation counselor that police officer suffered permanent injury, as was necessary to support counselor's testimony concerning impairment of police officer's future earning capacity.

**[9] Damages 115 ☜187**

115 Damages
    115IX Evidence
        115k183 Weight and Sufficiency
            115k187 k. Impairment of Earning Capacity. Most Cited Cases
Determination of extent of injured plaintiff's diminished earning capacity must be based, at least, on probabilities, not possibilities.

**\*\*668 \*646** James E. Small, Jr., Boston, for defendant.
Lawrence W. Frisoli, Cambridge, for plaintiff.

Before LIACOS, C.J., and WILKINS, NOLAN, LYNCH and O'CONNOR, JJ.
NOLAN, Justice.
The plaintiff, a Somerville police officer, was the operator of an automobile which was struck from the rear by a bus owned by the Massachusetts Bay Transportation Authority (Authority) and operated by James F. Lawlor. The plaintiff suffered injuries as a result of this accident, and he initiated a lawsuit in the Superior Court Department, alleging that both the Authority and Lawlor were **\*647** negligent in connection with the accident.[FN1] The case was tried before a jury as to damages only, after the Authority judicially admitted liability. The jury returned a verdict awarding the plaintiff $25,000 for pain and suffering, $12,800 for medical and hospital bills, and $190,000 for impairment of earning capacity.

    FN1. The plaintiff dismissed his claim against Lawlor at the close of all the evidence in the trial.

After the verdict, the trial judge denied the Authority's motion for a new trial or, in the alternative, remittitur. The Authority appealed from the judgment and from the denial of its motion for a new trial. On appeal, the Authority asserts, inter alia, that the judge erred in allowing the plaintiff's expert witness, a vocational

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

591 N.E.2d 667
412 Mass. 646, 591 N.E.2d 667
(Cite as: 412 Mass. 646, 591 N.E.2d 667)

rehabilitation counselor, to testify about the impairment of the plaintiff's future earning capacity. The Authority argued that there was an inadequate basis for the expert's testimony on this subject. In an unpublished order and memorandum, the Appeals Court affirmed the judgment and the denial of the motion for a new trial. 31 Mass.App.Ct. 1109, 577 N.E.2d 643 (1991). We allowed the Authority's application for further appellate review. We agree with the Authority that it was prejudicial error to allow the expert to testify on the impairment of the plaintiff's future earning capacity. We reverse and remand for a new trial solely on the issue of the impairment of the plaintiff's earning capacity.[FN2]

> FN2. There is no dispute on appeal concerning the jury's award of damages for pain and suffering, and medical and hospital bills. While there was evidence concerning the impairment of the plaintiff's earning capacity between the time of the accident and the time of the trial, we find it difficult to separate the jury's award into impairment of past earning capacity and impairment of future earning capacity. In these circumstances, we believe that the best course would be a new trial on the total impairment of the plaintiff's earning capacity.

**\*\*669** The major thrust of the plaintiff's case was that the injuries that he suffered as a result of the accident, although they did not permanently affect his ability to function as a police officer, permanently prevented him from working paid police details and teaching self-defense at the police academy, both of which activities supplemented his police officer's income. **\*648** The plaintiff's evidence in this case essentially consisted of three elements: the plaintiff's own testimony; medical records admitted under G.L. c. 233, § 79G (1990 ed.); and testimony from the plaintiff's expert witness, K. Richard Bruhn, a vocational rehabilitation counselor. The Authority presented no evidence.

[1] "The role of an expert witness is to help the jury understand issues of fact beyond their common experience. Under modern standards, expert testimony on matters within the witness's field of expertise is admissible whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide. *Commonwealth v. LaCorte*, 373 Mass. 700, 705 [369 N.E.2d 1006] (1977). *Commonwealth v. Montmeny*, 360 Mass. 526, 527-528 [276 N.E.2d 688] (1971)." *Simon v. Solomon*, 385 Mass. 91, 105, 431 N.E.2d 556 (1982). The expert testified that his expertise consisted of locating employment for injured disabled persons, and "determining what type of work someone could have done prior to an injury or an illness, and then what kind of work they can do as a result of that injury or illness." The evidence would permit the judge to conclude that Bruhn was well qualified, therefore, to offer expert testimony on the plaintiff's inability to work paid police details and to teach self-defense as a result of his injuries.[FN3] See 8 P.M. Deutsch & F.A. Raffa, Damages in Tort Actions § 100.53, at 100-21 (1992) (vocational rehabilitation counselor able to provide assessment of vocational handicaps resulting from injury, and impact on range of job alternatives and individual's base earning capacity).

> FN3. The Authority did not challenge Bruhn's qualifications as an expert witness.

[2] There was no problem, therefore, with the expert's testimony regarding the impairment of the plaintiff's earning capacity for the period between the time of the accident and the time of the trial. There was adequate medical evidence in the record concerning the plaintiff's incapacity during this time period.

**\*649** [3][4] There was a problem, however, with the expert's testimony concerning the impairment of the plaintiff's future earning capacity. The expert testified that he assumed that the plaintiff would be unable to work on paid details and to teach self-defense up until the mandatory retirement age of sixty-five for police officers, and the expert then calculated the potential loss of future earning capacity for the plaintiff based on that assumption. The major difficulty with the expert's assumption concerning the permanency of the plaintiff's injuries is that this assumption was outside of the area of the expert's expertise and was not supported by any evidence in the record before this court.[FN4] See *Roddy*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

591 N.E.2d 667
412 Mass. 646, 591 N.E.2d 667
**(Cite as: 412 Mass. 646, 591 N.E.2d 667)**

Page 4

*v. Fleischman Distilling Sales Corp.,* 360 Mass. 623, 627, 277 N.E.2d 284 (1971) (defendant entitled to new trial where expert testified not only to hypothetical question unsupported by the evidence but also to his opinion**670 which may have been beyond his qualifications).

> FN4. The plaintiff argues on appeal that the Authority failed to object to this line of questioning. The record indicates, however, that, while the Authority did not specifically object to the plaintiff's question to the expert concerning the impairment of the plaintiff's future earning capacity, the Authority had already objected twice to the plaintiff's questions to the expert concerning the impairment of the plaintiff's earning capacity. On both occasions the judge instructed the jury that they were not bound to accept the expert's opinion and that it was proper for the expert to testify concerning the impairment of the plaintiff's future earning capacity. In these circumstances, any further objection by the Authority would have been futile and we believe that the Authority objected properly to this line of questioning. See *Commonwealth v. Rubio,* 27 Mass.App.Ct. 506, 511 n. 4, 540 N.E.2d 189 (1989).

[5] Although the expert was qualified to offer his opinion on the plaintiff's inability to work paid police details and to teach self-defense classes, the expert was not qualified to testify on the issue of the permanency of the plaintiff's injuries. The expert's direct personal knowledge in the area of vocational rehabilitation counseling did not qualify him to testify about the extent or duration of the plaintiff's injuries. See *Commonwealth v. Weichell,* 390 Mass. 62, 78, 453 N.E.2d 1038 (1983) (photography expert unqualified to testify on the subject of human perception), cert. denied, 465 U.S. 1032, 104 S.Ct. 1298, 79 L.Ed.2d 698 (1984); *Commonwealth v. Seit,* 373 Mass. 83, 91-92, 364 N.E.2d 1243 (1977) (ballistician unqualified *650 to testify in area of physiology or pathology); *Carlson v. Holden,* 358 Mass. 22, 25-26, 260 N.E.2d 666 (1970) (expert qualified as civil engineer, land surveyor, and sanitary engineer unqualified on subject of development

of acreage into building lots); *Lee Lime Corp. v. Massachusetts Turnpike Auth.,* 337 Mass. 433, 436-437, 149 N.E.2d 905 (1958) (real estate expert unqualified to opine as to value of limestone plant or quarry). See also P.J. Liacos, Massachusetts Evidence 111 (5th ed. 1981) ("The fact that a person qualifies as an expert in one subject does not qualify him to give an expert opinion in regard to another, albeit somewhat related, subject, however").

[6] The expert's assumption that the plaintiff's injuries were permanent is also unsupported by any evidence in the record before this court. See *Kennedy v. U-Haul Co.,* 360 Mass. 71, 73-74, 271 N.E.2d 346 (1971) ("A mere guess or conjecture by an expert witness in the form of a conclusion from basic facts that do not tend toward that conclusion any more than toward a contrary one has no evidential value"); *Sevigny's Case,* 337 Mass. 747, 751, 151 N.E.2d 258 (1958) ("an opinion given by an expert will be disregarded where it amounts to no more than mere speculation or a guess from subordinate facts that do not give adequate support to the conclusion reached"); *McCarthy v. Hauck,* 15 Mass.App.Ct. 603, 610, 447 N.E.2d 22 (1983) (jury lacked a basis for finding in favor of plaintiff where plaintiff's sole expert relied on an assumption not supported by the evidence). The plaintiff's own testimony could not furnish the expert with adequate evidence to determine the extent and duration of his injuries. See *Nisbet v. Medaglia,* 356 Mass. 580, 583, 254 N.E.2d 782 (1970) (plaintiff's testimony concerning his pain and suffering does not supply evidence of impairment of earning capacity); *Williamson v. Feinstein,* 311 Mass. 322, 324, 41 N.E.2d 185 (1942) (same). Compare *Griffin v. General Motors Corp.,* 380 Mass. 362, 366, 403 N.E.2d 402 (1980) (in addition to plaintiff, doctor testified concerning probability of increase in plaintiff's loss of function).

[7][8] The only other evidence in the record that potentially could have been used to support the expert's assumption concerning the permanency of the plaintiff's injuries was his *651 medical records, admitted in evidence under G.L. c. 233, § 79G.[FN5] The most cogent evidence of the likelihood of the extent and duration of the plaintiff's injuries within these records is contained in a letter from the plaintiff's chiropractor, Dr. Robert

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

591 N.E.2d 667
412 Mass. 646, 591 N.E.2d 667
**(Cite as: 412 Mass. 646, 591 N.E.2d 667)**

DiFonzo.  The **671 most relevant portions of Dr. DiFonzo's letter, relied on by the Appeals Court in its unpublished memorandum to support its conclusion that the jury were warranted in concluding that the plaintiff's injuries are permanent, are as follows:  "Since [the plaintiff] has been treated at this office he has made some progress within a reasonable period of time.  The [plaintiff] has shown only partial relief of his symptomatic state.  [The plaintiff's] condition is now in a chronic state....  In my opinion, this patient may continue to experience episodes of low back pain due to the nature of his injury, stress of work and normal daily activities for an indefinite period of time."     Dr. DiFonzo's conclusion that the plaintiff "may continue to experience episodes of low back pain," does not support the expert's assumption that the plaintiff suffered a permanent injury, but only that he possibly suffered such an injury.  See *Alholm v. Wareham,* 371 Mass. 621, 627, 358 N.E.2d 788 (1976) ("the evidence must contain facts from which reasonable inferences based on probabilities rather than possibilities may be drawn").  No other medical *652 record provides any analysis of the extent or duration of the plaintiff's injuries.

       FN5. The medical records provide the basis for the Authority's other argument on appeal.  After the plaintiff's medical records were admitted in evidence under G.L. c. 233, § 79G (1990 ed.), and later read into the record without objection, the Authority requested a curative instruction to the jury that they should not consider any of the medical evidence that they did not understand.  Although the judge, in refusing the Authority's request, stated that he would instruct the jury in his general instructions on the disputed questions on the basis of speculation, conjecture, or surmise, the Authority failed to include the judge's actual instructions to the jury in the record appendix.  We are unable, therefore, to consider fully the Authority's argument in the absence of the judge's final instructions to the jury.  Nevertheless, we conclude that the medical records admitted under G.L. c. 233, § 79G, did not require immediate curative or limiting instructions,

and that the judge, therefore, did not abuse his discretion.  See *Commonwealth v. Copeland,* 375 Mass. 438, 442, 377 N.E.2d 930 (1978) (hospital records, standing alone, are competent proof of the medical facts treated therein).

While the trial judge erred in these circumstances in allowing the expert to testify on the impairment of the plaintiff's future earning capacity, the Authority is not entitled to a new trial unless the error has injuriously affected its substantial rights.  See G.L. c. 231, §§ 119, 132 (1990 ed.); *Sacco v. Roupenian,* 409 Mass. 25, 30, 564 N.E.2d 386 (1990); *Grant v. Lewis/Boyle, Inc.,* 408 Mass. 269, 275, 557 N.E.2d 1136 (1990).  If this incompetent evidence may have influenced the jury, the Authority is entitled to a new trial.  *Middlesex Supply, Inc. v. Martin & Sons,* 354 Mass. 373, 375, 237 N.E.2d 692 (1968).  We believe that the expert's incompetent testimony may well have influenced the jury.

[9]  "The process of ascertaining the amount of compensation to be awarded for impairment of the capacity to work requires, first, the determination of the extent to which such capacity has been diminished and, second, the fixing of the amount of money which will compensate for the determined extent of impairment."  *Shea v. Rettie,* 287 Mass. 454, 456, 192 N.E. 44 (1934).  The determination of the extent of the plaintiff's diminished capacity must be based, at least, on probabilities.  See *Halnan v. New England Tel. & Tel. Co.,* 296 Mass. 219, 221-222, 5 N.E.2d 209 (1936) (impairment of earning capacity includes "*probable* impairment of his future capacity" [emphasis added] ); *Rooney v. New York, N.H. & H.R.R.,* 173 Mass. 222, 227, 53 N.E. 435 (1899) (damages for loss of earning capacity limited to amount necessary "to compensate for a *probable* annual loss for a *probable* term of years" [emphasis added] );  Restatement (Second) of Torts § 912 comment e (1979) ( "When an injured person seeks to recover for harms that may result in the future, he is entitled to damages based upon the *probability* that harm of one sort or another will ensue and upon its *probable* seriousness if it should ensue.  When a person has suffered physical harm that is more or less permanent in nature ... he is entitled to recover damages not only for harm already suffered, but also for that which *probably* will result in the future" [emphasis

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

591 N.E.2d 667                                                        Page 6
412 Mass. 646, 591 N.E.2d 667
**(Cite as: 412 Mass. 646, 591 N.E.2d 667)**

added] ).    ***653** There is no evidence in the record,
based on probabilities and not just possibilities, except
for the expert's incompetent testimony on the
impairment of the plaintiff's future earning capacity,
that the plaintiff's injuries are of a permanent nature, or
any other inference concerning the duration of his
impairment.   In these circumstances, we conclude that
the incompetent testimony was not harmless and may
have influenced the jury, and that the Authority,
therefore, is entitled to a new trial on the issue of the
plaintiff's loss of earning capacity.

*So ordered.*

Mass.,1992.
Timmons v. Massachusetts Bay Transp. Authority
412 Mass. 646, 591 N.E.2d 667

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

775 N.E.2d 405
55 Mass.App.Ct. 868, 775 N.E.2d 405
**(Cite as: 55 Mass.App.Ct. 868, 775 N.E.2d 405)**

Truong v. Wong
Mass.App.Ct.,2002.

Appeals Court of Massachusetts,Suffolk.
**Chi TRUONG**
v.
Cheng Yah **WONG** & another.<u>FN1</u>

<u>FN1.</u> Yah Kee, Inc.
**No. 99-P-1284.**

Argued April 3, 2001.
Decided Sept. 18, 2002.

Employee who suffered work-related injury brought personal injury action against his corporate employer and its president. After entering directed verdict in favor of president and judgment on jury verdict against employer, the Superior Court Department, Suffolk County, <u>Barbara J. Rouse</u>, J., denied employer's motion for new trial on damages and denied employee's motion for entry of judgment against president. Employer appealed, and employee cross-appealed. The Appeals Court, <u>Beck</u>, J., held that: (1) jury's award of damages against employer was not influenced by question concerning negligence of president; (2) once jury found that employee's injury was permanent and total, computation of damages against president was determined by provisions of Workers' Compensation Act; (3) questions concerning president's negligence and extent of employee's disability were questions for jury; (4) question of damages against president was question of law; and (5) employee could recover damages from both employer and president, but could not obtain double recovery.

Affirmed in part, reversed in part and remanded.
West Headnotes
**[1] Workers' Compensation 413 ☞2110**

<u>413</u> Workers' Compensation
　　<u>413XX</u> Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
　　　<u>413XX(A)</u> Between Employer and Employee
　　　　<u>413XX(A)3</u> Defenses; Abrogation or Modification of Common-Law Defenses

<u>413k2110</u> k. In General. <u>Most Cited Cases</u>
In injured employee's tort action against employer, which does not carry workers' compensation insurance and is not self-insured, the employer may not assert certain critical common-law defenses. <u>M.G.L.A. c. 152, §§ 66</u>, <u>67</u>.

**[2] Workers' Compensation 413 ☞2168**

<u>413</u> Workers' Compensation
　　<u>413XX</u> Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
　　　<u>413XX(C)</u> Action Against Third Persons in General for Employee's Injury or Death
　　　　<u>413XX(C)1</u> Right of Action of Employee or Representative Generally
　　　　　<u>413k2160</u> What Persons Liable as Third Persons
　　　　　　<u>413k2168</u> k. Co-Employee, or Agent or Officer of Employer of Injured Person. <u>Most Cited Cases</u>

**Workers' Compensation 413 ☞2243**

<u>413</u> Workers' Compensation
　　<u>413XX</u> Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
　　　<u>413XX(C)</u> Action Against Third Persons in General for Employee's Injury or Death
　　　　<u>413XX(C)6</u> Amount and Items of Recovery
　　　　　<u>413k2243</u> k. Action by Employee, Dependents, or Personal Representative. <u>Most Cited Cases</u>
An injured employee may bring an action in tort against a corporate officer who negligently fails to obtain workers' compensation coverage; in such a case, the measure of damages is the amount which would have been obtained under the Workers' Compensation Act had workers' compensation coverage been provided. <u>M.G.L.A. c. 152, § 1</u> et seq.

**[3] Appeal and Error 30 ☞979(5)**

<u>30</u> Appeal and Error
　　<u>30XVI</u> Review
　　　<u>30XVI(H)</u> Discretion of Lower Court
　　　　<u>30k976</u> New Trial or Rehearing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

30k979 For Insufficiency of Evidence
　　30k979(5) k. Inadequate or Excessive
Damages. Most Cited Cases
An appellate court will not find an abuse of discretion
in the judge's refusal to grant a new trial on the ground
of excessive damages, unless the damages awarded
were greatly disproportionate to the injury proven or
represented a miscarriage of justice; this deference is
particularly appropriate when the judge deciding the
motion is the trial judge.

**[4] Workers' Compensation 413 ☞2121**

413 Workers' Compensation
　　413XX Effect of Act on Other Statutory or
Common-Law Rights of Action and Defenses
　　　413XX(A) Between Employer and Employee
　　　　413XX(A)4 Negligence of Employer and
Measure of Damages
　　　　　413k2121 k. Limitation of Recovery or
Measure of Damages. Most Cited Cases
No precise formula governed jury's calculation of
employee's damages, in employee's personal injury
action against employer, which did not carry workers'
compensation insurance and was not self-insured; jury
could consider medical expenses, physical pain and
suffering, mental or emotional pain and suffering, lost
wages, physical disfunction, permanent disability, and
loss of earning capacity based on age, health, education
and vocational history.

**[5] Appeal and Error 30 ☞930(2)**

30 Appeal and Error
　　30XVI Review
　　　30XVI(G) Presumptions
　　　　30k930 Verdict
　　　　　30k930(2) k. Instructions Understood or
Followed. Most Cited Cases

**Trial 388 ☞352.1(9)**

388 Trial
　　388IX Verdict
　　　388IX(B) Special Interrogatories and Findings
　　　　388k352 Preparation and Form of
Interrogatories or Findings

　　　388k352.1 In General
　　　　388k352.1(9) k. Employees' Injuries;
Workers' Compensation. Most Cited Cases
In employee's personal injury action against his
corporate employer and its president, fact that question
was submitted to jury about damages following
question about employer's liability, but no separate
question was submitted about damages against
president did not suggest that jury's award of damages
against employer was influenced by question
concerning negligence of president; it was to be
assumed that jury followed instruction to answer
questions in order presented, and questions about
employer's liability came before any questions relating
to president.

**[6] Appeal and Error 30 ☞930(2)**

30 Appeal and Error
　　30XVI Review
　　　30XVI(G) Presumptions
　　　　30k930 Verdict
　　　　　30k930(2) k. Instructions Understood or
Followed. Most Cited Cases
Appeals Court assumes that the jury followed the
judge's instructions.

**[7] Stipulations 363 ☞18(4)**

363 Stipulations
　　363k15 Conclusiveness and Effect
　　　363k18 Matters Concluded
　　　　363k18(4) k. Stipulations as to Issues and
Evidence Thereunder. Most Cited Cases

**Workers' Compensation 413 ☞2168**

413 Workers' Compensation
　　413XX Effect of Act on Other Statutory or
Common-Law Rights of Action and Defenses
　　　413XX(C) Action Against Third Persons in
General for Employee's Injury or Death
　　　　413XX(C)1 Right of Action of Employee or
Representative Generally
　　　　　413k2160 What Persons Liable as Third
Persons
　　　　　　413k2168 k. Co-Employee, or Agent or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

775 N.E.2d 405
55 Mass.App.Ct. 868, 775 N.E.2d 405
**(Cite as: 55 Mass.App.Ct. 868, 775 N.E.2d 405)**

Officer of Employer of Injured Person. Most Cited Cases

**Workers' Compensation 413 ☜═2237**

413 Workers' Compensation
    413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
        413XX(C) Action Against Third Persons in General for Employee's Injury or Death
            413XX(C)5 Actions and Proceedings
                413k2236 Trial
                    413k2237 k. In General. Most Cited Cases
Directed verdict should not have been entered in favor of corporate employer's president, in injured employee's tort action against president based on president's alleged negligence in failing to obtain workers' compensation coverage, to the extent that president stipulated to damages and medical expenses.

**[8] Workers' Compensation 413 ☜═2121**

413 Workers' Compensation
    413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
        413XX(A) Between Employer and Employee
            413XX(A)4 Negligence of Employer and Measure of Damages
                413k2121 k. Limitation of Recovery or Measure of Damages. Most Cited Cases
In an injured employee's tort action against employer's corporate officer, who negligently failed to obtain workers' compensation coverage, once employee proves the amount of harm suffered by way of degree and duration of incapacity for work, if the fact finder concludes that the injury was permanent and total, the computation of damages is determined by provisions of the Workers' Compensation Act. M.G.L.A. c. 152, §§ 34, 34A.

**[9] Workers' Compensation 413 ☜═2239**

413 Workers' Compensation
    413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
        413XX(C) Action Against Third Persons in

General for Employee's Injury or Death
            413XX(C)5 Actions and Proceedings
                413k2236 Trial
                    413k2239 k. Questions of Law or Fact. Most Cited Cases
Whether corporate employer's president had been negligent in failing to obtain workers' compensation coverage, whether employee's disability was temporary or permanent, and whether employee's disability was partial or total, were questions for the jury, in employee's action against president to recover for injuries he sustained at work.

**[10] Damages 115 ☜═187**

115 Damages
    115IX Evidence
        115k183 Weight and Sufficiency
            115k187 k. Impairment of Earning Capacity. Most Cited Cases
While a personal injury plaintiff's testimony describing his pain and inability to work does not constitute evidence of loss of earning capacity, an expert witness may not be necessary; the assessment of damages for impairment of earning capacity rests largely on the common knowledge of the jury, sometimes with little aid from evidence.

**[11] Workers' Compensation 413 ☜═2239**

413 Workers' Compensation
    413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
        413XX(C) Action Against Third Persons in General for Employee's Injury or Death
            413XX(C)5 Actions and Proceedings
                413k2236 Trial
                    413k2239 k. Questions of Law or Fact. Most Cited Cases
Question of damages was a question of law, in injured employee's tort action against his corporate employer's president, based on president's alleged negligence in failing to obtain workers' compensation insurance, where jury found that employee's incapacity was total and indefinite. M.G.L.A. c. 152, §§ 34, 34A.

**[12] Workers' Compensation 413 ☜═2100**

775 N.E.2d 405
55 Mass.App.Ct. 868, 775 N.E.2d 405
(Cite as: 55 Mass.App.Ct. 868, 775 N.E.2d 405)

Page 4

413 Workers' Compensation
    413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
        413XX(A) Between Employer and Employee
            413XX(A)1 Exclusiveness of Remedies Afforded by Acts
            413k2100 k. Failure to Provide Insurance or to Secure Compensation. Most Cited Cases

**Workers' Compensation 413 &#9992;2168**

413 Workers' Compensation
    413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
        413XX(C) Action Against Third Persons in General for Employee's Injury or Death
            413XX(C)1 Right of Action of Employee or Representative Generally
            413k2160 What Persons Liable as Third Persons
            413k2168 k. Co-Employee, or Agent or Officer of Employer of Injured Person. Most Cited Cases
When a corporate employer does not carry workers' compensation insurance and is not self-insured, an injured employee may bring a tort action and seek a judgment from both the employer and any corporate officer who negligently failed to obtain workers' compensation coverage. M.G.L.A. c. 152, §§ 66, 67; 452 CMR 3.04.

**[13] Workers' Compensation 413 &#9992;2243**

413 Workers' Compensation
    413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
        413XX(C) Action Against Third Persons in General for Employee's Injury or Death
            413XX(C)6 Amount and Items of Recovery
            413k2243 k. Action by Employee, Dependents, or Personal Representative. Most Cited Cases
An injured employee, who brings tort action against both his uninsured corporate employer and corporate officer who negligently failed to obtain workers' compensation coverage, is entitled to recover damages for which the employer has been determined to be liable

and may elect which judgment to execute against first; the second defendant is not off the hook until the employee actually receives the payment due him.

**[14] Workers' Compensation 413 &#9992;2141**

413 Workers' Compensation
    413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
        413XX(A) Between Employer and Employee
            413XX(A)5 Actions
            413k2141 k. Review. Most Cited Cases
On appeal in injured employee's tort action against corporate employer's president, based on his alleged negligence in failing to obtain workers' compensation coverage, president waived argument that employee was required to pursue claim against Workers' Compensation Trust Fund, rather than against the president, where such argument was not presented in trial court and instead appeared for the first time in president's reply brief. M.G.L.A. c. 152, § 65.

**\*\*407 \*869** John N. Lewis, Boston, for the defendants.
Joseph K. Mackey for the plaintiff.

Present: BECK, RAPOZA, & BERRY, JJ.
BECK, J.
On May 29, 1997, the plaintiff-employee, Chi Truong, suffered an injury in the course of his work at the defendants' tofu manufacturing plant. There is no dispute that the defendant-employer, Yah Kee, Inc. (corporation), did not carry workers' compensation insurance and was not self-insured. In the absence of the requisite insurance, the employee filed a complaint in Superior Court for personal injury damages against the corporation as well as against the president and treasurer of the corporation, defendant Cheng Yah Wong (president). The parties cross-appeal from judgments on issues related to liability and damages.

[1][2] *Governing legal principles.* Every employer in the Commonwealth, with certain limited exceptions, is required to carry workers' compensation insurance, unless self-insured or a member of a self-insurance group if so qualified. See generally Locke, Workmen's Compensation § 1, at 3 (Koziol Supp.2000). If an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

employer fails to provide such coverage, an injured employee may sue the employer in a civil action for the full scope of tort damages. G.L. c. 152, §§ 66, 67. In such an action, the employer may not assert certain critical common-law defenses. *Ibid.* See *LaClair v. Silberline Mfg. Co.,* 379 Mass. 21, 26, 393 N.E.2d 867 (1979). An employee may also bring an action in tort against a corporate officer who negligently fails to obtain workers' compensation coverage. See *id.* at 29, 393 N.E.2d 867. In such a case the measure of damages is the "amount which would have been obtained under G.L. c. 152 had work[ers'] compensation coverage been provided." *Id.* at 30, 393 N.E.2d 867.

*The trial evidence.* The jury could have found the following facts. The employee began work for the corporation in 1980 when he came to the United States at the age of forty-seven. For seventeen years he worked eleven hours a day, six days a week, originally at a plant on Tyler Street in Boston and more recently in Waltham, making tofu and doing manual tasks associated with that endeavor. He does not speak English.

On the morning of May 29, 1997, the employee slipped and fell on a wet floor at work and injured his right wrist in an attempt***870** to break his fall. (The employee is right-handed.) That afternoon the employee went to see a Chinese doctor who was a "healer with bones." That doctor referred the employee to the New England Medical Center. The employee went to the emergency room the next day, ****408** and from there he was referred to the hand clinic. On June 5, the chief hand surgeon at that hospital performed corrective surgery on the employee's fractured wrist. The surgeon aligned the bony fragments in the plaintiff's arm, inserting two pins in the bone between the plaintiff's wrist and his fingers and two other pins in one of the major bones in his forearm. The surgeon then connected the pins with two carbon rods. At the time of his injury the employee was sixty-four years old.

Two months later, on August 1, the doctor removed the pins and applied a removable splint. The employee then began physical therapy. By September, the

employee's strength improved but was still far from normal. There was improvement after September, but the employee did not regain his original level of functioning. One year after the surgery, the surgeon estimated that the employee had regained seventy-five percent of his strength and eighty to ninety percent of his preinjury motion. The doctor did not expect further improvement and observed that older people do not heal as well or as fast as younger people. They also have less endurance.

Testifying through an interpreter, the employee described the circumstances of his fall and his subsequent treatment. In the course of his testimony, he also described in detail his work at the tofu factory, including loading carts with ten sixty-pound bags of beans and then emptying the bags in tanks. As for the effect of his accident, he testified that carrying a chicken of a few pounds "would be a great effort"; that pushing things was very painful; and that he did not have enough strength in his right hand to work, "because if there were enough strength [he] would go to work." In the course of his testimony, he demonstrated the extent of motion in his right hand. He testified that he could not physically do his former work because he would need both hands to push the pail around every time. He said he had "asked around [for other work], but a lot of the Chinese work requires a lot of heavy lifting. [He also observed] ***871** I'm older now." The employee's daughter, who had dinner with her father every night, testified that her father tends to use his left hand more, has trouble using chop sticks, and regularly depends on painkillers.

The president, who came to this country in 1975, has served as president of the corporation since the late 1980's when his father retired from the family business. Although the president's insurance agent told him about workers' compensation insurance, he did not buy any because it was "too expensive." The theory of the defense was that the employee was not injured at work, or at least that he was "not [being] honest" about the accident and his injury, and was looking for "a retirement plan."

*The trial process.* The employee's claims against the corporation and the president were tried before a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

775 N.E.2d 405
55 Mass.App.Ct. 868, 775 N.E.2d 405
(Cite as: 55 Mass.App.Ct. 868, 775 N.E.2d 405)

Superior Court judge and jury over two days.  At the close of the employee's case, counsel for the employee attempted "to introduce requests for judicial notice of sections 34, 35, 36, and 37 [of G.L. c. 152]."  The employee claimed that "once there is a determination that [the employee] was in fact injured, and once there is a determination that [the president] was in fact negligent, it [is] a question of law as to what the damages are as to [the president] ... [because] the damages [are] spelled out in the workers' compensation statute."  The judge responded that before there could be calculations, the jury would have to make other determinations, including the extent of the employee's disability.  With that disagreement unresolved, the employee **409 rested, as did the defendants.  The defendants then moved for a directed verdict.

Among the several grounds set out in the motion, the hearing focused primarily on the president's contention that the employee had failed to carry his burden of proving damages.  The president asserted that "[t]here has been nothing presented to the jury which would allow them to figure out what [the plaintiff] is entitled to in medical expenses, what he's entitled to in lost wages, what his comp[ensation] rate would have been, what kind of calculations are made against the statutory scheme for disability....  [I]t would be totally speculative on the part of the jury to try to figure out, with or without reading the [workers' compensation act,] what [the employee] is entitled to as a matter of damages."

*872 The judge asked counsel for the employee whether there had been any evidence she had missed as to what the employee was capable of earning after the accident.  Counsel responded that the employee's theory of the case was that he was "disabled from any type of work" and that he therefore had no duty to present evidence to prove that he had an ability to work and earn money.  After further discussion, the employee repeated his argument that it was his burden to prove the extent of disability and "then it's a question of law as to how the workers' compensation statute is applied to those factual issues."

The judge referred to *LaClair v. Silberline Mfg. Co., 379 Mass. 21, 393 N.E.2d 867,* for the proposition that

the burden is on the plaintiff to prove the amount of damages he would be entitled to under G.L. c. 152, "and if that requires an expert, which I suggest it might, then the expert has to be brought forward."  The judge then ruled that "the [employee] has [not] put in sufficient evidence on what amount he would have received under the workers' compensation statute with respect to benefits under that statute in order to put the case to the jury on that question."  She decided, however, to put the question of the president's negligence and two specific "advisory" fact questions regarding the extent of the employee's incapacity for work to the jury "because ... it may be instructive to counsel about the jury's view of the case."

A document entitled "Special Jury Questions" went to the jury.  Question 1(a) asked whether "the injury to [the employee arose] out of and in the course of his employment."  Question 1(b) asked "[w]hat amount of damages would fairly and adequately compensate the [employee]."    Question 2 inquired whether the president was "negligent in his failure to obtain workers' compensation insurance."  Question 3 asked about the period of time for which the employee was incapacitated for work, and question 4 asked whether the employee's incapacity for work was total or partial.   There was no indication on the document or in the judge's instructions to the jury that questions 2, 3, and 4 were advisory;  the judge gave instructions for each question.

Upon deliberation, the jury determined that the employee was injured in the course of his employment and awarded him *873 $250,000 in damages.  As to the advisory questions, the jury found that the president was negligent in failing to obtain workers' compensation insurance, and that the employee was totally incapacitated for an indefinite period of time.  Five days later, two judgments issued:  one for the employee, awarding him $250,000, the other for the president on directed verdict.

The corporation moved for a new trial on damages.  The employee moved for entry of judgment (later referred to in his notice of appeal as a "Rule 59 motion"), **410 asserting entitlement to damages of $151,320 under sections 34, 34A, 35, 30, and 50 of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

workers' compensation statute against the president. The trial judge denied both motions.

*Issues on appeal.* On appeal, the corporation claims the damages awarded against it were excessive. In his cross appeal, the employee argues that it was error to enter a directed verdict against him in his claim against the president. The employee further asserts that he is entitled to recover against both the corporation and the president. In their reply brief, the defendants argue that there was no basis for the employee's posttrial motion for entry of judgment; that the employee failed to exhaust his administrative remedies; and that the president should be given credit for the recovery against the corporation.

*Discussion.* 1. *Corporation's appeal:    excessive damages.* The corporation contends that the verdict against it should be set aside (or, more properly, that it was error to deny his motion for a new trial on damages) because the jury's verdict was (a) "so excessive as to shock the conscience of the court"; (b) "clearly erroneous and against the weight of the evidence"; and (c) "the result of the erroneous inclusion of the negligence of the individual defendant [president] as an element to be considered ... in awarding damages against the corporate defendant."

[3] "An appellate court will not find an abuse of discretion in the judge's refusal to grant a new trial on the ground of excessive damages, unless the damages awarded were greatly disproportionate to the injury proven or represented a miscarriage of justice." *Moose v. Massachusetts Inst. of Technology,* 43 Mass.App.Ct. 420, 427, 683 N.E.2d 706 (1997), quoting from *Mirageas v. Massachusetts Bay Transp. Authy.,* 391 Mass. 815, 822, 465 N.E.2d 232 (1984). This deference is particularly appropriate when the judge deciding **\*874** the motion is the trial judge. See *Thayer v. Pittsburgh-Corning Corp.,* 45 Mass.App.Ct. 435, 443, 703 N.E.2d 221 (1998). Here we find nothing in the record to suggest that the judge abused her discretion.

[4] The judge properly instructed the jury that "there is no magic formula by which you calculate damages here," and set out elements for their

consideration-medical expenses, physical pain and suffering, mental or emotional pain and suffering, lost wages, loss of earning capacity (based on age, health, education, and vocational history), physical dysfunction, and permanent disability. There was no objection to this instruction, which sets out wide parameters for the jury.

[5][6] As to the claim that the jury's damage award was somehow influenced by the advisory question concerning the negligence of the president because there was only one question about damages on the special questions document, that argument is speculative. The jury were instructed to answer the questions in the order presented. The questions about corporate liability came first, before the questions relating to the claim against the president. We assume that the jury followed the judge's instructions. See *Luz v. Stop & Shop, Inc. of Peabody,* 348 Mass. 198, 207-208, 202 N.E.2d 771 (1964). The fact that there was no separate question regarding damages against the president does not suggest that the jury did not follow the instructions.

[7] 2. *Employee's cross appeal:    liability of the president.* In his cross appeal, the employee claims error in the allowance of the president's motion for directed verdict. At the outset, we note that in the course of the trial, the president stipulated to the "medicals" and the employee's total disability during the period **\*\*411** the employee "had the device on his arm." The president also acknowledged that the employee presented sufficient evidence to show that he was entitled to recover his medical expenses of $5,021 and wages lost from May 29 to September 29. Therefore, at least as to the stipulated damages and medical expenses, the motion for directed verdict should not have been allowed.

[8] We turn next to the judge's comments regarding the holding in *LaClair v. Silberline Mfg. Co.,* 379 Mass. 21, 393 N.E.2d 867. In *LaClair, supra* at 30, 393 N.E.2d 867, the court held that in an action against an individual corporate officer, the plaintiff employee has "the burden of proving damages" if the jury finds the officer liable for the **\*875** failure to obtain workers' compensation insurance. "Recovery, [however, is]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

775 N.E.2d 405
55 Mass.App.Ct. 868, 775 N.E.2d 405
(Cite as: 55 Mass.App.Ct. 868, 775 N.E.2d 405)

Page 8

limited" to the amount the employee would have received under the workers' compensation statute. *Ibid.* It appears that the judge may have interpreted *LaClair* to stand for the proposition that, as she put it, "the burden is on the plaintiff to prove the amount of damages ... he would have been entitled to under Chapter 152." To the extent that the judge was referring to money damages rather than physical or emotional damage, we disagree, at least on the facts of this case. As the employee argues, once an employee proves the amount of harm suffered by way of degree and duration of incapacity for work, particularly as in this case, if the fact finder concludes that the injury was permanent and total, the computation of damages is determined by the provisions of G.L. c. 152. See, e.g., G.L. c. 152, § 34 (compensation for temporary total incapacity equals sixty percent of employee's weekly wage for up to one hundred fifty-six weeks); G.L. c. 152, § 34A (compensation for permanent total incapacity, following payment under §§ 34 or 35, equal to two-thirds of average weekly wage).

[9] That brings us to the more difficult question of whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the [employee]," *Rolanti v. Boston Edison Corp.,* 33 Mass.App.Ct. 516, 520, 603 N.E.2d 211 (1992) (citations omitted), other than the damages the president conceded. See *Sahagan v. Commonwealth,* 25 Mass.App.Ct. 953, 953, 518 N.E.2d 888 (1988) ("The test on [a] motion for directed verdict is whether the evidence, taken in a light most favorable to the plaintiff, without considering its weight or credibility, was adequate to support an inference imposing liability on the defendant").

In the light most favorable to the employee, there was evidence that he was sixty-four at the time of the injury; had spent his working life, at least since arriving in the United States, in manual labor; speaks only Chinese; planned to continue working indefinitely; had limitations in range of motion and strength as well as pain in his dominant hand and forearm; was unable to continue the manual labor he had been doing; and discovered that the only work available in the **\*876** Chinese community for someone with his skills was

manual. He testified that he was unable to obtain work that he could do.

[10] The judge's comments suggest that she may have thought expert testimony on the disability-incapacity issue was required. While it is true that a plaintiff's testimony describing his pain and inability to work does not constitute evidence of loss of earning capacity, see *Nisbet v. Medaglia,* 356 Mass. 580, 583, 254 N.E.2d 782 (1970), an expert witness, e.g., in this case a vocational expert, may not be necessary. "The assessment of damages for **\*\*412** impairment of earning capacity rests largely on the common knowledge of the jury, sometimes with little aid from evidence." *Solimene v. B. Grauel & Co., KG,* 399 Mass. 790, 804 n. 16, 507 N.E.2d 662 (1987), quoting from *Griffin v. General Motors Corp.,* 380 Mass. 362, 366, 403 N.E.2d 402 (1980). Compare *Mulcahey's Case,* 26 Mass.App.Ct. 1, 3, 522 N.E.2d 431 (1988) (Department of Industrial Accidents entitled to use its own judgment in determining earning capacity).

To be sure, there was contradictory evidence before the jury. For example, as the defendants point out, the doctor testified at his videotaped deposition that he had no record that the employee had complained of pain at any point, and that there would be no restrictions on the employee's "normal life activities." In response to specific inquiries, the doctor said the employee could drive a car, write, play golf if he were a golfer, and play softball but not baseball. In an office visit report dated October 27, 1997, the doctor wrote: "I feel [the employee] is ready to return to his job in the grocery, lifting tofu boxes among other commodities, and he is released for work as of Monday next." The jury could have disregarded this evidence given the doctor's apparent misunderstanding of the nature of the employee's work. Such judgments were for the jury to make.

The preceding analysis may be summarized as follows. The jury found that the president was negligent, that the employee was incapacitated for work for an "indefinite period of time," and that his incapacity was total. The jury had been instructed as to negligence, partial and total disability, and temporary versus permanent disability, including the clarifications the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

president requested.   The form on which they were to record their findings did not reveal that the questions on those issues were advisory.    Although not overwhelming and subject to  **\*877** alternative interpretations, there was sufficient evidence to support the jury's findings.     See Locke, Workmen's Compensation § 344, at 405-406 (complete physical and mental incapacity not essential to proof of total and permanent disability;   sufficient if evidence shows disability prevents work of substantial and not merely trifling character with due regard for age, experience, training, and capabilities).    The motion for directed verdict should not have been granted.

[11] The question then is:  what is the legal significance of the jury's advisory findings?    Here, where the defendants rested before the judge's ruling on the motion for directed verdict, given the jury's findings that the employee's incapacity was total and indefinite, the remaining question of damages is a question of law.   See G.L. c. 152, §§ 34, 34A. (Having not introduced evidence as to when § 34A benefits should begin, we think the employee in this case is subject to exhausting his § 34 benefits, compare Slater's Case, 55 Mass.App.Ct. 326, 770 N.E.2d 534 [2002], before being eligible for § 34A benefits, as set out in his posttrial motion for entry of judgment.)  We therefore remand the employee's claim against the president for assessment of damages by the trial judge.

[12] 3. Double recovery.   The employee claims he is entitled to collect damages from the president as well as the corporation.  The president argues to the contrary.  The issue did not arise in LaClair v. Silberline Mfg. Co., supra, because that corporate employer was insolvent.    We think it reasonably clear that an employee may bring an action and seek a judgment from both.   Cf. 452 Code Mass. Regs. § 3.04 (1997) (employee of any uninsured employer entitled, without election and through the Workers' Compensation **413 Trust Fund, see G.L. c. 152, § 65, to the weekly compensation and other medical and vocational rehabilitation benefits provided under G.L. c. 152; claimant may also proceed to enforce the liability of an uninsured employer under G.L. c. 152, §§ 66, 67). The question is whether the employee may execute judgment against both.

In Brown v. Leighton, 385 Mass. 757, 434 N.E.2d 176 (1982), the uninsured defendant-employer argued that it was entitled to credit for damages the employee had recovered from a third party unrelated to the employer.  On the facts of that case, the  \*878 employer was not entitled to such credit.   Id. at 758, 434 N.E.2d 176. The court in Brown v. Leighton, supra, noted that the purpose of the workers' compensation program is to ensure prompt payment for injuries in the workplace.  Id. at 763, 434 N.E.2d 176.    When there is no insurance, that purpose goes unfulfilled.  The employee has litigation options, but they are not prompt.  Nor are they reliable or without cost.    The employee must assume the responsibility and risk of suit, as well as the delay.   Ibid.  In Brown v. Leighton, supra, to have allowed the employer to take advantage of the third party recovery would have constituted a windfall to the benefit of an employer who failed to insure.  Id. at 763, 434 N.E.2d 176.   This rationale does not apply here because there is no recovery from a third party.

[13] In this case, both the corporation and the president are in effect the employer.   The employee is entitled to recover damages for which the employer has been determined to be liable and may elect which judgment to execute against first.   The second defendant is not off the hook until the employee actually receives the payment due him.   This is fair to the employee and prevents the employer from escaping its obligations, without resulting in a double recovery to the employee, which the Legislature has not seen fit to authorize.  Cf. LaClair v. Silberline Mfg. Co., 379 Mass. at 30, 393 N.E.2d 867 (limiting recovery against corporate officer who failed to insure to the amount the employee would have recovered had he been covered under G.L. c. 152 "given the absence of a statute establishing the measure of damages").

[14] Finally, we reject the president's contention that the employee was required to pursue a claim against the Workers' Compensation Trust Fund, see G.L. c. 152, § 65, rather than against the corporate official.    This argument was not presented in the Superior Court; it appears for the first time in the defendants' reply brief.  It is therefore waived.   See Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 11, 696 N.E.2d 909 (1998).   In any case, we have serious concerns about

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

775 N.E.2d 405
55 Mass.App.Ct. 868, 775 N.E.2d 405
**(Cite as: 55 Mass.App.Ct. 868, 775 N.E.2d 405)**

requiring an employee to file an administrative action whose success would deplete the Workers' Compensation Trust Fund and which would add to the employee's litigation burden.

The judgment against the corporation is affirmed. The judgment for the president is reversed. The claim against the **\*879** president is remanded to the Superior Court for action consistent with this opinion.

*So ordered.*

Mass.App.Ct.,2002.
Truong v. Wong
55 Mass.App.Ct. 868, 775 N.E.2d 405

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.